**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DUANE & VIRGINIA LANIER TRUST, | ) | |
| Individually and On Behalf of All Others | ) | |
| Similarly Situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-15-634-M |
| | ) | |
| SANDRIDGE ENERGY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are the Sandridge Trust Group's[1] (hereinafter "Robbins Group") Motion

for Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel and the

Sandridge Group's[2] (hereinafter "Rosen Group") Motion to Be Appointed Lead Plaintiffs; and to

Approve Proposed Lead Plaintiffs' Selection of Counsel.  These motions have been fully briefed and

are ripe for adjudication.  Based upon the parties' submissions, the Court makes its determination.

I.       Background

Sandridge Energy, Inc. ("Sandridge") is an independent natural gas and oil company in the

United States that engages in the exploration, development, and production of oil and gas properties.

Its Exploration and Production segment explored for, developed, and produced natural gas and oil

reserves with a focus on the Mid-Continent (a/k/a "Mississippian formation" or "Mississippian

play") and the Permian Basin, a sedimentary basin largely contained in the western part of Texas

and the southeastern part of New Mexico.  Beginning in early 2011, Sandridge represented that it

---

[1]The Sandridge Trust Group consists of Michael F. Davis and Michael A. Pence.

[2]The Sandridge Group consists of Ivan Nibur, Lawrence Ross, Jase Luna, Matthew
Willenbucher, and the Duane & Virginia Lanier Trust.

would "monetize" certain of its assets in order to create cash flow to fund its ongoing lease acquisitions and drilling activities in its core assets in the Mid-Continent and Permian Basin. Accordingly, among other monetization efforts, Sandridge created royalty trusts (the Sandridge Mississippian Trust I ("Trust I") and the Sandridge Mississippian Trust II ("Trust II")) to fund its ongoing drilling operations.

On June 9, 2015, the instant securities class action was brought against defendants for violations of the Securities Act and Exchange Act.  Specifically, this action seeks to represent those who purchased or otherwise acquired common units of (i) Trust I pursuant or traceable to Trust I's initial public offering on or about April 7, 2011, and/or at all other times during the time period between April 7, 2011 and November 8, 2012, both dates inclusive ("Class Period") and/or (ii) Trust II pursuant or traceable to Trust II's initial public offering on or about April 17, 2012, and/or at all other times during the Class Period (the "Class").  Plaintiff alleges that defendants made false and/or misleading statements and failed to disclose that (1) the underlying properties from which the royalty interests were conveyed to Trust I and Trust II consisted of far more low-margin natural gas deposits and far fewer high-margin oil deposits, and (2) the reserves of oil in the underlying properties associated with Trust I and Trust II were vastly overstated.  Plaintiff further alleges that when the true details entered the market, investors suffered damages.

II.    Discussion

The Robbins Group and the Rosen Group now move to be appointed lead plaintiff in this action.  They also move the Court to approve their selection of lead counsel and liaison counsel.

A.    Appointment of Lead Plaintiff

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 77z-1(a)(3); 15 U.S.C. § 78u-4(a)(3).  First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i); 15 U.S.C. § 78u-4(a)(3)(A)(i).  Plaintiffs in this first-filed Sandridge action published an early notice on BusinessWire[3] on June 9, 2015.  Within 60 days after publication of the required notice, any member of the proposed class may file a motion with the court seeking to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 77z-1(a)(3)(A),(B); 15 U.S.C. § 78u-4(a)(3)(A),(B).

Next, under the PSLRA, the Court shall appoint as lead plaintiff the movant that the court determines to be the most capable of adequately representing the interests of class members.  15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining who is the "most adequate plaintiff," the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
> (aa)    has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

---

[3]BusinessWire is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service."  *See, e.g., Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal
>          Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  That presumption may only be rebutted in very limited circumstances by proof by a member of the purported class that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interests of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

"While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005).  Having reviewed the parties' submissions, the Rosen Group has the largest financial interest in the relief sought by the Class.[4]  Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

---

[4]The Rosen Group has Exchange Act losses of $463,954.12 and Securities Act losses of $986,262.21, and the Robbins Group has Exchange Act losses of $424,861 and Securities Act losses of $204,439.  In its briefing, the Robbins Group seems to focus almost exclusively on a comparison of the Exchange Act losses.  Because this action involves alleged violations of both the Exchange Act and the Securities Act, the combined loss for the Exchange Act and the Securities Act is the appropriate loss to determine which lead plaintiff has suffered the greatest total losses.

