# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IVAN NIBUR, LAWRENCE ROSS, JASE LUNA, MATTHEW WILLENBUCHER, and the DUANE & VIRGINIA LANIER TRUST, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> SANDRIDGE MISSISSIPPIAN TRUST I, SANDRIDGE MISSISSIPPIAN TRUST II, TOM L. WARD, JAMES D. BENNETT, MATTHEW K. GRUBB, RANDALL D. COOLEY, JIM J. BREWER, EVERETT R. DOBSON, WILLIAM A. GILLILAND, DANIEL W. JORDAN, ROY T. OLIVER, JR., JEFFREY S. SEROTA, D. DWIGHT SCOTT, RAYMOND JAMES & ASSOCIATES, INC., MORGAN STANLEY & CO. LLC (F/K/A MORGAN STANLEY & CO INC.), MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., CITIGROUP GLOBAL MARKETS INC., and RBC CAPITAL MARKETS, LLC, <br><br> Defendants. <br><br> SANDRIDGE ENERGY, INC., <br><br> Nominal Defendant. | **Civil Action No. 15-cv-00634-M** <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## SUPPLEMENTAL ALLEGATIONS

Lead Plaintiffs Ivan Nibur, Lawrence Ross, Jase Luna, Matthew Willenbucher, and the Duane & Virginia Lanier Trust ("Lead Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their Supplemental Allegations against the Defendants, allege and state as follows:

359. Lead Plaintiffs adopt and incorporate paragraphs 1—358 of their Consolidated Amended Complaint (the "Amended Complaint"), filed on November 11, 2016 (Doc. No. 78).

360. In paragraph 254 of the Amended Complaint, Lead Plaintiffs alleged that "[a]ccording to SandRidge's Form 10-Q, dated August 15, 2016, the SEC's $1.2 million claim against SandRidge was the result of an investigation of SandRidge by the SEC, which was triggered by a whistleblower who claims to have been terminated by SandRidge in retaliation for objecting to SandRidge's management about the 'levels of oil and gas reserves disclosed by the Company in its public filings.'"

361. On December 20, 2016, with SandRidge's consent, the SEC entered an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("Cease-and-Desist-Order") providing for, *inter alia*, SandRidge to pay a $1.4 million penalty to settle charges that it had, *inter alia*, allegedly retaliated against the whistleblower ("Whistleblower") for expressing concerns about how SandRidge calculated its oil and gas reserves in public filings with the SEC.

362. The Cease-and-Desist Order made the following factual findings:

   a. The Whistleblower was hired in the Fall of 2012 to oversee reservoir engineers responsible for a portion of SandRidge's drilling program. Thereafter, beginning within the first months of the Whistleblower's employment, and continuing over the course of the next two and a half years, the Whistleblower raised concerns with SandRidge's senior management regarding how SandRidge calculated the oil and gas reserves in its periodic filings with the SEC. In the spring of 2014, prompted by the Whistleblower's concerns, SandRidge's internal audit department started an audit of the reserves calculation process.

   b. In December 2014, a draft internal audit report was provided to the Whistleblower for review and comment. The Whistleblower expressed strong disagreement with the draft report, reiterating the Whistleblower's concerns about the "SEC reserves" and stating that the report "ha[d] missed the primary risks and problems associated with the entire reserves process." Later that same day, SandRidge offered promotions to vice president positions to three employees, including the Whistleblower. In doing so, SandRidge sought assurances from each of the employees that they would support management and were committed to the company. The Whistleblower declined the promotion, or to provide the assurances requested by management, due to ongoing concerns about the reserves calculation process.

c. The draft internal audit report was subsequently revised to address certain of the Whistleblower's concerns, and on or about January 16, 2015, this revised draft was provided to the Whistleblower. The Whistleblower wrote: "Everything looks good to me. I like the changes that were made." But the internal audit was never completed and a final version of the report was never disseminated to the Company's Board of Directors or Audit Committee.

d. On February 9, 2015, the Whistleblower was asked to attend a meeting to discuss updating or revising the map of oil and gas well locations that had previously been used by the company in its public filings. The Whistleblower asked to be recused from this project because, consistent with the concerns the Whistleblower had been raising, the Whistleblower did not support the methodology used to prepare the prior maps. The Whistleblower stated that this had become an "ethical issue" and the Whistleblower therefore could not participate in the project. The Whistleblower later met with a member of senior management to discuss the ethical concerns the Whistleblower had regarding this project.

e. In early to mid-March 2015, the Whistleblower again informed SandRidge's senior management of the Whistleblower's concerns regarding the Company's process in calculating oil and gas reserves. In the same period, senior management was discussing a number of structural changes at the Company, including a restructuring of reservoir engineering,

which would have changed the Whistleblower's reporting structure and level of responsibility. In the course of these discussions, senior management considered the Whistleblower's possible termination.

    f. On or about March 31, 2015, SandRidge senior management decided to terminate the Whistleblower. In discussing the Whistleblower's termination, members of SandRidge senior management expressed among themselves their belief that the manner in which the Whistleblower was raising concerns regarding the reserve process was disruptive, and that the company could replace the Whistleblower with someone "who could do the work without creating all of the internal strife." At that time, SandRidge had not further investigated the Whistleblower's concerns regarding the reserves process, other than conducting its incomplete internal audit. The company terminated the Whistleblower on April 1, 2015, the same day it made a large scale reduction in its workforce.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

A. declaring this action to be a class action properly maintained pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B. awarding Lead Plaintiffs and other members of the Class damages together with interest thereon;

C. with respect to Securities Act Claim Count II, ordering that the Trust I Offering and the Trust II Offering be rescinded;

D. awarding Lead Plaintiffs and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E. awarding Lead Plaintiffs and other members of the Class such other and further relief as may be just and proper under the circumstances.

## **JURY DEMAND**

Lead Plaintiffs demand a trial by jury.

Dated: May 1, 2017

Respectfully submitted,

/s/ Laurence M. Rosen
THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen, Esq. (pro hac vice)
Phillip Kim, Esq. (pro hac vice)
275 Madison Avenue, 34th Floor
New York, NY  10016
(212) 868-1060
(212) 202-3827 (Facsimile)
lrosen@rosenlegal.com
pkim@rosenlegal.com

*Lead Counsel for Plaintiffs*

WOHL & FRUCHTER, LLP
J. Elazar Fruchter
570 Lexington Avenue, 16th Floor
New York, NY  10022
(212) 758-4000
(212) 758-4004 (Facsimile)
jfruchter@wohlfruchter.com

*Additional Plaintiffs' Counsel*

Nicholas G. Farha, OBA # 21170
FARHA LAW, PLLC
1900 NW Expressway, Suite 501
Oklahoma City, OK 73118
(405) 471-2224
(405) 810-9901 (Facsimile)
nick@farhalawfirm.com

*Liaison Counsel for Plaintiffs*

## **<u>CERTIFICATE OF SERVICE</u>**

  I certify that on May 1, 2017, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the appropriate ECF registrants.

                By: *s/ Laurence M. Rosen*