# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUANE & VIRGINIA LANIER TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>SANDRIDGE ENERGY INC., et al.,<br><br>　　　　　　　　　Defendants. | Case No. CIV-15-00634-SLP |

**DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
AND BRIEF IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Introduction .................................................................................................................... 1

Statement of Facts ......................................................................................................... 2

A.    The SandRidge Energy Action ............................................................................ 3

B.    Commencement of The Instant Action ................................................................ 5

Legal Standard ............................................................................................................... 6

Argument ....................................................................................................................... 8

I.    THE APPLICABLE STATUTE OF LIMITATIONS EXPIRED IN NOVEMBER 2014 BEFORE THIS ACTION WAS COMMENCED. ........................................ 8

II.    UNDER *CHINA AGRITECH*, CLASS CLAIMS ARE NOT SUBJECT TO TOLLING AND ARE THEREFORE TIME-BARRED. ..................................... 10

III.    A PROMPT RESOLUTION OF THIS MOTION WILL STREAMLINE THIS LITIGATION AND FACILITATE THE FORTHCOMING MEDIATION. ........ 11

Conclusion ................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ........................................................................................................... 1

*Baughman v. Roadrunner Commc'ns LLC*,
    CV-12-565-PHX-SMM, 2014 WL 3955262 (D. Ariz. Aug. 13, 2014) ...................... 12

*Baum v. Faith Techs., Inc.*,
    10-CV-0144-CVE-TLW, 2010 WL 2365451 (N.D. Okla. June 9, 2010) .................... 6

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master
    Fund LP v. Bear Stearns Cos.*, 829 F.3d 173 (2d Cir. 2016) ........................................ 9

*Brown v. Alma, Inc.*,
    No. 06-2548-JAR, 2007 WL 3046706 (D. Kan. Oct. 16, 2007) .................................. 7

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) ..............................................................................................*passim*

*Denver Health and Hosp. Auth. v. Beverage Distribs. Co.*,
    546 Fed. App'x. 742 (10th Cir. 2013) (unpublished) .................................................. 7

*In re Eaton Corp. Sec. Litig.*,
    No. 16-CV-5894 (JGK), 2017 WL 4217146 (S.D.N.Y. Sept. 20, 2017) ..................... 9

*Farley v. Stacy*,
    2015 WL 3866836 (N.D. Okla. Jun 23, 2015) ........................................................... 8

*In re Farmers Ins. Co., Inc., FCRA Litig.*,
    738 F. Supp. 2d 1180 (W.D. Okla. 2010) ................................................................. 10

*Floyd v. Bowen*,
    833 F.2d 529 (5th Cir. 1987) ................................................................................... 12

*Hernandez v. Liberty Ins. Corp.*,
    CIV-14-892-D, 2015 WL 13567417 (W.D. Okla. May 11, 2015) ............................. 7

*Ladd v. Equicredit Corp. of Am.*,
    CIV. A. 00-2688, 2001 WL 175236 (E.D. La. Feb. 21, 2001) ................................ 12

*Metzger v. Am. Fid. Assurance Co.*,
 CIV-04-1387-M, 2006 WL 2792435 (W.D. Okla. Sept. 26, 2006) ......................... 2, 7

*Miller v. Fiedler*,
 No. 1:13-CV-566, 2014 WL 287514 (W.D. Mich. Jan. 24, 2014) .............................. 9

*Miller v. St. Paul Fire & Marine Ins. Co.*,
 480 F. Supp. 32 (W.D. Okla. 1979) ........................................................................ 7

*Person v. St. Louis-San Francisco Ry. Co.*,
 428 F. Supp. 1148 (W.D. Okla. 1976) ..................................................................... 7

*Roaring Fork Capital SBIC, L.P. v. ATC Healthcare, Inc.*,
 No. 10-cv-00338-MSK-CBS, 2011 WL 1258504 (D. Colo. Mar. 29,
 2011) ....................................................................................................................... 8

