**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DUANE & VIRGINIA LANIER TRUST, Individually and On Behalf of All Others Similarly Situated, ) ) ) ) | **Civil Action No. 15-cv-00634-SLP** |
| Plaintiffs, ) ) | **CLASS ACTION** |
| v. ) ) | **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL** |
| SANDRIDGE MISSISSIPPIAN TRUST I, SANDRIDGE MISSISSIPPIAN TRUST II, TOM L. WARD, JAMES D. BENNETT, MATTHEW K. GRUBB, RANDALL D. COOLEY, JIM J. BREWER, EVERETT R. DOBSON, WILLIAM A. GILLILAND, DANIEL W. JORDAN, ROY T. OLIVER, JR., JEFFREY S. SEROTA, D. DWIGHT SCOTT, RAYMOND JAMES & ASSOCIATES, INC., MORGAN STANLEY & CO. LLC (F/K/A MORGAN STANLEY & CO INC.), MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., CITIGROUP GLOBAL MARKETS INC., and RBC CAPITAL MARKETS, LLC, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |
| SANDRIDGE ENERGY, INC., ) ) | |
| Nominal Defendant. ) ) ) | |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     DEFENDANTS' MISSTATEMENTS ABOUT BACKGROUND FACTS ........... 2

III.    ARGUMENT ............................................................................................................ 3

        A.      Plaintiffs Conferred With Defendants Concerning the Relief
             Requested in this Motion ................................................................................ 3

        B.      Plaintiffs' Proposed Additional Search Parameters Are Proportional .......... 4

             1.      Defendants refused, and still refuse, to quantify the burden of
                  additional discovery ............................................................................ 4

             2.      The amount in controversy approaches or exceeds $400
                  million ................................................................................................. 5

        C.      Plaintiffs' Proposed Additional Search Parameters Are Reasonable ............ 7

        D.      Plaintiffs' Proposed Search Terms Are Not Overbroad ................................ 9

IV.    CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cooper Clinic, P.A. v. Pulse Sys., Inc.*,
  No. 14-1305-JAR-GLR, 2017 WL 396286 (D. Kan. Jan. 30, 2017)............................4

*Fox v. Noram Energy Corp.*,
  198 F.3d 257 (10th Cir. 1999) ...................................................................................4

*Gregory v. Gregory*,
  No. 2:15-cv-0320 (WHW)(CLW), 2016 WL 6122456 (D.N.J. Oct. 18, 2016) ...........5

*In re Omnicare, Inc. Sec. Litig.*,
  769 F.3d 455 (6th Cir. 2014) .................................................................................8, 9

*Loftis v. Duroy*,
  No. CIV-13-910-R, 2017 WL 5077899 (W.D. Okla. Nov. 3, 2017)............................4

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010)..................................................................................................6

*Metzger v. Am. Fid. Assur. Co.*,
  No. CIV-05-1387-M, 2006 WL 3097178 (W.D. Okla. Oct. 31, 2006) ........................5

*Robinson v. City of Arkansas City*,
  No. 10–1431–JAR–GLR, 2012 WL 603576 (D. Kan. Feb. 24, 2012) .....................1, 7

**Rules**

Fed. R. Civ. P. 26(b)(1) .................................................................................................7

## I.      INTRODUCTION

Defendants' arguments opposing Plaintiffs' motion to compel only confirm that the Court should grant it. In fact, Defendants principally oppose Plaintiffs' motion to compel production of documents because they claim Plaintiffs should be able to point to specific information divulged in *the documents Plaintiffs have not seen* to be entitled to see them. The law does not impose on Plaintiffs this logically impossible task.

Defendants likewise misstate the burden they bear under Rule 26, claiming it is sufficient to have searched a limited number of sources "most likely" to have relevant documents. In fact, discovery "requires a joint effort to identify *all* employees likely to have been authors, recipients or custodians of documents responsive to the requests for production." *Robinson v. City of Arkansas City*, No. 10–1431–JAR–GLR, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012).[1]

Finally, Defendants fault Plaintiffs for purportedly failing to discuss the proposed search terms and custodians before filing this motion. In fact, the list of Plaintiffs' proposed search terms at issue in this motion was taken verbatim from an email Plaintiffs sent Defendants on April 12 proposing additional search terms, to no avail. And Defendants have made quite clear that they will refuse to review the documents of any more custodians, making any further discussions of custodians futile.[2]

---

[1] Internal citations and quotations are omitted and emphasis is added unless otherwise noted.

