UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DUANE & VIRGINIA LANIER TRUST, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-15-634-G |
| SANDRIDGE MISSISSIPPIAN TRUST I, et al., | ) ) ) ) | |
| Defendants. | ) | |

# ORDER

Before the Court are the motions for partial judgment on the pleadings based on the Court's January 18, 2019 Order, filed by Defendants Tom Ward, James Bennett, and Matthew Grubb ("Individual Defendants") and Defendant SandRidge Energy, Inc. ("SandRidge"). *See* Ind. Defs.' Mot. (Doc. No. 284); SandRidge's Mot. (Doc. No. 299). Lead Plaintiffs[1] have responded in opposition. *See* Doc. Nos. 294, 295, 296, 297, 310, 311, 312, 313. The Individual Defendants and SandRidge have replied. *See* Ind. Defs.' Reply (Doc. No. 298); SandRidge's Reply (Doc. No. 318).

---

[1] These include the Duane & Virginia Lanier Trust ("Lanier Trust"); Ivan Nibur ("Nibur"); Jase Luna ("Luna"), sometimes referred to in pleadings and papers as "Luna Jase," *see*, *e.g.*, Consol. Am. Compl. (Doc. No. 78 (suppl. by Doc. No. 120)) ¶ 35, Matthew Willenbucher ("Willenbucher"); and substituted Lead Plaintiff Deborah Rath, as agent of the Estate of Lawrence Ross, deceased, and as attorney-in-fact for Sonja Rath, Personal Representative of the Estate of Lawrence Ross, deceased ("Rath"). *See* Doc. No. 259.

SUMMARY OF THE PLEADINGS

SandRidge explored, developed, and produced natural gas and oil reserves in, among other locations, the Mississippian Formation, "a geological formation located in northern Oklahoma and south-central Kansas." Consol. Am. Compl. ¶ 87. "[T]o finance increased capital expenditures planned for 2011, SandRidge decided to 'monetize' certain of its existing oil and gas assets in [n]orthern Oklahoma by selling interests in those assets to the public via a royalty trust." *Id.* ¶ 4. To this end, SandRidge created the SandRidge Mississippian Trust I ("Trust I") and conveyed to it royalty interests consisting of a share of Sandridge's revenue from (a) existing horizontal oil and gas wells in five Oklahoma counties, collectively referred to as the "Trust I Area of Mutual Interest" ("Trust I AMI"), and (b) certain horizontal oil and gas wells to be drilled in the Trust I AMI. *Id.* To pay for these royalty interests, Trust I committed to sell common units to investors in an initial public offering ("Trust I IPO") and transfer the net proceeds of that sale to SandRidge. *Id.* ¶ 5.

SandRidge subsequently decided to raise additional funds to finance its capital expenditures and, in December 2011, formed the SandRidge Mississippian Trust II ("Trust II"). *Id.* ¶ 19. SandRidge conveyed to Trust II royalty interests consisting of a share of SandRidge's revenue from (a) existing horizontal wells in nine counties in Oklahoma and Kansas, collectively referred to as the "Trust II Area of Mutual Interest" ("Trust II AMI"), and (b) certain horizontal oil and gas wells to be drilled in the Trust II AMI. *Id.* As with Trust I, to compensate SandRidge for these royalty interests, Trust II committed to sell

common units in an initial public offering ("Trust II IPO") and transfer those proceeds to SandRidge. *Id.* ¶ 20.

