# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

DUANE & VIRGINIA LANIER TRUST,
individually and on behalf of all others
similarly situated,

          Plaintiffs,

   v.

SANDRIDGE MISSISSIPPIAN TRUST I,
*et al.*,

          Defendants.

Case No. 15-cv-00634-G

## DEFENDANT SANDRIDGE MISSISSIPPIAN TRUST I's
## MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

**BRACEWELL LLP**

W. Stephen Benesh
  (*admitted pro hac vice*)
David B. Springer
  (*admitted pro hac vice*)
111 Congress Ave., Suite 2100
Austin, Texas 78701
Email: steve.benesh@bracewell.com
Phone: (512) 494-3680
Fax: (800) 404.3970

**WILSON LAW FIRM**

Ryan S. Wilson, OBA #14340
Post Office Box 891390
Oklahoma City, OK 73189
Email: ryan@RSWilsonlaw.com
Phone: 405.246.0092
Fax: 405.246.9652

Date: April 2, 2020

# TABLE OF CONTENTS

**Page**

I.    Statement of the Case ..........................................................................................1

II.    Statement of Undisputed Material Facts .......................................................1

III.    Argument and Authorities ...............................................................................5

     A.    Summary judgment standard ..........................................................5

     B.    Plaintiffs' claim ...............................................................................7

     C.    Trust I made no material misrepresentation or omission ...................7

     D.    There is no evidence that Trust I's acted with scienter ....................10

         a.    Ward and Grubb were not "de facto officers" of Trust I ......11

             i.    Trust I did not present Ward and Grubb as the Trust's officers ..............................................................11

             ii.    Ward and Grubb did not present themselves as the Trust's officers ..............................................................13

         b.    SandRidge officers were not acting as agents of Trust I in connection with earnings calls and other public statements...................14

         c.    Ward and Grubb did not act with scienter ............................17

     E.    Trust I is entitled to summary judgment on several grounds common to all Defendants.................................................................17

IV.    Prayer.........................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Wal-Mart Stores, Inc.*,
   144 F.3d 664 (10th Cir. 1998) .................................................................5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................6

*Austin Lake Estates Recreation Club, Inc. v. Maberry*,
   638 S.W.2d 649 (Tex. App. 1982) .......................................................13

*Brooks v. Phila. Indem. Ins. Co.*,
   No. CIV-18-603-G, 2020 WL 981722 (W.D. Okla. Feb. 28, 2020) ................................5, 6

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) .............................................................................10

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ...........................................................19

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ...............................................................................8

*Lorenzo v. Sec. & Exch. Comm'n*,
   139 S. Ct. 1094 (2019) ............................................................... 9, 10, 11

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) .................................................................................7

*Milligan v. Anderson*,
   522 F.2d 1202 (10th Cir. 1975) ...........................................................15

*Music Group Macao Commercial Offshore Ltd. v. Foote*,
   No. 14-cv-03078-JSC, 2015 WL 3882448 (N.D. Cal. June 23, 2015) ........................ 12, 13

*Pelt v. Utah*,
   539 F.3d 1271 (10th Cir. 2008) ..........................................................5, 6

*Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*,
   431 F.3d 1241 (10th Cir. 2005) ............................................................6

*S.E.C. v. Prince*,
   942 F. Supp. 2d 108 (D.D.C. 2013) .....................................................12

*Select Portfolio Servicing, Inc. v. Evaluation Sols., L.L.C.*,
   No. 3:06–cv–582–J–33MMH, 2006 WL 2691784 (M.D. Fla. Sept. 20, 2006) .................. 12

*Self v. Crum*,
   439 F.3d 1227 (10th Cir. 2006) ..................................................................................... 6

*Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*,
   552 U.S. 148 (2008) ................................................................................................ 7, 8

*Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank*,
   250 F.3d 87 (2d Cir. 2001) ......................................................................................... 10

*Teamster Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
   531 F.3d 190 (2d Cir. 2008) ....................................................................................... 10

*In re Walt Disney Co. Derivative Litig.*,
   906 A.2d 27 (Del. 2006) ............................................................................................ 11