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative and, thus, typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

Under Rule 23(a)(3), typicality exists where "the claim . . . of the representative parties" are "typical of the claims . . . of the class." Typicality is satisfied when the representative plaintiffs' claims arise from the same event, practice or course of conduct that provides the basis of class claims and are grounded in the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Typicality does not require that every class member's claim be identical to those of the representative plaintiffs. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982).

Having carefully reviewed the parties' submissions, the Court finds that the Rosen Group satisfies the typicality requirement of Rule 23. Specifically, the Court finds that the Rosen Group's claims are identical, non-competing and non-conflicting with the claims of the other class members. The Rosen Group, like all other class members, (1) purchased Sandridge trust offering units during the Class Period, (2) purchased Sandridge trust offerings units at allegedly artificially-inflated prices as a result of defendants' alleged misrepresentations and omissions, and (3) suffered damages thereby. Additionally, the Rosen Group is not subject to any unique or special defenses.

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interest of the class." As set forth above, "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999).

Having carefully reviewed the parties' submissions, the Court finds that the Rosen Group satisfies the adequacy requirement. Specifically, the Court finds that the Rosen Group's interests are clearly aligned with the class members because its claims are identical to the claims of the Class. Further, the Court finds there is no evidence of antagonism between its interests and those of the proposed class members. Additionally, the Court finds that the Rosen Group has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss it incurred as a result of the alleged wrongful conduct and has shown a willingness to vigorously prosecute this action.

Because it has the largest financial interest in the relief sought by the Class and because it satisfies both the typicality and adequacy requirements, the Court finds that the Rosen Group is presumptively the "most adequate plaintiff." The Court, therefore, must now determine whether this presumption has been rebutted by proof that the Rosen Group will not fairly and adequately protect the interests of the Class or is subject to unique defenses that render it incapable of adequately representing the Class.

The Robbins Group asserts that the Rosen Group should not be appointed lead plaintiff because it is not "an adequate group." Specifically, the Robbins Group contends that the Rosen Group has not timely demonstrated its cohesiveness apart from the individual group members' losses

6

and shared counsel.  The Robbins Group further contends that only small groups that timely submit

evidence demonstrating their members' willingness and agreement to act as a cohesive group, their

intention to regularly consult with each other regarding the conduct of the lawsuit, their process for

sharing information and decision-making, how decisions will be made between them, and how their

counsel will be overseen should be appointed as lead plaintiffs.

In response to the Robbins Group's motion for appointment as lead plaintiff, the Rosen

Group submitted a Joint Declaration of the members of the Rosen Group demonstrating the group's

cohesiveness.  Specifically, in the Joint Declaration, the members state, in pertinent part:

> 2.      We understand that it is our responsibility to keep informed regarding the status and progress of this action, the strengths and weaknesses of the case, and any prospects for resolution of this matter.  Indeed, we participated in a conference call with the all five members of our group and counsel to discuss the status of the case and case strategy.  We have a dedicated conference call line for this case and have group email list which has and will be used for us to communicate about the case.
>
> 3.      We understand that it is Lead Plaintiff's responsibility to monitor and remain fully informed regarding the status and progress of this litigation and the prospects for any resolution of this matter. We further understand that as Lead Plaintiff's, we will have responsibility for making important litigation decisions and directing counsel with respect to this litigation, after receiving the benefit of counsel's advice.  To discharge these duties, we will, among other things, review pleadings and motions papers received from counsel, obtain periodic status reports on the progress of the litigation, and potentially produce documents, answer interrogatories and/or sit for depositions.  We will provide input into litigation decisions and strategies, and be involved in the final approval of any major litigation decisions, including whether to settle the litigation and, if so, for what amount.
>
> 4.      We are aware that a Lead Plaintiff has a fiduciary duty to the entire Class, which we each intend to represent fully and faithfully in order to protect its interests.  We understand that to fulfill our fiduciary duties and obligations as Lead Plaintiff, we must fairly and adequately represent the Class by vigorously prosecuting this case on

behalf of the Class.  Each of us will do our best to maximize the recovery for the Class.