*In re SandRidge Energy, Inc. Sec. Litig.*,
 No. 5:12-cv-01341-W ....................................................................................*passim*

*Spurlock v. Townes*,
 No. 9-CV-786 WJ/DJS, 2010 WL 11470590 (D.N.M. June 23, 2010) ....................... 7

**Statutes and Rules**

28 U.S.C. § 1658(b) ................................................................................................... 8, 9

Fed. R. Civ. P. 12(c) ................................................................................................... 6, 7

Private Securities Litigation Reform Act ........................................................................ 4

The undersigned Defendants respectfully submit this memorandum of law in support of their motion for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiffs filed this class action asserting claims under the Securities Exchange Act of 1934 ("Exchange Act") on June 9, 2015, more than two years after they claim the putative class learned of the alleged fraud. Because the Exchange Act has a two-year statute of limitations, the claims are time-barred absent tolling of the limitations period. Invoking a tolling rule established in *American Pipe & Construction. Co. v. Utah*, 414 U.S. 538 (1974), Plaintiffs alleged that the statute of limitations was tolled by the filing of a prior complaint in *In re SandRidge Energy, Inc. Securities Litigation*, No. 5:12-cv-01341-W (the "SandRidge Energy Action"), in which claims were asserted on behalf of the same putative class and then dismissed. The Supreme Court, however, recently clarified that "[t]ime to file a class action falls outside the bounds of *American Pipe*." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 (2018).

Under *China Agritech*, the *American Pipe* rule can toll only *individual* shareholder claims. This means that a plaintiff may not rely on the doctrine to commence a *class* action outside the applicable statute of limitations. *See id.* at 1804 ("*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations."); *id.* at 1806 ("*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action."). As a result, all claims asserted on behalf of putative class members in this lawsuit (the "Class Claims")

1

are time-barred. The Court should thus grant judgment on the pleadings dismissing the Class Claims.

Granting this motion for judgment on the pleadings will streamline this litigation significantly by rendering moot Plaintiffs' pending motion for class certification (Dkt. 170). It will also greatly facilitate efforts to mediate this matter at the Court-ordered mediation scheduled to occur on or before October 31, 2018 (Dkt. 206), by clarifying that the maximum amount of damages that may be sought in this action are a small fraction of the $282.3 million that Lead Plaintiffs purport to seek on behalf of the entire putative class (*see* Dkt. 212 ¶ 10).

### STATEMENT OF FACTS[1]

SandRidge Energy, Inc. ("SandRidge") is an oil and gas exploration company with properties in the Mississippian formation in Oklahoma and Kansas ("the Mississippian"). Dkt. 1 ¶ 38; Dkt. 78 ¶¶ 4, 93. Its common stock trades on the New York Stock Exchange. In 2011 and 2012, SandRidge monetized its interests in certain Mississippian oil and gas properties by conveying them to two royalty trusts — Mississippian Trust I ("Trust I") and Trust II ("Trust II") — which then sold units to investors in public offerings. Dkt. 1 ¶ 39; Dkt. 78 ¶¶ 100-01, 177-78. Trust I and Trust II are separate and distinct legal entities, and

---

[1] For the purposes of this motion only, Defendants accept the facts alleged in the complaint as true. *See, e.g.*, *Metzger v. Am. Fid. Assurance Co.*, No. 05-cv-1387-M, 2006 WL 2792435, at *2 (W.D. Okla. Sept. 26, 2006) (holding that when reviewing a motion for judgment on the pleadings under Rule 12(c), a court "must accept all the well-pleaded allegations of the complaint as true . . . .").

the units each issued are distinct securities that trade separately from each other and from SandRidge common stock. *See* Dkt. 78 ¶¶ 39-40.