[2] Based on Defendants' representation that all relevant, responsive documents would have been included in their production, Plaintiffs concede that the prong of their motion to compel seeking documents from the period after November 8, 2012 is moot. Plaintiffs

## II.     DEFENDANTS' MISSTATEMENTS ABOUT BACKGROUND FACTS

Defendants trumpet that they made two document productions prior to the May 1, 2018 deadline for production. Yet these productions were entirely comprised of SandRidge's insurance policies and documents that had already been publicly filed or issued. These public documents were already in Plaintiffs' possession and, moreover, provided no insight into SandRidge's internal operations. Thus, the productions could not assist Plaintiffs in identifying search terms or custodians.

Defendants also claim that Plaintiffs did not clarify that they were working with the Column A and Column B framework. In fact, Plaintiffs' communications clearly acknowledged that Plaintiffs only sought to add terms to Column A and Column B rather than abandoning the whole structure. *See* Declaration of Christopher Y. L. Yeung ("Yeung Dec.") Exhibit 9. Implicitly acknowledging that they had misread Plaintiffs' clear statement, Defendants now claim that Plaintiffs should have corrected Defendants. Yet Plaintiffs did that, too. Yeung Dec. Exhibit 13, at 2 (letter from Jonathan Horne dated May 9, 2018, explaining that Plaintiffs' proposed Column B terms "would have to be coupled with a term from Column A").[3]

---

reserve their right to revisit this issue and move the Court for further relief should Plaintiffs' ongoing review of Defendants' production or depositions reveal deficiencies concerning this set of documents.

[3] The issue of the Electronically-Stored Information ("ESI") stipulation is a red herring. First, it is not at issue in this motion, which instead concerns search terms and custodians. Second, Defendants misstate the history of the dispute. *See* Yeung Dec. Exhibit 13, at 1 n.1 (correcting Defendants' inaccurate account). Defendants' unreasonable behavior delayed the resolution of the dispute that is, in any case, not at issue in this motion.

### III.   ARGUMENT

#### A.   Plaintiffs Conferred With Defendants Concerning the Relief Requested in this Motion

Defendants are simply wrong in asserting that "Plaintiffs never met and conferred about the vast majority of the relief they now seek." Def. Br. at 12.[4] In fact, Plaintiffs requested that Defendants employ additional custodians and search terms during the course of extensive correspondence and phone conferences between counsel.

During these negotiations, Defendants ignored Plaintiffs' arguments about individual custodians. Instead, Defendants took the position that non-Defendant employees' documents are relevant only if either: (i) the employees were the company's highest-level executives; or (ii) the documents were direct communication with Defendants. On this basis, Defendants categorically refused to produce any other custodians' documents.[5] The additional custodians proposed by Plaintiffs in this motion are precisely the types of custodians initially proposed by Plaintiffs and discussed by the parties. Defendants made their position clear, and it would have been futile to confer on particular additional custodians that Defendants had already implicitly rejected.

Similarly, every single search term Plaintiffs propose in this motion is one that Plaintiffs previously asked Defendants to run. In fact, the list of proposed search terms

---

[4] References to "Def. Br." are to Defendants SandRidge, Bennett, and Grubb's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel. Dkt. No. 220.

[5] Defendants cite to an email from their own counsel in which they "disagree … that SandRidge has categorically refused to do more." Def. Br. at 12, but the email itself references only "Plaintiffs' proposed search terms," not any proposed custodians. *See* Yeung Dec. Exhibit 16.

attached to Plaintiffs' Exhibit 1 (Dkt. No. 212-1) was taken directly from Plaintiffs' April 12 email to Defendants. Yeung Dec. Exhibit 9.[6]

### B.    Plaintiffs' Proposed Additional Search Parameters Are Proportional

>    *1.    Defendants refused, and still refuse, to quantify the burden of additional discovery*

Even as they ignore Plaintiffs' arguments and case law demonstrating that Plaintiffs' search terms are proportional, Defendants claim, for the first time, that they have spent $1.5 million combined in complying with discovery in this case and in SandRidge Energy. Def. Br. at 9. The $1.5 million Defendants have expended in partially complying with discovery is not disproportional for cases with alleged damages exceeding $400 million, just as a production of 730,000 pages is unexceptional for a class action asserting such high damages.[7] *See* Plaintiffs' Opening Brief (Dkt. No. 208, "Pl. Br.") at 24. Defendants do not refute this point nor do they distinguish Plaintiffs' cases.[8]