Lanier Trust brought the instant action on June 9, 2015. *See* Compl. (Doc. No. 1). A consolidated amended complaint followed on November 11, 2016. *See* Consol. Am. Compl. In that pleading, Lanier Trust joined with Nibur and Rath (who like Lanier Trust had purchased Trust I units) and with Luna and Willenbucher (who like Lanier Trust had purchased Trust II units) to bring claims on behalf of themselves and those individuals and entities that had purchased or otherwise acquired common units of (a) Trust I pursuant or traceable to the Trust I IPO, deemed effective April 5, 2011, and/or at all other times between April 5, 2011, and November 8, 2012, inclusive (the "Class Period"), *see*, *e.g.*, Consol. Am. Compl. ¶¶ 2, 3, and/or (b) Trust II pursuant or traceable to the Trust II IPO, deemed effective April 17, 2012, and/or at all other times during the Class Period, *see*, *e.g.*, *id.*

Relief was sought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, promulgated thereunder. *See* 17 C.F.R. § 240.10b-5. Lead Plaintiffs also sought to hold certain defendants liable under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k, 77*l*(a)(2), 77o.

The Exchange Act and Rule 10b-5 claims were asserted against Trust I, SandRidge, and the Individual Defendants. The Securities Act claims were asserted against both Trust I and Trust II, SandRidge, the Individual Defendants, a number of other individuals

3

associated with SandRidge, and certain entities that had underwritten the Trust offerings and/or had helped draft and disseminate prospectuses for the two offerings. On August 30, 2017, the Court, without objection, dismissed Lead Plaintiffs' Securities Act claims. *See* Doc. No. 129.

On January 18, 2019, the Court granted Trust I's motion for partial judgment on the pleadings and dismissed the Trust II purchasers' claims against Trust I with prejudice. *See* Order of Jan. 18, 2019 (Doc. No. 282) at 14. Specifically, the Court found that Trust II purchasers (Luna, Willenbucher, and certain purchasers in Lanier Trust) lacked statutory standing to assert their Exchange Act claims against Trust I. *See id.*

Based upon the Court's January 18, 2019 Order, both the Individual Defendants and SandRidge have moved for partial judgment on the pleadings, contending that Trust II purchasers (Luna, Willenbucher, and certain purchasers in Lanier Trust) also lack statutory standing to assert their Exchange Act claims against them.

STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The Court evaluates the motion under the familiar standard for Federal Rule of Civil Procedure 12(b)(6) motions. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)). Accordingly, the Court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same." *Adams v. Jones*, 577 F. App'x 778, 782 (10th Cir. 2014)

4

(internal quotation marks omitted). "[T]o survive judgment on the pleadings, the complaint "must allege 'a claim to relief that is plausible on its face.'" *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To determine whether the claim to relief is 'plausible on its face,' we examine the elements of the particular claim and review whether the plaintiff has pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted) (noting that the court does not "accept mere labels and legal conclusions as true").

## DISCUSSION

In the January 18, 2019 Order, this Court concluded that Trust II purchasers lack statutory standing to assert their Exchange Act claims against Trust I. The Court noted that, pursuant to the allegations in the Consolidated Amended Complaint, Trust I and Trust II "are not contractually linked to each other and neither is a derivative instrument whose value is tied to that of the other" but rather the "Trust units are independent securities sold by two different entities and publicly traded under two distinct ticker symbols." Jan. 18, 2019 Order at 13 (citing Consol. Am. Compl. ¶¶ 255, 256). The Court found that in these circumstances:

> Plaintiff's allegations of a connection between the management of Trust I and Trust II are not sufficient to plausibly show a connection between Trust I's allegedly false statements about itself and Luna's and Willenbucher's purchases of Trust II units such as would allow these plaintiffs, as shareholders of one public company, to bring suit against another public company that neither issued nor sold stock to them.

*Id.* at 14.

Both the Individual Defendants and SandRidge contend that the Court's January 18, 2019 Order applies equally to all Trust II purchasers' Exchange Act claims asserted against them, and that Trust II purchasers, therefore, do not have standing to bring claims against either SandRidge or the Individual Defendants, as officers of SandRidge or as de facto officers of Trust I,[2] based on statements they made about Trust I, a legally distinct entity. *See* Ind. Defs.' Mot. at 1-3; SandRidge's Mot. at 1-4.