**Statutes**

15 U.S.C. § 77z-2(i)(1) ................................................................................................. 18

28 U.S.C. § 1658 .......................................................................................................... 18

DEL. CODE ANN. Title 12, § 3801 (West 2018) ............................................................ 16

Plaintiffs' Exchange Act ................................................................................................ 7

Securities Act of 1933 .................................................................................................... 7

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................... 1

Fed. R. Civ. P. 56(a) ...................................................................................................... 5

Fed. R. Civ. P. 56(c)(1)(A) ............................................................................................ 6

Local Rule LCvR56.1 ..................................................................................................... 1

Rule 10b-5 ................................................................................................................ 7, 9

Rule 10b5-(b) ................................................................................................................. 8

§ 10(b) ........................................................................................................................... 7

**Treatises**

Appointment of Agent, 19 Williston on Contracts § 54:14 (4th ed.) ........................... 15

Restatement (Third) Of Agency § 1.01 (2006) ........................................................14

**Other Authorities**

FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 374 (perm. ed., rev. vol. 1998) ...........................................................................................12

WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 374 (perm. ed., rev. vol. 1998) ............................................11

2 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 385 (rev. 1982) ....................................................................13

Pursuant to Federal Rule of Civil Procedure 56, Defendant SandRidge Mississippian Trust I ("Trust I") moves the Court for summary judgment on all of Plaintiffs' surviving claims against it, and in support would show the Court as follows.

## I. Statement of the Case

Trust I's role in this case was small to begin with and has been further reduced each time this Court has had an opportunity to consider Plaintiffs' claims against Trust I. Plaintiffs' remaining claims against Trust I rest entirely upon the imputation to Trust I of statements by individuals who specifically denied affiliation with Trust I at the time they made the statements. Discovery has demonstrated that Plaintiffs do not raise a single genuine issue of material fact as to any statement, act, or omission by Trust I or its Trustee in support of their claims. Plaintiffs' claims against Trust I have no basis in fact or law, and summary judgment should be granted in Trust I's favor.

## II. Statement of Undisputed Material Facts

In accordance with Local Rule LCvR56.1, Trust I contends that the following material facts existed at all times relevant to the issues underlying this litigation. Trust I also incorporates the undisputed material facts stated by Defendants Ward, Bennett, and Grubb in their motions for summary judgment.

1.       Trust I is a Delaware statutory trust formed pursuant to a Trust Agreement between and among SandRidge, as trustor, the Bank of New York Mellon Trust Company, N.A., as trustee, and the Corporation Trust Company, as Delaware trustee. *See* Ex. A, Trust I Prospectus, at F-10; Ex. B, Amended and Restated Trust Agreement (Apr. 12, 2011).

2.      The final Prospectus for Trust I was filed with the SEC on April 6, 2011 (with the Trust I Registration Statement and amendments thereto, the "Trust I Offering Documents").  Ex. A, Trust I Prospectus.

3.      Trust I's initial public offering was held on April 6, 2011 and closed on April 12, 2011. *See* Ex. C, Trust I, (Form 8-K) (Apr. 6, 2011); Ex. D, Trust I, (Form 8-K (Apr. 12, 2011).

4.      On April 12, 2011, SandRidge Energy, Inc. ("SandRidge") conveyed to Trust I royalty interests in 160 wells located in the Mississippian formation consisting of approximately 64,200 gross acres in Alfalfa, Garfield, Grant, Major and Woods counties in Oklahoma ("Trust I Wells").  Ex. A, Trust I Prospectus, at F-4; Ex. D, Trust I, (Form 8-K) (Apr. 12, 2011).

5.      Trust I was intended to be, and indeed was, a "passive trust." Its role was limited to the receipt of revenues attributable to royalty interests conveyed by SandRidge and the distribution of such revenues to unitholders. Ex. B, Amended and Restated Trust Agreement, at 11.

6.      Trust I is a distinct entity from SandRidge. *See* Ex. A, Trust I Prospectus.

7.      Trust I had no directors or officers during the putative class period. *See* Ex. E, Plaintiffs' Resps. and Objs.to Trust I RFAs, at 7; Ex. F, Newell Dep. 18:6-12.