5.      We will take an active role in the prosecution of this case; including supervising Lead Counsel and ensuring that the case is handled in an efficient manner.

6.      We will continue to communicate regularly with counsel and each other regarding major litigation events, such as important motions, settlement discussions, trial preparation and trial, and shall have the authority and responsibility to direct counsel with respect to each of these events after receiving the benefit of Lead Counsel's advice.  We intend to communicate with our counsel – and with each other separately from our attorneys – as often as necessary to ensure the vigorous and efficient prosecution of this case, to discuss the progress of the litigation and the litigation strategies recommended by our counsel.  We anticipate these communications will occur as often as necessary, depending on the current activity in the case.  We understand that litigation of this nature has periods of greater and lesser activity, and we will remain available to counsel and ourselves as needed to fulfill our role as Lead Plaintiff.

7.      In consultation with our counsel, we agreed to proceed together because we each suffered losses in our investments in Sandridge Mississippian Trust I (SDT), and Sandridge Mississippian Trust II (SDR), and would like the opportunity to participate in this action as Lead Plaintiff.  In addition, we agreed to jointly prosecute the case together as Lead Plaintiff to ensure the best representation of the Class.

Joint Declaration at ¶¶ 2-7.

The Court finds the statements made in the Joint Declaration adequately demonstrate the cohesiveness of the members of the Rosen Group.  Specifically, the Court finds the statements made in the Joint Declaration sufficiently demonstrate the members' willingness and agreement to act as a cohesive group, their intention to regularly consult with each other regarding the conduct of this lawsuit, their process for sharing information and decision-making, and how their counsel with be overseen.   Additionally, the Court finds that the Joint Declaration was timely submitted. Specifically, the Court finds that the PSLRA, itself, does not contain any requirement to file any sworn statement other than a certification within the 60-day time frame.  Further, courts have relied

8

on affidavits/declarations demonstrating cohesiveness filed after the initial motion and in opposition to a competing motion to appoint lead plaintiff. *See Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356-57 (S.D.N.Y. 2011); *In re Nature's Sunshine Prods., Inc.*, No. 2:06-CV-267 TS, 2006 WL 2380965, at *1 & n.9 (D. Utah Aug. 16, 2006).

The Robbins Group further asserts that the Rosen Group is not adequate because one of its members, Duane & Virginia Lanier Trust, did not conduct a reasonable investigation prior to filing this action. Specifically, the Robbins Group contends that the Duane & Virginia Lanier Trust copied, verbatim, vast portions of the complaint counsel for the Robbins Group filed in the related *In re SandRidge* action, Case No. CIV-12-1341-W. The Robbins Group asserts that filing a lawsuit without conducting a reasonable investigation does not demonstrate a willingness on the part of the Rosen Group to actively prosecute the action, let alone do so vigorously.

In its reply, the Rosen Group asserts that the Duane & Virginia Lanier Trust and its counsel conducted an extensive investigation prior to filing the instant action. Specifically, Laurence Rosen, counsel for the Duane & Virginia Lanier Trust, states:

> 4.    As part of our pre-filing case investigation, I participated in numerous internal discussions about this action, and undertook a thorough review of the evidence gathered by [Wohl & Fruchter LLP], including without limitation:
> > (a) Filings by the Trusts with the Securities & Exchange Commission;
> > (b) Transcripts of conference calls with securities analysts concerning the Trusts; and
> > (c) Oil and gas production reports with respect to the wells in which the Trusts hold royalty interests.
>
> 5.    Based on our extensive review of the above and other publicly-available evidence, we concluded that a new action was meritorious. . . .

9

Declaration of Laurence Rosen in Support of the Motion of the Rosen Group (a/k/a the Sandridge Group) to Be Appointed Lead Plaintiffs; and to Approve Proposed Lead Plaintiffs' Selection of Counsel at ¶¶ 4, 5.  Additionally, J. Elazar Fruchter, counsel for the Duane & Virginia Lanier Trust, states:

> 3.      After being retained by Duane Lanier, the trustee of the Lanier Trust, on March 28, 2014, to investigate claims ("Claims") against the defendants in this action in connection with Trust I and Trust II (collectively, the "Trusts"), W&F [Wohl & Fruchter LLP] secured and thoroughly reviewed on an ongoing basis numerous publicly available documents concerning the Trusts, including without limitation:
>
> > (a) The prospectuses filed by the Trusts with the Securities & Exchange Commission ("SEC") in connection with their respective initial public offerings ("IPO's");
> > (b) Form 8-K's, Form 10-Q's, and Form 10-K's ("SEC Filings"), filed by the Trusts with the SEC after their IPO's;
> > (c) Exhibits to SEC Filings, including Trust Agreements, Royalty Conveyances, and Development Agreements;
> > (d) Securities analyst reports concerning the Trusts (as well as analyses of the Trusts published by investors on websites such as SeekingAlpha.com);
> > (e) Transcripts of conference calls with securities analysts concerning the Trusts; and
> > (f) Historical price movements of the publicly-traded Trust units.
>
> 4.      Additionally, we also secured and thoroughly reviewed publicly available documents and data concerning the wells ("Wells") in which the Trusts hold royalty interests, including without limitation:
>
> > (a) Reports of oil and gas production of the Wells;
> > (b) Maps indicating the location of the Wells; and
> > (c) Land records with respect to the Wells.
>
> 5.      During our investigation, we consulted with a petroleum engineering consultant concerning the significance of the publicly available data we reviewed concerning the Wells.
>
> 6.      Further, we conducted extensive legal research concerning the Claims.  We also reviewed filings in the Sandridge Action (Case 5:12-cv-01341-W), including the initial and amended complaint ("Sandridge Amended Complaint"), and papers filed in support of

and in opposition to the motions to dismiss the Sandridge Amended Complaint.

Declaration of J. Elazar Fruchter in Support of the Motion of the Rosen Group (a/k/a the Sandridge Group) to Be Appointed Lead Plaintiffs; and to Approve Proposed Lead Plaintiffs' Selection of Counsel at ¶¶ 3-6.

Having carefully reviewed the parties' submissions, the Court finds that the Duane & Virginia Lanier Trust, through its counsel, did conduct a reasonable investigation prior to filing the instant action. The Court, therefore, finds that the Duane & Virginia Lanier Trust is not inadequate based upon the investigation it conducted prior to filing this action. Further, the Court finds the fact that a large portion of the complaint in this case is exactly the same as the complaint filed in a related action does not reflect on the adequacy of the Duane & Virginia Lanier Trust as the PSLRA does not require a proposed lead plaintiff to even file a complaint.

Therefore, the Court finds that the presumption that the Rosen Group is the most adequate plaintiff has not been rebutted by proof that the Rosen Group will not fairly and adequately protect the interests of the Class or is subject to unique defenses that render it incapable of adequately representing the Class. Accordingly, the Court finds that the Rosen Group should be appointed lead plaintiff.

### B.      Approval of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). A court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Having carefully reviewed the Rosen Group's motion, the Court finds that the Rosen Group's selection of the Rosen Law Firm, P.A. as lead counsel for the

11

Class and the Rosen Group's selection of Farha Law, PLLC as liaison counsel for the Class should

be approved.

III.     Conclusion

Accordingly, for the reasons set forth above, the Court DENIES the Robbins Group's Motion

for Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel [docket

no. 34] and GRANTS the Rosen Group's Motion to Be Appointed Lead Plaintiffs; and to Approve

Proposed Lead Plaintiffs' Selection of Counsel [docket no. 35].  The Court further ORDERS as

follows:

(A)     The Rosen Group and each of its members is hereby appointed, pursuant to Section 27 of the Securities Act of 1933 and Section 21D of the Securities Exchange Act of 1934, as lead plaintiffs for the Class.

(B)     The Rosen Group's selection of counsel is approved and The Rosen Law Firm, P.A. is appointed as lead counsel and Farha Law, PLLC is appointed as liaison counsel for the Class.

(C)     Lead counsel shall manage the prosecution of this litigation.  Lead counsel are to avoid duplicate or unproductive activities and are hereby vested by the Court with the responsibilities that include, without limitation, the following: (1) to prepare all pleadings; (2) to direct and coordinate the briefing and arguing of motions in accordance with the schedules set by the orders and rules of this Court; (3) to initiate and direct discovery; (4) to prepare the case for trial; and (5) to engage in settlement negotiations on behalf of the lead plaintiff and the Class.

**IT IS SO ORDERED this 16th day of March, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

12