In November 2012, SandRidge made a number of disclosures, including statements concerning the performance of oil and gas wells in the Mississippian that allegedly revealed that the Mississippian had more low-margin natural gas and less high-margin oil than previously anticipated. Dkt. 1 ¶¶ 70-72; Dkt. 78 ¶¶ 227-30. Following the release of this and other news, the price of SandRidge common stock and Mississippian Trusts units dropped. Dkt. 1 ¶¶ 73-74; Dkt. 78 ¶¶ 232-33; Gimbel Decl. Ex. 1, Glitz Third Consolidated Amended Complaint ("Glitz Third Am. Compl.") ¶¶ 298, 300-04, 306-07. Specifically, SandRidge's common stock dropped 9.7%, from a close of $6.10 per share on November 8, 2012 to a close of $5.51 per share on November 9, 2012. Gimbel Decl. Ex. 1, Glitz Third Am. Compl. ¶¶ 306-07. The price of Trust I units dropped by 7.4%, from a close of $18.95 per unit on November 8, 2012 to a close of $17.54 per unit on November 9, 2012. Dkt. 1 ¶ 74; Dkt. 78 ¶ 232. The price of Trust II units dropped by 8.5%, from a close of $19.36 per unit on November 8, 2012 to close at $17.70 per unit on November 9, 2012. Dkt. 1 ¶ 74; Dkt. 78 ¶ 233.

### A. *The SandRidge Energy Action*

Less than a month later, on December 5, 2012, plaintiffs James Glitz and Rodger Thornberry filed the SandRidge Energy Action on behalf of a putative class of investors in SandRidge common stock. Gimbel Decl., Ex. 2, Glitz Initial Complaint ("Glitz Compl."). The initial complaint did not assert claims on behalf of investors in Trust I or Trust II securities. The plaintiffs alleged that SandRidge and certain of its officers and directors

3

had inflated the value of SandRidge's common stock by making misrepresentations and omissions concerning the performance of Mississippian wells, causing SandRidge common stock to plummet "[w]hen Defendants' prior misrepresentations and fraudulent conduct became apparent to the market on November 8, 2012[.]" *Id.* ¶¶ 66-67.

Thereafter, the court consolidated the SandRidge Energy Action with a similar case and appointed several "lead plaintiffs" with authority to file an amended complaint on behalf of a putative class of SandRidge common stockholders. *See* Gimbel Decl., Ex. 3, SandRidge Energy Action (Dkt. 60). On July 23, 2013, the lead plaintiffs in the SandRidge Energy Action filed their amended complaint. Gimbel Decl. Ex. 4, Glitz Amended Complaint. The amended complaint for the first time added several new plaintiffs who sought to assert claims on behalf of a putative class of purchasers of Trust I and Trust II units. *Id.* ¶ 54. Specifically, the trust unitholders claimed that the Defendants' alleged misrepresentations and omissions concerning Mississippian wells also inflated the price of Trust units, leading the price of the units to drop precipitously when the "fraud" allegedly was revealed to the market on November 8 and 9, 2012. *Id.* ¶¶ 329-30, 349, 355-57; 362 (alleging that the November 9, 2012 price drops "were a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market").

On May 11, 2015, the Court dismissed the new trust unitholder claims without prejudice for failure to comply with the notice and lead plaintiff requirements of the Private Securities Litigation Reform Act. *See* Gimbel Decl., Ex. 5 at 23-24, SandRidge Energy Action (Dkt. 180).

4

### B.    *Commencement of The Instant Action*

On June 9, 2015, Lead Plaintiff Lanier Trust commenced this action, seeking to re-assert the trust unitholder claims that had been dismissed without prejudice from the SandRidge Energy Action one month earlier.  Like the unitholder plaintiffs in the SandRidge Energy Action, Lanier Trust alleged that a fraud had been "revealed to investors and the market" on November 8, 2012, when SandRidge made statements indicating that "Mississippian formation assets consisted of far more low-margin natural gas deposits and far fewer high-margin oil deposits than the market had previously been led to believe." Dkt. 1 ¶¶ 71, 78-80.  Also like the Trust I and Trust II unitholders in the SandRidge Energy Action, Lanier Trust's complaint purported to assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act Claims"), both on behalf of Lanier Trust individually and on behalf of a putative class of purchasers of Trust I or Trust II common units who acquired shares between April 7, 2011 and November 8, 2012.  *See id.* ¶¶ 1, 6-7.[2]