---

[6] In addition, while Plaintiffs marginally exceeded the page limits applicable to non-summary judgment motions, the four additional pages are immaterial and do not merit striking Plaintiffs' motion. *Loftis v. Duroy*, No. CIV-13-910-R, 2017 WL 5077899, at *1 (W.D. Okla. Nov. 3, 2017) (noting that plaintiff exceeded the page limits of Local Civil Rule 7.1 but taking no remedial action). In the lone case cited by Defendants, *Fox v. Noram Energy Corp.*, 198 F.3d 257, at *1 (10th Cir. 1999), one day after the court struck the plaintiffs' motion, the plaintiffs filed an application to reduce their motion to 25 pages by using a smaller font and spacing. The court granted the application and the next day the plaintiffs re-filed their motion. *Id.* Should the Court require Plaintiffs' compliance in this case, Plaintiffs would similarly seek to re-file an identical opening brief, reformatted to comport with the page limits.

[7] Defendants allude to Plaintiffs' refusal to pay any costs of SandRidge's document review, but "[b]ecause of the presumption that the responding party should bear the expense of complying with the requests, it bears the burden to establish that the discovery expense would be excessive and thus justify cost-shifting." *Cooper Clinic, P.A. v. Pulse Sys., Inc.*, No. 14-1305-JAR-GLR, 2017 WL 396286, at *6 (D. Kan. Jan. 30, 2017);

Moreover, Defendants have ***still failed to quantify the burden*** that Plaintiffs' proposed additional search parameters would impose. "Where, as here, a party makes only conclusory allegations of burdensomeness, and provides no detailed explanation, affidavit, or other evidence which demonstrate[s] that providing such information would be burdensome, time-consuming, or expensive, they cannot establish that responding to the discovery request imposes an undue burden." *Metzger v. Am. Fid. Assur. Co.*, No. CIV-05-1387-M, 2006 WL 3097178, at *9 (W.D. Okla. Oct. 31, 2006). The $1.5 million Defendants already spent in making their initial, deficient production does not bear on the proportionality of Plaintiffs' proposed additional search parameters, which are the subject of this motion to compel.[9]

### 2.    *The amount in controversy approaches or exceeds $400 million*

Defendants also grant themselves the benefit of a favorable ruling on their motion for partial judgment on the pleadings, arguing that "Plaintiffs can at most claim

---

*accord Gregory v. Gregory*, No. 2:15-cv-0320 (WHW)(CLW), 2016 WL 6122456, at *10 (D.N.J. Oct. 18, 2016) ("Shifting the cost of discovering electronic information is only appropriate when a party is seeking data that it not reasonably accessible without undue burden or expense"). Defendants have not alleged, much less satisfied their burden to show, that their discovery expenses have been, or would be, excessive.

[8] Recognizing the stakes at play, Defendants have invested significant resources beyond their discovery expenditures in litigating this case and the SandRidge Energy action. They have filed three motions to dismiss, two motions for judgment on the pleadings, eight depositions in this action and at least four in the SandRidge Energy action, each of which, to Plaintiffs' knowledge, was attended by at least five attorneys for the defense.

[9] Defendants misstate the factual record, as they did indeed refuse to provide hit counts or an estimate of their burden. Declaration of Jonathan Horne (Dkt. No. 212, "Horne Dec.") ¶ 7; Yeung Dec. Exhibit 13, at 2 ("though we have requested hit counts for search terms, Defendants have declined to provide them").

approximately $1.2 million in damages," Def. Br. at 15. Defendants' motion – their third dispositive motion – is simply a waste of time in which, in violation of their obligation of candor to the Court, Defendants omit and fail to distinguish controlling authority. *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010). But in any event, Defendants cite no authority for their novel argument that the burden of discovery may be limited by an assumption that the court will grant a dispositive motion. If that were the case, any party who wished to escape its discovery obligations could simply file a motion for summary judgment and assert that, according to their motion, the value of the claims is zero.