A. *Allegations of false statements about Trust II*

Lead Plaintiffs first assert that Trust II purchasers have standing because the Individual Defendants and SandRidge made false statements directly to Trust II unitholders about Trust II through the Trust II Registration Statement.

All of the allegations set forth in the Consolidated Amended Complaint offered in support of Lead Plaintiffs' Exchange Act claims, however, pertain to statements made by, on behalf of, and about *Trust I*. Lead Plaintiffs' allegations of false statements made in the Trust II Registration Statement are solely contained in the separate section of the Consolidated Amended Complaint describing Lead Plaintiffs' now-dismissed Securities Act claims. *See* Consol. Am. Compl. ¶¶ 21-23, 211-224, 231. In the Exchange Act section of their complaint, Lead Plaintiffs make no allegations regarding false or misleading statements made by, on behalf of, or about Trust II, and no Exchange Act claims are asserted against Trust II. *See id.* ¶¶ 289-351.

---

[2] In their response, Lead Plaintiffs focus only on the Individual Defendants' roles as officers of SandRidge.

6

Lead Plaintiffs—relying on the statement in the Exchange Act section of the Consolidated Amended Complaint that they "repeat and reallege each and every allegation contained above as if fully set forth herein," *id*. ¶¶ 334, 345—contend the allegations regarding the misrepresentations and omissions in the Trust II Registration Statement were incorporated by reference into the Exchange Act claims. The Court finds a generic, boilerplate incorporation-by-reference allegation is not sufficient to rewrite the pleading. This finding is underscored by Lead Plaintiffs' previous representation that the Exchange Act claims are predicated solely on the alleged misrepresentations and omissions of Trust I. *See* Lead Pls.' Resp. to Trust I's Mot. Partial J. on Pldgs. (Doc. No. 165) at 20 ("The claims of purchasers of both Trust I and Trust II units are predicated on the alleged misrepresentations and omissions of Trust I."). Accordingly, the Court concludes that the Trust II purchasers' standing cannot be based upon alleged false statements made in the Trust II Registration Statement or otherwise about Trust II.

B. *Allegations of false statements about Trust I*

The resulting question is whether Lanier Trust, Luna, and Willenbucher, as purchasers of Trust II units, have standing to assert Exchange Act claims based on the misrepresentations or material omissions *relating to Trust I* that are specified in the Consolidated Amended Complaint as the bases for the Exchange Act claims. Having considered the parties' submissions, the Court finds that the reasoning set forth in the Court's January 18, 2019 Order applies to some but not all of the Trust II purchasers' Exchange Act claims asserted against SandRidge and the Individual Defendants.

In the January 18, 2019 Order, the Court determined—based on the finding that Trust I and Trust II, despite some common officers, are distinct and independent entities, and consistent with the narrow dimensions that must be given to judicially implied rights of action—that Lead Plaintiffs had not plausibly shown a connection between Trust I's allegedly false statements about itself and Luna's and Willenbucher's purchases of Trust II units such as would allow these plaintiffs, as shareholders of Trust II, to bring suit against Trust I. *See* Order of Jan. 18, 2019, at 13-14. That is not the case with Lead Plaintiffs' claims against SandRidge and its officers, however. In that instance, the connection arises from SandRidge's ownership of 100 percent of the assets that were transferred to Trust II and its role in creating that entity and offering its units for sale to the public in April 2012.

Lead Plaintiffs assert primary liability claims under Section 10(b) of the Exchange Act and Rule 10b-5 against SandRidge and the Individual Defendants. Lead Plaintiffs allege that SandRidge and the Individual Defendants violated these laws "in an effort to maintain artificially high market prices for . . . Trust II Common Units." Consol. Am. Compl. ¶ 338. Lead Plaintiffs allege that SandRidge and the Individual Defendants had "[s]trong [m]otives" to misrepresent Trust I's performance because disclosure of the truth about Trust I's well production generally, and in Alfalfa County, Oklahoma, particularly, "could materially reduce the amount of money that SandRidge could raise from the Trust II offering planned for April 2012." *Id*. ¶¶ 299-302. Specifically, Lead Plaintiffs allege that SandRidge officers Ward and Grubb made false statements and material omissions regarding Trust I's operations and well production while participating in investor conference calls about Trust I preceding (and succeeding) the April 2012 Trust II offering.