8.      Trust I had no employees. *See* Ex. F, Newell Dep. 18:5.

9.      The "business and affairs of the Trust [were] managed by the Bank of New York Mellon Trust Company, N.A., as trustee." Ex. A, Trust I Prospectus at 3.; Ex. F, Newell Dep. 11:13-20.

10. Included with the Trust I Offering Documents was a reserve report (the "Reserve Report") that estimated the amount of proved reserves attributable to the Trust I Wells. *See* Ex. A, Trust I Prospectus, at Annex A.

11. The reserve estimates in the Trust I Reserve Report were prepared by Netherland Sewell & Associates, Inc. ("Netherland Sewell" or "NSAI"), a leading third party petroleum engineering firm. *See* Ex. A, Trust I Prospectus, at 1; Ex. H, Stark Dep. Tr. at 326:12-327:2, 415:9-416:7.

12. SandRidge, not Trust I, retained NSAI to prepare the Reserve Report and NSAI did not prepare a type curve[1] specifically for Trust I Wells. *See* Ex. A, Trust I Prospectus at 65-66.

13. The Trust made quarterly cash distributions to unitholders based on the sales of oil and gas from the Trust I Wells. The amount of cash distributions was therefore expected to fluctuate quarterly based "on the quantity of oil and natural gas produced from the [Trust I Wells], the prices received for oil and natural gas production, when SandRidge receives payment for such production and other factors." *See* Ex. A, Trust I Prospectus, at 8.

14. In each of the first five reporting periods following the Trust I offering, Trust I beat the distribution target set out in the Trust I Offering Documents. *Compare* Ex. I, Trust I (Form 10-Q) (Aug. 13, 2012), at 9, 11, *with* Ex. A, Trust I Prospectus, at 7.

---

[1] A type curve is a graphical curve that can be used to forecast the timing of estimated average production from a group of wells.

15.     The Trustee of Trust I is not, and never has been, a party to this litigation, and Plaintiffs do not contend that the Trustee made any false or misleading statements or committed any act or omission giving rise to their claims. *See generally* Pls.' Consolidated Amendment Complaint [Dkt. 78] ("Complaint").

16.     The Trustee of Trust I did not make any statements reflected in the official transcripts of the Trust I earnings calls referenced in the Complaint. *See* Ex. E, Pls.' Resp. and Objs. to Trust I's Request for Admission, at 6.

17.     The Trustee of Trust I did not cause to be made any allegedly false or misleading statements reflected in any of the official transcripts of the Trust I earnings calls referenced in the Complaint. *See id.*

18.     On the Q2 2011 earnings call, it was stated that Ward, Bennett and Grubb were officers of SandRidge. *See* Ex. J, SD-SECURITIES-0000089.

19.     On the Q3 2011 earnings call, it was stated that Ward, Bennett and Grubb were officers of SandRidge. *See* Ex. K, SD-SECURITIES-0000097.

20.     On the Q4 2011 earnings call, it was stated that Ward, Bennett and Grubb were officers of SandRidge. *See* Ex. L, SD-SECURITIES-0000106.

21.     On the Q1 2012 earnings call, it was stated that Ward, Bennett and Grubb were officers of SandRidge. Ex. M, SD-SECURITIES-0000112.

22.     On the Q2 2011 earnings call, it was stated that Trust I had no employees or officers. *See* Ex. J, SD-SECURITIES-0000089.

23.     On the Q3 2011 earnings call, it was stated that Trust I had no employees or officers. *See* Ex. K, SD-SECURITIES-0000097.

4

24.     On the Q4 2011 earnings call, it was stated that Trust I had no employees or officers.  *See* Ex. L, SD-SECURITIES-0000106.

25.     On the Q1 2012 earnings call, it was stated that Trust I had no employees or officers.  Ex. M, SD-SECURITIES-0000112.