Lanier Trust's initial complaint was filed more than two years after the purported "fraud" allegedly was revealed to the market in November 2012.  However, Lanier Trust alleged that the applicable statutes of limitations for all claims asserted in the complaint, including the Class Claims, were tolled "as a result of the filing of these claims in a purported class action in this court titled . . . the 'SandRidge Energy Action[.]'" *Id.* ¶ 84.

---

[2] The complaint also asserted claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, which have since been dismissed as untimely because they were filed after the expiration of the statute of repose applicable to claims under the Securities Act. *See* Dkt. 129 at 2.

5

Over one year later, on November 11, 2016, an amended complaint was filed, which for the first time joined four new named plaintiffs — Ivan Nibur, Lawrence Ross, Jase Luna, and Matthew Willenbucher (together with Lanier Trust, "Lead Plaintiffs") — who also sought to assert claims both individually and on behalf of a putative class of Mississippian Trust unitholders. *See* Dkt. 78 ¶ 1. On February 15, 2018, Lead Plaintiffs and two proposed intervenors[3] filed a motion for class certification, which remains pending before the Court. Dkt. 170.

On June 11, 2018, the Supreme Court issued its decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), which makes clear that the Class Claims are all time-barred because tolling is unavailable for claims asserted on behalf of a class. *Id.* at 1804 ("*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails" but "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.").

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). If, as here, the movant seeks only to dismiss certain claims, the motion may seek a partial judgment. *See Baum v. Faith Techs., Inc.*, 10-CV-0144-CVE-TLW, 2010 WL 2365451, at *2 (N.D. Okla. June 9, 2010)

---

[3] The motion was joined by Deborah Rath, who has a pending motion to substitute for deceased named plaintiff Lawrence Ross (Dkt. 167), and Reed Romine, who seeks leave to intervene as a named plaintiff and proposed class representative (Dkt. 166).

6

(Rule 12(c) is equally applicable when a party seeks only partial judgment on the pleadings); *see also Hernandez v. Liberty Ins. Corp.*, CIV-14-892-D, 2015 WL 13567417, at *2 (W.D. Okla. May 11, 2015) (granting defendant's motion for *partial* judgment on the pleadings).

When reviewing a motion for judgment on the pleadings under Rule 12(c), a court "must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party." *Metzger*, 2006 WL 2792435, at *2. Judgment on the pleadings should be granted where the moving party has "clearly establish[ed] that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Denver Health and Hosp. Auth. v. Beverage Distribs. Co.*, 546 Fed. App'x. 742, 745 (10th Cir. 2013) (unpublished) (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006)). Courts routinely grant motions for judgment on the pleadings where the applicable statute of limitations has run. *See e.g.*, *Spurlock v. Townes*, No. 9-CV-786 WJ/DJS, 2010 WL 11470590, at *3 (D.N.M. June 23, 2010); *Brown v. Alma, Inc.*, No. 06-2548-JAR, 2007 WL 3046706, at *2 (D. Kan. Oct. 16, 2007); *Person v. St. Louis-San Francisco Ry. Co.*, 428 F. Supp. 1148, 1150 (W.D. Okla. 1976); *Miller v. St. Paul Fire & Marine Ins. Co.*, 480 F. Supp. 32, 33-34 (W.D. Okla. 1979). As set forth below, that is precisely the case here.