Finally, contrary to Defendants' claims, Plaintiffs' damages calculations do not conflict with any position Plaintiffs have taken with regard to class certification. Plaintiffs' expert's opinion that Trust unit prices would react to new material information about the Trusts within one day was limited "to the extent that I looked at one-day returns," Yeung Dec. Exhibit 12 at 77:18-21, and was qualified with the statement that "I would need to think more about it." *Id.* at 84:17-85:1. As Plaintiffs' expert recognized, damages analysis is a complicated, case-based inquiry even in efficient markets, and may not be easily reduced to a single disclosure on one day and a stock drop the next. Moreover, in the days immediately following the November 8, 2012 disclosure and the close of markets on November 9, analysts continued to issue reports clarifying the news revealed in the initial disclosure. *See* Reply Declaration of Jonathan Horne, Exhibits 39-42. Defendants also concede by their silence that the amount in controversy properly includes losses following the additional four drops alleged in the complaint.

Defendants also argue that the Court should ignore the potential benefit of additional discovery to the SandRidge Energy action, *In re SandRidge Energy, Inc. Securities Litigation*, No. 5:12-cv-01341-W (W.D. Okla.). Defendants admit, however that they have agreed to produce all documents to the plaintiffs in both actions. *See* Def. Br. at 9 n.8. Thus the plaintiffs in the SandRidge Energy action, who assert over $100 million in damages, stand to benefit from additional discovery, whether or not they themselves requested the same additional search terms and custodians.

C.    **Plaintiffs' Proposed Additional Search Parameters Are Reasonable**

Defendants misstate the applicable burden for their discovery efforts. Their burden is not satisfied by producing "the materials *most* likely to reveal" elements of Plaintiffs' claims. Def. Br. at 17-18; *id.* at 10-11 ("SandRidge already [] produced *many* documents that pertained to each of those so-called 'critical issues'"); *id.* at 22 ("SandRidge's terms resulted in the production of *large volumes of* documents concerning each of these topics"). Rather, under Rule 26, Defendants must conduct a reasonable search for responsive documents. Fed. R. Civ. P. 26(b)(1). The fact that Defendants produced *some* relevant documents does not relieve them of their obligation to conduct reasonable additional inquiries and produce other plainly relevant documents. "A party does not meet its discovery obligations by sticking its head in the sand and refusing to look for documents." *Robinson*, 2012 WL 603576, at *4.

One of the reasons Plaintiffs have cited for adding the proposed custodians and search terms is that the scienter of non-executive employees may be imputed to SandRidge. Defendants argue that Plaintiffs' position is foreclosed because the Tenth

7

Circuit has not explicitly ruled, as other Circuit Courts have, that such knowledge may be imputed to a corporate defendant. Def. Br. at 18. But that only indicates that imputation is a live issue in the Tenth Circuit, and thus the proper subject of discovery. Moreover, the test for when an employee's scienter may be imputed, *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 476 (6th Cir. 2014), is fact-based. Plaintiffs are seeking documents that may substantiate those facts. Defendants ask the Court to impose the untenable rule that Plaintiffs must first prove their claims in order to justify obtaining documents that are relevant to those claims.[10]

Likewise, Defendants argue that because Plaintiffs have not already demonstrated recklessness based on Defendants' limited initial production, it is "unlikely" that additional custodians will help establish that Defendants acted recklessly. Def. Br. at 20. Judge Miles-LaGrange already ruled that Plaintiffs sufficiently alleged recklessness. Dkt. No. 130 (Order Denying Motion to Dismiss). Proof of recklessness is a matter for summary judgment and trial, not for a motion to compel. Otherwise, Plaintiffs would have to prove recklessness to be entitled to the very documents that Plaintiffs would use to prove recklessness, handing Defendants an easy victory at trial by default.

Finally, Defendants entirely ignore the cases Plaintiffs cited, as well as Plaintiffs' argument that documents may still be relevant even if they do not touch on scienter because they may establish falsity and materiality. *See* Pl. Br. at 16-17.

---

[10] Defendants are also plainly wrong in asserting that SandRidge's scienter is not relevant because SandRidge remains in the case as a defendant only to the extent of available insurance. Def. Br. at 19. Plaintiffs need to prove SandRidge's scienter in order to recover from its insurance, which is substantial. Pl. Br. at 22.