8

*Id.* ¶¶ 294, 309-310 (Nov. 11, 2011 earnings call), 312-319 (Feb. 17, 2012 earnings call), 319-323 (May 11, 2012 earnings call), 324-329 (Aug. 10, 2012 earnings call). And Lead Plaintiffs allege that all three of the Individual Defendants had knowledge of Trust I's operations and well production as a result of being a "*de facto* officer[]" of Trust I and made "material omissions" about Trust I's operations and well production "for the purpose and effect of concealing from the investing public the significant problems with the Trust I wells . . . and supporting the artificially inflated price of the . . . Trust II Units." *Id.* ¶¶ 339-340. These facts are sufficient to plausibly support Lead Plaintiffs' Exchange Act claims against SandRidge and the Individual Defendants. *See In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1236-37 (N.D. Okla. 2003) (finding that purchasers of subsidiary company spun off from parent stated Section 10(b) and Rule 10b-5 claims against parent company for false statements made by the parent prior to the spin-off).

Additionally, Lead Plaintiffs assert control person claims under Section 20(a) of the Exchange Act against the Individual Defendants. Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . .

15 U.S.C. § 78t(a).

In connection with this requirement, Lead Plaintiffs allege that the Individual Defendants both "acted as controlling persons of SandRidge" *and* "acted as controlling persons of Trust I." Consol. Am. Compl. ¶¶ 348, 349. For the same reasons that the Court dismissed the claims of Lanier Trust, Luna, and Willenbucher against Trust I, *see* Jan. 18,

2019 Order at 13-14, the Court dismisses those plaintiffs' Section 20(a) claims against the Individual Defendants to the extent such claims are predicated on any defendant being a control person of Trust I.[3] To the extent plaintiffs' Section 20(a) claims against the Individual Defendants are predicated on a defendant being a control person of SandRidge, the claims are adequately pled for the reasons stated above and remain for disposition.

CONCLUSION

For the foregoing reasons, the Court

(1) GRANTS IN PART and DENIES IN PART Individual Defendants' Joint Motion for Partial Judgment on the Pleadings Based on the Court's January 18, 2019 Order (Doc. No. 284) and SandRidge's Motion for Partial Judgment on the Pleadings Based on the Court's January 18, 2019 Order (Doc. No. 299);

(2) DISMISSES WITH PREJUDICE Luna's, Willenbucher's, and Lanier Trust's claims under Section 20(a) of the Exchange Act against the Individual Defendants to the extent such claims are predicated on any defendant being a control person of Trust I; and

---

[3] Lead Plaintiffs assert that the Individual Defendants' failure to join Trust I's motion for partial judgment on the pleadings weighs against granting the current motion, suggesting that the Individual Defendants would have joined Trust I's motion if they thought they were similarly situated. *See* Lead Pls.' Ind. Defs. Resp. (Doc. No. 298) at 7-8. Lead Plaintiffs, however, cite no authority supporting this assertion, and the Court finds that the present motion was brought "early enough" under Rule 12(c). *Cf. SEC v. Wolfson*, 539 F.3d 1249, 1265 (10th Cir. 2008) (affirming the district court's denial of Rule 12(c) motion as moot where the motion was not filed until after each party had moved for summary judgment).

(3) DENIES the Individual Defendants' and SandRidge's Motions (Doc. Nos. 284 and 299) in all other respects.

IT IS SO ORDERED this 30th day of October, 2019.

_____
CHARLES B. GOODWIN
United States District Judge