26.     None of Trust I's filings with the SEC during the proposed class period contained materially false or misleading statements.  *See* Ex. N, Pls.' Resp. to Ward's Req. for Admission No. 2 (Plaintiffs "do not contend that any of the Forms 8-K or Forms 10-Qs that Trust I or Trust II filed with the SEC during the Class Period was materially false or misleading").

## III. <u>Argument and Authorities</u>

### A.     Summary judgment standard

"The Court must grant summary judgment when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Brooks v. Phila. Indem. Ins. Co.*, No. CIV-18-603-G, 2020 WL 981722, at *1 (W.D. Okla. Feb. 28, 2020) (quoting Fed. R. Civ. P. 56(a)). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). The movant can satisfy its initial burden by

producing "affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* (internal quotation marks omitted). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and designate specific facts" that would be admissible in evidence in the event of trial "so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006); *see* Fed. R. Civ. P. 56(c)(1)(A).

A party opposing a properly supported motion for summary judgment must offer admissible evidence sufficient to raise a "genuine issue of material fact," which exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While "[t]he Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party," *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Brooks*, 2020 WL 981722, at *1 (quoting *Liberty Lobby*, 477 U.S. at 252). The inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. 251-52. Here, Plaintiffs' evidence presents no such disagreement.

**B.    Plaintiffs' claim**

To prevail on their claim that Trust I made material misrepresentations or omissions in violation of § 10(b) and Rule 10b–5, Plaintiffs "must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 157 (2008)).

The Court properly identified the scope of Plaintiffs' Exchange Act allegations as limited to specific statements Defendants Ward and Grubb made "while participating in investor conference calls about Trust I" on November 11, 2011; February 17, 2012; May 11, 2012: and August 10, 2012. *See* Order at 7-9 [Dkt. 347]. Plaintiffs' claims against all Defendants under the Securities Act of 1933 (the "Securities Act"), which still appear in the operative complaint, were dismissed by the Court in August 2017. *See* Dkt. 129. Plaintiffs' live claims all arise from post-offering activities; Plaintiffs do not assert a cause of action based upon reliance on any alleged misrepresentations or omissions in the Trust I Registration Statement and Prospectus, as explained more fully in Defendants Grubb and Bennett's Motion for Summary Judgment. *See also* Order at 6-9 [Dkt. 347].

**C.    Trust I made no material misrepresentation or omission**

To satisfy the first element of their Exchange Act claim, Plaintiffs must prove "'a material misrepresentation or omission *by the defendant*.'" *Matrixx Initiatives*, 563 U.S.

at 37–38 (quoting *Stoneridge,* 552 U.S. at 157) (emphasis added). The evidence shows no material misrepresentation or omission by Trust I.

U.S. Supreme Court precedent is clear that the "maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). In *Janus*, even an investment adviser who had "participat[ed] in the drafting of a false statement" "made" by another could *not* be held liable under Rule 10b5-(b). *Id.* at 145.

As an initial matter, it is undisputed that Trust I and its Trustee did not themselves make any of the statements at issues in this case. *See* Ex. D Pls.' (Resps. and Objs. to Trust I RFAs) at 6. Plaintiffs' claims, which arise from statements made on four earnings calls, fail as a matter of law against Trust I because no employees, officers, or directors of Trust I or its Trustee made any statement on the four earnings calls from which Plaintiffs' claims arise.

Rather, all challenged statements on these calls were made by Ward and Grubb[2], who were identified in each of these calls as SandRidge officers, and not as employees, officers, or directors of Trust I or the Trustee. For example, in the very first Trust I earnings call, Bennett identified Ward and Grubb as "SandRidge Energy officers" and stated that "Trust I has no employees or officers." Ex. J (SD-SECURITIES-0000089). Substantially identical statements were made during each additional earnings call at issue

---

[2] Defendant Bennett did not make any of the challenged statements.

here. Ex. K, L, M (SD-SECURITIES-0000097; SD-SECURITIES-0000106; SD-SECURITIES-0000112).

Nor did Trust I exercise ultimate control over the statements that were made, as demonstrated by the Trustee's representative's uncontroverted testimony:

Q: Was the trustee consulted by SandRidge or any employees or officers of SandRidge with respect to SandRidge's holding these conference calls discussing Trust I?