**ARGUMENT**

I. THE APPLICABLE STATUTE OF LIMITATIONS EXPIRED IN NOVEMBER 2014 BEFORE THIS ACTION WAS COMMENCED.

The Exchange Act has "a two-year statute of limitations." *China Agritech*, 138 S. Ct. at 1802 (citing 28 U.S.C. § 1658(b)). The statute of limitation runs from the "discovery of the facts constituting the violation." 28 U.S.C. § 1658(b). "'[D]iscovery,' as used in Section 1658(b)(1), 'encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known.'" *Farley v. Stacy*, 2015 WL 3866836, at *12 (N.D. Okla. Jun 23, 2015) (quoting *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 638 (2010)); *see also Roaring Fork Capital SBIC, L.P. v. ATC Healthcare, Inc.*, No. 10-cv-00338-MSK-CBS, 2011 WL 1258504, at *8 (D. Colo. Mar. 29, 2011) (stating that an investor "'discovers' a fraudulent statement either when it *actually* knows the relevant facts or when, 'with due diligence,' it *should* have known of those facts") (emphasis in original). Accordingly, the statute of limitations begins to run when a plaintiff "either knew or should have known of the misleading character of [a] [d]efendant[']s statement[.]" *Roaring Fork Capital SBIC*, 2011 WL 1258504, at *9.

Here, Plaintiffs allege that "the nature and extent of Defendants' fraud" was "revealed to investors and the market" on November 8 and 9, 2012. Dkt. 1 ¶¶ 78-80 (alleging that "[t]he declines in the price of SandRidge Trusts units after the disclosures on November 8th and 9th, 2012, came to light were a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market"); *see also* Dkt. 78 ¶¶ 228-31 (alleging that risks of poor oil production "previously concealed" by defendants

8

were revealed during a November 9, 2012 conference call); *see also* Gimbel Decl., Ex. 2 ¶ 67, Glitz Compl. ("When Defendants' prior misrepresentations and fraudulent conduct became apparent to the market on November 8, 2012, SandRidge's stock price fell precipitously, as the prior artificial inflation came out of the stock price."). As a result, class members' Exchange Act claims accrued on or before November 9, 2012. Where a "plaintiff claims that the alleged fraud was disclosed" to the market on a particular date, courts have no trouble concluding that the plaintiff's claims accrued by that date. *See, e.g.*, *In re Eaton Corp. Sec. Litig.*, No. 16-CV-5894 (JGK), 2017 WL 4217146, at *4 (S.D.N.Y. Sept. 20, 2017) (where plaintiff alleged that the fraud was disclosed on July 29, 2014, court ruled that claim accrued on that date and expired two years later); *Miller v. Fiedler*, No. 1:13-CV-566, 2014 WL 287514, at *7 (W.D. Mich. Jan. 24, 2014) (holding that Exchange Act claims accrued on date identified in complaint as when defendants' statements were revealed to be false); *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 308 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund LP v. Bear Stearns Cos.*, 829 F.3d 173 (2d Cir. 2016) (holding that the statute of limitations for plaintiff's Exchange Act claim under Section 18 began to accrue by March of 2008, the date plaintiff alleged that defendants made corrective disclosures, which revealed defendants' alleged fraud).

Because the Exchange Act claims here accrued by November 9, 2012, the statute of limitations expired no more than two years later, on November 9, 2014. *See* 28 U.S.C. § 1658(b). All claims filed after that date are time-barred, in the absence of some basis for tolling the statute of limitations. *See id.*

## II. UNDER *CHINA AGRITECH*, CLASS CLAIMS ARE NOT SUBJECT TO TOLLING AND ARE THEREFORE TIME-BARRED.

There is no dispute that Lead Plaintiff Lanier Trust filed the initial complaint in this action long after the natural expiration of the statute of limitations period. For that reason, Lanier Trust alleged that the limitations period "ha[d] been tolled as a result of the filing of these claims in a purported class action in this court titled In re SandRidge Energy, Inc. Securities Litigation, case no. 5:12-cv-01341-W (the 'SandRidge Energy Action')." Dkt. 1 ¶ 84. The allegation was an attempt to invoke the *American Pipe* tolling rule, under which the filing of a putative class action "tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action *individually* or file *individual* claims if the class fails." *China Agritech*, 138 S. Ct. at 1804 (emphasis added). The Supreme Court's recent decision in *China Agritech* makes clear, however, that *American Pipe* tolling applies only to *individual* claims; it allows individual unnamed class members to rely on tolling to assert *individual* claims later, if the initial class action fails, but it does not "permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id*. at 1804, 1806.[4]