**D.      Plaintiffs' Proposed Search Terms Are Not Overbroad**

Defendants' assertion that Plaintiffs "never raised any of these complaints about SandRidge's search terms" prior to the substantial completion deadline is misleading and inaccurate. Defendants informed Plaintiffs on April 5, 2018 of the search terms they were running. Horne Dec. ¶ 3. Plaintiffs responded with additional proposed search terms one week later. *Id..* On April 30, three weeks after receiving Plaintiffs' proposed terms, Defendants agreed to run a small fraction of the terms but still refused to even test the vast majority of them. *Id.* In letters dated May 9 and May 11, Plaintiffs provided detailed explanations for why the search terms they proposed were necessary to address deficiencies in Defendants' searches. *Id.* ¶ 4; Yeung Dec. Exhibits 13-14. There was no delay by Plaintiffs in this process. Defendants should not be heard to complain about the May 1 production deadline when they did not make any meaningful production prior to the day before the deadline, and did not reject Plaintiffs' terms for three weeks.

Defendants speculatively declare, citing no basis, that Plaintiffs "drastically overstate the likelihood that SandRidge's search terms will miss any critical documents." Def. Br. at 14. The lack of specifics in Defendants' claim reveals that it is mere rhetoric, not a fact-based argument. By how much do Plaintiffs purportedly overstate? What is the true likelihood? Why? Defendants provide no answers to these obvious questions.

Courts have found such "Defendants know best" objections insufficient to show that a search was adequate. *See* Pl. Br. at 25. Defendants' argument that "SandRidge's terms resulted in the production of large volumes of documents concerning" the topics identified by Plaintiffs, Def. Br. at 22 fails because Defendants provide no estimate of

how many responsive documents there were to be found. Nor could they, having refused

to run the proposed searches. For all anyone—including Defendants—knows, there are

thousands of documents clearly establishing Defendants' scienter that have not been

produced because they are not responsive to Defendants' search terms.[11]

Finally, Defendants mischaracterize the parties' discussions regarding

Chesapeake-related search terms. The Chesapeake wells are a critical issue with regard to

the Trust I allegations. Defendants did *not* simply accept Plaintiffs' proposed search

terms. Instead, they eliminated certain terms such as "Trust 1" or "Trust" (to be run in

conjunction with "Chesapeake") that would target documents pertaining to Trust I, the

only topic to which the search terms would be relevant. *See* Plaintiffs' Exhibit 1

(comparing "Modifications of Search Terms Proposed By Plaintiffs," #5, with

"Additional Search Terms Accepted By Defendants," #2).

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Compel as

set out in Plaintiffs' Opening Brief.

---

[11] Defendants claim that certain of Plaintiffs' proposed terms "*could* hit" on irrelevant documents, yet Defendants fail to cite any actual hit counts or to quantify the burden of reviewing these documents. The fact that Defendants might have to review irrelevant documents to find the relevant ones is a feature, not a bug – it is the necessary consequence of trying to find documents using search terms.

Dated: July 18, 2018                    Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        /s/ Jonathan Horne
                                        Jonathan Horne (Admitted *Pro Hac Vice*)
                                        Phillip Kim (Admitted *Pro Hac Vice*)
                                        Laurence M. Rosen (Admitted *Pro Hac Vice*)
                                        275 Madison Avenue, 34th Floor
                                        New York, New York 10016
                                        Telephone: (212) 686-1060
                                        Fax: (212) 202-3827
                                        Email: jhorne@rosenlegal.com
                                        Email: pkim@rosenlegal.com
                                        Email: lrosen@rosenlegal.com

                                        *Lead Counsel for Plaintiffs*

                                        **FARHA LAW, PLLC**
                                        Nicholas G. Farha, OBA #21170
                                        1900 NW Expressway, Suite 501
                                        Oklahoma City, Oklahoma 73118
                                        Telephone: (405) 471-2224
                                        Facsimile:  (405) 810-9901
                                        Email: nick@farhalawfirm.com

                                        *Liaison Counsel for Plaintiffs*

                                        **WOHL & FRUCHTER, LLP**
                                        J. Elazar Fruchter
                                        570 Lexington Avenue, 16th Floor
                                        New York, NY 10022
                                        Telephone: (212) 758-4000
                                        Facsimile: (212) 758-4004
                                        Email: jfruchter@wohlfruchter.com

                                        *Additional Plaintiffs' Counsel*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of July, 2018, I caused a true and correct copy of the foregoing PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO COMPEL, to be served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Jonathan Horne
Jonathan Horne