A: Only to have the call set up, but not what information would be discussed."[3]

Q: Did the trustee have any role in drafting earning -- scripts for earnings calls -- earnings calls?

A: No.[4]

Q: Okay. Was the Trustee ever consulted as to the content of Trust I's . . . earnings calls?

A: . . . never earnings calls.[5]

Ward and Grubb spoke directly to investors. Trust I did not disseminate their statements; its representatives were mere listeners on some calls and never spoke on any call. Beyond makers, it is true that those who disseminate false or misleading statements to potential investors with the intent to defraud, can be found to have violated the other parts of Rule 10b-5. *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1099 (2019). The *Lorenzo* defendant, acting with an intent to defraud, e-mailed misleading statements directly to investors. *Id.* 1099-1101. Indeed, the Court acknowledged that applying broad disseminator liability "may present difficult problems of scope in borderline cases," such

---

[3] Ex. O (Newell Dep. 30:19-24.)

[4] *Id.* 40:7-10.

[5] *Id.* 54:23-25.

as where an actor was "tangentially involved in dissemination." *Id.* On the facts of *Lorenzo*, which are nothing like the facts here, the Court saw "nothing borderline" about the defendant's culpability. *Id.* at 1101.

Here, Trust I merely arranged dial-in information, provided administrative support for SandRidge-hosted calls, and listened. Unlike the defendant in *Lorenzo*, Trust I did not disseminate the earnings call statements that Plaintiffs challenge. Nor did Trust I make the statements or control their content. Indeed, in a March 2019 memorandum of law filed in this case, Plaintiffs unequivocally stated that, "when the SandRidge Officer Defendants made statements on Trust I earnings calls, they did so as officers of, and with the authorization of, SandRidge." *See* Dkt. 294 at 7. Plaintiffs want it both ways. When convenient for their case, Plaintiffs argue that the three individual Defendants instead spoke as "de facto officers" or agents of Trust I, but, as explained below, these arguments fail as a matter of law.

**D.      There is no evidence that Trust I's acted with scienter**

Scienter is an intent to deceive, manipulate, or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). A corporate entity "can only act through its employees and agents." *Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001). That is, to prove Exchange Act liability against an entity, "a plaintiff must prove that an agent or employee of the corporation committed a culpable act with the requisite scienter and that the act (and accompanying mental state) are attributable to the corporation." *Teamster Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Scienter is required whether liability is

10

alleged against the maker of a materially false or misleading statement, or even as a mere disseminator of such a statement. *Lorenzo*, 139 S. Ct. at 1101 ("Recall that Lorenzo does not challenge the appeals court's scienter finding, so we take for granted that he sent the emails with 'intent to deceive, manipulate, or defraud' the recipients.").

Plaintiffs do not allege that any employee, officer, or director of Trust I acted with scienter (in fact, they admit that Trust I had no directors or officers). *See* Ex. E (Pls.' Resps. and Objs. to Trust I RFAs) at 7. Plaintiffs' scienter allegation with regard to Trust I depend on their legal argument that the individual Defendants were "de facto officers" of Trust I. Putting aside Plaintiffs' own admission that the individual Defendants made statements on the earnings calls "as officers of . . . SandRidge," their "de facto officer" theory fails as a matter of law.

### a. Ward and Grubb were not "de facto officers" of Trust I

The "de facto officer" doctrine is based on principles of estoppel. An entity cannot hold out an individual as acting under the authority of office but later deny liability for the person's acts by claiming that he was not, in fact, an officer.