In a majority opinion joined by eight of the nine Justices, the Supreme Court explained that nothing in *American Pipe* "so much as hints that tolling extends to otherwise

---

[4] Before the Supreme Court's decision in *China Agritech*, there was a circuit split on the question of whether *American Pipe* tolling applied to successive class claims. *See China Agritech*, 138 S. Ct. at 1805. Although the Tenth Circuit had not yet addressed the issue, a decision of this Court held that *American Pipe* tolling extends to class claims as well as individual claims. *See In re Farmers Ins. Co., Inc., FCRA Litig.*, 738 F. Supp. 2d 1180, 1210 (W.D. Okla. 2010). That decision is no longer good law in light of *China Agritech*.

10

time-barred class claims." *Id.* at 1806.  Nor do the policies behind *American Pipe* support the tolling of class claims:

> The watchwords of *American Pipe* are efficiency and economy of litigation, a principal purpose of Rule 23 as well.  Extending *American Pipe* tolling to successive class actions does not serve that purpose.  The contrary rule, allowing no tolling for out-of-time class actions, will propel putative class representatives to file suit well within the limitation period and seek certification promptly.

*Id.* at 1811.  For these and other reasons, the Court held that the "[t]ime to file a class action falls outside the bounds of *American Pipe*." *Id*.  The Court's holding was clear and unequivocal and, as the concurrence acknowledged, amounts to a "blanket *no-tolling-of-class-claims-ever* rule." *Id.* at 1814 (emphasis added) (Sotomayor, J., concurring).  Because class claims may never be tolled under *American Pipe*, the Class Claims at issue here are time-barred, and the Court should enter judgment dismissing the claims.[5]

## III.   A PROMPT RESOLUTION OF THIS MOTION WILL STREAMLINE THIS LITIGATION AND FACILITATE THE FORTHCOMING MEDIATION.

The Court can and should address this motion in advance of the pending motion for class certification.  *See* Dkt. 170.  A court may, in the interest of judicial economy, address

---

[5] Any other result would run contrary to the concerns over "efficiency and economy of litigation" articulated in *China Agritech*.  *See China Agritech*, 138 S. Ct. at 1806.  As the Supreme Court explained, "[t]o benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims." *Id*. at 1808.  A plaintiff who seeks to serve as a class representative after expiration of the limitation period, however, "can hardly qualify as diligent in asserting claims and pursuing relief." *Id*.  Moreover, extending tolling to class claims would "allow extension of the statute of limitations time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation[,]" "a result [not] envisioned by *American Pipe*." *Id*. at 1803.

11

motions that would dispose of class claims in advance of issuing a decision on class certification. *See, e.g.*, *Floyd v. Bowen*, 833 F.2d 529, 534-35 (5th Cir. 1987) ("[T]he class action litigation may be halted by a Rule 12 motion to dismiss or by a Rule 56 motion for summary judgment. This is the rule in several other circuits as well.") (collecting cases); *Ladd v. Equicredit Corp. of Am.*, CIV. A. 00-2688, 2001 WL 175236, at *1 (E.D. La. Feb. 21, 2001) (staying all class certification issues pending resolution of defendant's summary judgment motion); *Baughman v. Roadrunner Commc'ns*, *LLC*, CV-12-565-PHX-SMM, 2014 WL 3955262, at *3 (D. Ariz. Aug. 13, 2014) ("Since a decision on the merits may render all class certification issues moot, the Court may properly refuse to entertain motions for class certification until a dispositive motion has been resolved."). Here, if the Court grants this motion for judgment on the pleadings, it will moot Plaintiffs' pending motion for class certification, because there will be no Class Claims to prosecute and therefore no class to certify.