### i. Trust I did not present Ward and Grubb as the Trust's officers

Delaware law defines a de facto officer as "one who actually assumes possession of an office under the claim and color of an election or appointment and who is actually discharging the duties of that office, but for some legal reason lacks de jure legal title to that office." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 48 (Del. 2006) (footnote omitted) (citing WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF

11

PRIVATE CORPORATIONS § 374 (perm. ed., rev. vol. 1998)[6]; *see also Music Group Macao Commercial Offshore Ltd. v. Foote*, No. 14-cv-03078-JSC, 2015 WL 3882448, at *22 (N.D. Cal. June 23, 2015). "Under this path to de facto officer-ship, 'the corporation must take some action that looks like a formal appointment or election'" to create a de facto officer.'" *Foote*, 2015 WL 3882448, at *22 (quoting *Select Portfolio Servicing, Inc. v. Evaluation Sols., L.L.C.*, No. 3:06–cv–582–J–33MMH, 2006 WL 2691784, at *9 (M.D. Fla. Sept. 20, 2006)). There is no allegation or evidence that Trust I took any action that "looks like a formal appointment or election." *See id.* In fact, as Plaintiffs recognized in their Complaint, in press releases announcing each earnings calls, Trust I's Trustee stated that "SandRidge Energy, Inc., the sponsor of the SandRidge Mississippian Trust I, announced that *it* will host a conference call . . . ." *See, e.g.*, Ex. P (SD-SECURITIES-000004) (emphasis added); Consol. Am. Compl. ¶ 149.

Nor did the Trustee represent that SandRidge officers had the ability to make policy concerning the Trust. *Cf. S.E.C. v. Prince*, 942 F. Supp. 2d 108, 134 (D.D.C. 2013) (defendant not a "de facto officer" because he did not perform "policy making functions" similar to that of a company officer). In fact, the Prospectus made clear that, while

---

[6] According to Fletcher, "A de facto director holds office under color of right, through designation or election, but fails being a de jure director by some irregularity in his or her election or by ineligibility or failure to qualify as required. In short, in order to be a de facto officer, there must be color for the claim and a colorable title to the office. A mere pretense of being an officer does not make the pretender a de facto officer. He or she must have some color of title to the office and must actually perform the duties of the office, and that possession of the office must be acquiesced in by the public or the interested parties in order to constitute him or her a de facto officer . . . ." FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 374 (perm. ed., rev. vol. 1998).

SandRidge will operate a substantial number of the oil and gas assets underlying Trust I, SandRidge and its officers "will have no ability to manage or influence the management of the trust except through its limited voting rights as a holder of trust units." Prospectus at 3.

### ii. Ward and Grubb did not present *themselves* as the Trust's officers

Moreover, prospective and actual investors were *explicitly* told that Ward and Grubb were <u>not</u> officers of Trust I.[7] This fact forecloses the only other "path to de facto officer-ship," which "protect[s] innocent third parties during the course of transactions with corporate officers *that present themselves as having authority to act*." *Music Group Macao Commercial Offshore Ltd. v. Foote*, No. 14-cv-03078-JSC, 2015 WL 3882448, at *22 (N.D. Cal. June 23, 2015) (emphasis added); *Austin Lake Estates Recreation Club, Inc. v. Maberry*, 638 S.W.2d 649, 650 (Tex. App. 1982) ("[T]he *de facto* director doctrine applies only to third parties who deal with the corporation and are unaware of *the de facto* director's true status.") (citing 2 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 385 (rev. 1982).

Courts have consistently held that a person may not be deemed a "de facto officer" where interested parties know that the person purporting to be an officer is not in fact an officer. During each of the four earnings calls, all participants were told that: (1) Ward, Bennett, and Grubb were officers of SandRidge Energy; and (2) Trust I had <u>no</u> officers

---

[7] As mentioned above, Defendant Bennett is not alleged to have made a false statement and the Court has dismissed 10b-5 claims against him. All the arguments made in this section would apply equally to Bennett if his statements were at issue.

or employees. *See* Q1 2012 Call SD-SECURITIES-0000112 (Bennett: "Joining me today are SandRidge Energy Officers Tom Ward [and] Matt Grubb . . . . Recall that the Trust has no employees or Officers and SandRidge Energy as sponsor of the Trust, operates a majority of the Trust's properties."); *see also* Ex. I, J, K (SD-SECURITIES-0000089; SD-SECURITIES-0000097; SD-SECURITIES-0000106).