In addition to streamlining this litigation by resolving all of the certification issues before the Court, the prompt resolution of this motion will greatly facilitate the parties' efforts to settle this matter at the mediation scheduled to occur on or before October 31, 2018 by clarifying the scope of the damages claim in the case. While Plaintiffs currently purport to seek $282.3 million on behalf of the putative class (*see* Dkt. 212 ¶ 10), Defendants believe that the maximum damages recoverable in this action cannot exceed the approximately $1.2 million in losses claimed by the individual plaintiffs,[6] because all

---

[6] *See* Dkt. 37-3 (Plaintiffs' "Loss chart" asserting $1,151,028.70 in claimed losses).

of the Class Claims are time-barred. Without clarity as to the scope of the remaining damages claim, it will be difficult for the parties to mediate productively.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (i) grant Defendants' motion for partial judgment on the pleadings, and (ii) enter judgment dismissing all Class Claims.[7]

---

[7] Defendants expressly reserve all defenses as to the remaining individual claims, including without limitation their statute of limitations defenses.

| | |
|---|---|
| Dated: July 2, 2018 | Respectfully Submitted, |
| | CHRISTENSEN LAW GROUP |
| | |
| | */s/ Thomas B. Snyder* |
| COVINGTON & BURLING LLP | Thomas B. Snyder, Esq., OBA #31428 |
| Mark P. Gimbel (admitted *pro hac vice*) | The Parkway Building |
| C. William Phillips (admitted *pro hac vice*) | 3401 N.W 63rd St., Ste. 600 |
| Christopher Y.L. Yeung (admitted *pro hac vice*) | Oklahoma City, OK 73116 |
| The New York Times Building | (405) 232-2020 |
| 620 Eighth Avenue | |
| New York, NY 10018-1405 | *Attorneys for James D. Bennett and* |
| (212) 841-1000 | *Matthew K. Grubb* |
| | |
| | CORBYN HAMPTON LAW FIRM |
| | |
| | */s/ George S. Corbyn* |
| LATHAM & WATKINS LLP | George S. Corbyn, Jr., OBA #1910 |
| J. Christian Word (admitted *pro hac vice*) | 211 North Robinson, Suite 1910 |
| christian.word@lw.com | One Leadership Square |
| 555 Eleventh Street, NW, Suite 1000 | Oklahoma City, OK 73102 |
| Washington, D.C. 20004 | (405) 239-7055 |
| (202) 637-2200 | |
| | *Attorneys for Defendant Tom L. Ward* |
| | |
| | WILSON LAW FIRM |
| | |
| | */s/ Ryan S. Wilson* |
| BRACEWELL LLP | Ryan S. Wilson |
| W. Stephen Benesh (admitted *pro hac vice*) | Post Office Box 891390 |
| Patrick A. Caballero (admitted *pro hac vice*) | Oklahoma City, OK 73189 |
| David B. Springer (admitted *pro hac vice*) | (405) 246-0092 |
| 111 Congress Ave., Suite 2100 | |
| Austin, Texas 78701 | *Attorneys for Defendant SandRidge* |
| (512) 494-3680 | *Mississippian Trust I* |

14

15

CONNER & WINTERS, LLP

*/s/ Kiran A. Phansalkar*
Kiran A. Phansalkar, OBA #11470
kphansalkar@cwlaw.com
Mitchell D. Blackburn, OBA #12217
mblackburn@cwlaw.com
211 North Robinson
Oklahoma City, OK 73102
(405) 272-5711

*Attorneys for SandRidge Energy, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing, which will send notification of such filing to all counsel registered through the ECF System.

*/s/ Thomas B. Snyder*
Thomas B. Snyder