Ward and Grubb's purported status as officers of Trust I was specifically disclaimed. Given such disclaimer, no actual or potential investor could reasonably have believed or concluded that Ward, Bennett or Grubb were officers of Trust I. Plaintiffs' attempt to shoe-horn these facts into the narrow "de facto officer" doctrine fail as a matter of law.

### b.  SandRidge officers were not acting as agents of Trust I in connection with earnings calls and other public statements

Plaintiffs' only other hope to impute scienter to Trust I would be an agency argument; that the Individual Defendants were acting as Trust I agents while engaging in the acts or omissions giving rise to Plaintiffs' claim. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Of Agency § 1.01 (2006). There "are three essential elements to an agency relationship, of which the absence of any one defeats the purported agency relationship: (1) that an agent holds a power to alter legal relations between the principal and a third party; (2) that an agent is a fiduciary with respect to matters within the scope of the agency; and (3) that a

principal has the right to control the conduct of the agent with respect to matters entrusted to the agent." § 54:14 Appointment of Agent, 19 Williston on Contracts § 54:14 (4th ed.); *see also Milligan v. Anderson*, 522 F.2d 1202, 1206 (10th Cir. 1975) ("Agency is a legal concept which depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.").

Here, Trust I contracted with SandRidge for the provision of administrative services, specifically "accounting, bookkeeping and informational services as may be necessary for the preparation of reports the Trust is or may be required to prepare and/or file in accordance with applicable tax and securities laws, exchange listing rules and other requirements, including reserve reports, tax returns and Forms K-1." Ex. Q (Administrative Services Agreement ("ASA")) at § 2.01. For these services, SandRidge was paid a fixed quarterly fee. The ASA included an "Independent Status" clause:

> It is expressly acknowledged by the parties hereto that each party is an "independent contractor" and nothing in this Agreement is intended nor shall be construed to create an employer/employee, joint venture or partnership relationship, or to allow any party to exercise control or direction over the other party. Except as required in connection with the performance of the Services, neither the Company nor any agent, employee, servant, contractor or subcontractor of the Company or any of its Affiliates shall have the authority to bind the Trust to any contract or arrangement.

Ex. Q (Administrative Services Agreement).

Thus, the ASA, which was filed with the SEC and publicly available to all investors, explicitly disclaimed an agency relationship. Further, even if the ASA or other

documents did create some limited agency relationship between SandRidge and Trust I, the evidence does not show that either (1) the Individual Defendants themselves, as officers of SandRidge, acted as agents for Trust I or (2) that their statements on the earnings calls were made *within the scope* of SandRidge's responsibilities to Trust I under the ASA or in connection with any other aspect of a standard trustor-trust relationship.

There is no genuine issue of material fact as to any other type of "authority and power by agreement, agency and/or otherwise to directly and/or indirectly control, influence or direct the management and policies of Trust I." Consol. Am. Compl. ¶ 339. Ms. Newell's uncontroverted testimony was that the Trustee of Trust I never granted authority to anyone to make public statements on behalf of Trust I. Ex. O (Newell Dep. 30:11-18). She further testified that SandRidge, not Trust I, controlled the content of the Trust I earnings calls. *Id.* at 30:19-24 (Q: Was the trustee consulted by SandRidge or any employees or officers of SandRidge with respect to SandRidge's holding these conference calls discussing Trust I? A: Only to have the call set up, but not what information would be discussed."); 40:7-10 (Q: Did the trustee have any role in drafting earnings -- scripts for earnings calls -- earnings calls? A: No.).

In reality, Plaintiffs' theories are an attempt to end-run around the well-settled principle of juridical separateness between trust and trustor. A statutory trust is "a separate legal entity" from its trustor (sponsor). 12 Del. Code Ann. tit. 12, § 3801 (West 2018). Like many statutory trusts, Trust I is—and told investors it intended to be—"a passive entity limited to the receipt of revenues attributable to the Royalty Interests and the Derivatives Agreement and the distribution of such revenues" Trust Agreement at 11. As

16

contemplated in the offering documents and public SEC filings, SandRidge and its officers provided certain clearly delineated services to the Trust—they were not, as a matter of law, general agents of the Trust for all purposes.

In many ways, Plaintiffs' real dispute is with the Delaware trust statute and the separate legal status it affords trust and trustor, not with any particular action taken by Trust I. Plaintiffs' agency argument ignores the factual realities of the relationship between trustors and the "officer-less" passive trusts they create. If adopted by the Court, Plaintiffs' agency argument would have a broad brushstroke impact on the longstanding, well-accepted usage of passive trusts as investment vehicles, classifying trustors as agents of the trusts they create wherever they wield their authority in a traditional manner.

### c. Ward and Grubb did not act with scienter

Even if Ward and Grubb's scienter could be imputed to Trust I, which it cannot, the Individual Defendants' motions for summary judgment and accompanying briefs convincingly demonstrate that they did not possess the scienter required to support an Exchange Act claim. Because there is no genuine issue of material fact as to the scienter of any trustee, or any purported employee, officer, director, or agent of Trust I, Plaintiffs' claim fails as a matter of law, and summary judgment in favor of Trust I is proper.

**E.     Trust I is entitled to summary judgment on several grounds common to all Defendants**

As to issues common among all Defendants, Trust I joins and incorporates by reference herein the motions for summary judgment and accompanying briefs in support

filed by Defendants Tom Ward, Matthew Grubb, and James Bennett, including but not limited to arguments that:

- Plaintiffs' claims are barred by the statute of limitations. *See* 28 U.S.C. § 1658.

- Defendants made no false statements because SandRidge's oil and gas reporting was factually accurate. Plaintiffs admit that Trust I accurately disclosed its historical production results in every relevant quarterly SEC filing.[8]

- Forward-looking statements about reserve estimates, reserve classifications, and type curves—all developed by an independent third-party—are absolutely immunized under the PSLRA's safe harbor.[9] Estimating oil and gas reserves is an inherently uncertain undertaking, and Defendants repeatedly and thoroughly disclosed this exact risk that Plaintiffs allege was concealed.

- The unpleaded statements asserted by Plaintiffs (identified only in interrogatory responses served after the close of discovery and more than two years after the operative Complaint was filed) include puffery and corporate optimism that are not actionable as a matter of law. "Vague,

---

[8] *See* Ex. N (Pls.' Resp. to Mr. Ward's Req. for Admission No. 2) (admitting that Plaintiffs "do not contend that any of the Forms 8-K or Forms 10-Qs that Trust I or Trust II filed with the SEC during the Class Period was materially false or misleading").
[9] *See* 15 U.S.C. § 77z-2(i)(1).

optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997).

- Plaintiffs have not shown, and cannot show, that Ward and Grubb acted with the scienter necessary to support an Exchange Act claim. As detailed above, their scienter cannot be imputed to Trust I, but even if it could, there is no genuine issue that they did not act with scienter.

- Plaintiffs have failed to demonstrate loss causation.

- Plaintiffs have failed to demonstrate reliance on a class-wide basis.

## IV. <u>Prayer</u>

For the reasons stated herein, Trust I respectfully asks the Court to grant summary judgment in favor of Trust I and against Plaintiffs, and for such other and further relief as to which Trust I may be entitled.

Dated: April 2, 2020

Respectfully submitted,

**BRACEWELL LLP**

W. Stephen Benesh
   (*admitted pro hac vice*)
David B. Springer
   (*admitted pro hac vice*)
111 Congress Ave., Suite 2100
Austin, Texas 78701
Email: steve.benesh@bracewell.com
Phone: (512) 494-3680
Fax: (800) 404.3970

**WILSON LAW FIRM**

*/s/ Ryan S. Wilson*
Ryan S. Wilson, OBA #14340
Post Office Box 891390
Oklahoma City, OK 73189
Email: ryan@RSWilsonlaw.com
Phone: 405.246.0092
Fax: 405.246.9652

*Counsel for Defendant SandRidge*
*Mississippian Trust I*

19

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on April 2, 2020, he caused the foregoing document to be filed using the Court's Electronic Case Filing system, which will cause notice of the filing to be served electronically upon all counsel who have appeared in this action.

By: /s/ W. Stephen Benesh
W. Stephen Benesh