## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

DUANE & VIRGINIA LANIER TRUST,
individually and on behalf of all others
similarly situated,

               Plaintiffs,

     v.

SANDRIDGE MISSISSIPPIAN TRUST I,
et al.,

               Defendants.

Case No. 5:15-CV-00634-G

## PLAINTIFFS' OPPOSITION TO DEFENDANT SANDRIDGE MISSISSIPPIAN TRUST I'S MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 1

II.   RESPONSE TO TRUST I'S STATEMENT OF MATERIAL FACTS ...................... 2

III.  PLAINTIFFS' COUNTER-STATEMENT OF UNDISPUTED FACTS ................ 4

IV.   ARGUMENT .............................................................................................................. 7

  A.   Trust I Bears a Heavy Burden On its Motion for Summary Judgment ................... 7

  B.   The Court May Impute the Statements and Scienter of Ward and Grubb to Trust I
      Either as Agents or De Facto Officers of Trust I ...................................................... 8

    1.   Ward and Grubb Made Statements on the Trust I Conference Calls as Agents of
       Trust I ................................................................................................................... 9

    2.   Ward and Grubb Made Statements on the Trust I Conference Calls as *De Facto*
       Officers of Trust I ............................................................................................. 14

  C.   Trust I Made False and Misleading Statements ..................................................... 16

  D.   Trust I Disseminated False and Misleading Statements ........................................ 18

  E.   Trust I is Not Entitled to Summary Judgment on the Grounds Adopted from Other
      Defendants' Motions .............................................................................................. 19

V.    CONCLUSION ......................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Adler v. Wal-Mart Stores, Inc.*,
144 F.3d 664 (10th Cir. 1998) ........................................................................ 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................ 7

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........................................................................................ 8

*Blocker v. ConocoPhillips Co.*,
378 F. Supp. 3d 1066 (W.D. Okla. 2019) ....................................................... 7

*Carpenters Pension Tr. Fund of St. Louis, St. Clair Shores Police & Fire Ret. Sys. v. Barclays PLC*,
56 F. Supp. 3d 549 (S.D.N.Y. 2014) ............................................................. 17

*Colby v. Klune*,
178 F.2d 872 (2d Cir. 1949) .......................................................................... 14

*E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*,
197 F.R.D. 112 (D. Del. 2000) ...................................................................... 16

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ...................................................................................... 15

*Gold v. Sloan*,
486 F.2d 340 (4th Cir. 1973) ......................................................................... 14

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ........................................................................... 9

*In re Cooper Mfg. Corp.*,
131 F. Supp. 2d 1238 (N.D. Okla. 2001) ...................................................... 18

*In re Nat'l Century Fin. Enterprises, Inc.*,
846 F. Supp. 2d 828 (S.D. Ohio 2012) .......................................................... 17

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
  209 F. Supp. 2d 1106 (D. Colo. 2002) ............................................................... 7

*Inst. for Bus. Planning, Inc. v. Standard Life & Acc. Ins. Co.*,
  242 F. Supp. 100 (W.D. Okla. 1965) ............................................................... 10

*IOP Cast Iron Holdings, LLC v. J.H. Whitney Capital Partners, LLC*,
  91 F. Supp. 3d 456 (S.D.N.Y. 2015) ............................................................... 17

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ............................................................... 16, 17

*Lorenzo v. S.E.C.*,
  139 S. Ct. 1094 (2019) ............................................................... 18, 19

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) ............................................................... 10

*Marshall v. Wells Fargo Advisors, LLC*,
  668 F. App'x 874 (11th Cir. 2016) ............................................................... 8

*McNutt Oil & Ref. Co. v. Mimbres Valley Bank*,
  174 F.2d 311 (10th Cir. 1949) ............................................................... 10, 11, 13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston*,
  566 F.2d 1119 (9th Cir. 1978) ............................................................... 14

*Mitsui & Co. v. Puerto Rico Water Res. Auth.*,
  528 F. Supp. 768 (D.P.R. 1981) ............................................................... 18

*Naomi L. Miles Revocable Tr. v. Lawrence*, No. 10-CV-034-S,
  2014 WL 11498025 (D. Wyo. Apr. 2, 2014) ............................................................... 8

*Pelt v. Utah*,
  539 F.3d 1271 (10th Cir. 2008) ............................................................... 7

*Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*,
  431 F.3d 1241 (10th Cir. 2005) ............................................................... 8

*Roscoe v. United States*,
  134 F. App'x 226 (10th Cir. 2005) ............................................................... 8

S.E.C. v. Arcturus Corp.,
   171 F. Supp. 3d 512 (N.D. Tex. 2016) ........................................................................ 17

S.E.C. v. Bankatlantic Bancorp, Inc.,
   No. 12-cv-60082, 2013 WL 12009694 n.5 (S.D. Fla. Nov. 14, 2013) ......................... 11

S.E.C. v. Prince,
   942 F. Supp. 2d 108 (D.D.C. 2013) ..................................................................... 14, 15

S.E.C. v. Solucorp Indus., Ltd.,
   274 F. Supp. 2d 379 (S.D.N.Y. 2003) ...................................................................... 15

Scott v. ZST Digital Networks, Inc.,
   896 F. Supp. 2d 877 (C.D. Cal. 2012) ..................................................................... 17

Smallen v. The W. Union Co.,
   950 F.3d 1297 (10th Cir. 2020) ................................................................................. 8

St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.,
   309 F.3d 680 (10th Cir. 2002) ................................................................... 9, 10, 13

Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank,
   250 F.3d 87 (2d Cir. 2001) .................................................................................. 16, 17

Travelers Ins. Co. v. Morrow,
   645 F.2d 41 (10th Cir. 1981) ................................................................................... 10

Winston v. Fed. Exp. Corp.,
   853 F.2d 455 (6th Cir. 1988) ................................................................................... 14

Wolf v. Weinstein,
   372 U.S. 633 (1963) ............................................................................................... 14

**<u>Rules</u>**

Fed. R. Civ. P. 56(a) ..................................................................................................... 7

**<u>Regulations</u>**

17 C.F.R. § 240.16a-1(f) ............................................................................................. 14

29 C.F.R. § 791.2(a) ................................................................................................... 18

**<u>Other Authorities</u>**

Restatement (Second) of Agency § 27 (1958) .................................................................. 10

## I.    INTRODUCTION

Defendants Tom Ward and Matthew Grubb made false and misleading statements and omissions of material fact, with scienter, during four Trust I earnings conference calls ("Trust I Conference Calls"). Trust I scheduled and announced the calls. Trust I, Ward, Grubb, and Bennett all presented the calls as "Trust I" calls — and specifically *not* SandRidge calls — to address Trust I's quarterly financial results. Ward, Grubb and Bennett acted as agents and *de facto* officers of Trust I in their statements during the Trust I Conference Calls.

The officers and employees of SandRidge Energy, Inc. ("SandRidge") handled nearly all of Trust I's business functions: they managed the wells that comprised the underlying assets for Trust I's royalty interests; collected the wells' production data; drafted Trust I's SEC filings; and most importantly, communicated directly with securities analysts and Trust I investors on the Trust I Conference Calls. Ward and Grubb made false and misleading statements during the Trust I Conference Calls with apparent authority from Trust I to speak on its behalf, regardless of their official titles. The statements and scienter of Ward and Grubb are properly imputed to Trust I because Ward and Grubb acted as Trust I's agents and *de facto* officers. For these reasons, a material issue of fact exists as to whether Trust I may be held liable for Ward's and Grubb's false and misleading statements and omissions of material fact. The Court should deny Trust I's motion for summary judgment.

**II.      RESPONSE TO TRUST I'S STATEMENT OF MATERIAL FACTS**

Pursuant to Local Civil Rule 56.1(c), Plaintiffs respond to Trust I's statement of undisputed material facts as follows.

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Disputed. Trust I did not act as a passive trust and did not limit its activities to the receipt of revenues from SandRidge and distribution of such revenues to unitholders. For example, in press releases issued by the Trust I Trustee, Sarah Newell, Trust I announced and scheduled quarterly conference calls with investors and analysts to discuss its results through Ward, Grubb and Bennett.

6.      Admitted.

7.      Disputed. Ward, Grubb and Bennett acted as *de facto* officers of Trust I during the class period.

8.      Disputed. SandRidge employees and officers acted as the *de facto* employees and officers of Trust I during the class period.

9.      Disputed. Ward, Grubb, and Bennett, as well as other SandRidge employees, managed the business and affairs of Trust I.

10.      Admitted

11.      Disputed. SandRidge employees actively participated in the preparation of the reserve estimates in the Trust I Reserve Report.

2

12.     Admitted.

13.     Disputed. Despite suggesting the possibility of fluctuations, the Trust I Prospectus set target distributions for each quarter, and Defendants considered it vital to meet or exceed these target distributions, and accelerated oil production and installed Electric Submersible Pump.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     While it was stated on the Q2 2011 earnings call that Ward, Bennett and Grubb were officers of SandRidge, Ward, Grubb and Bennett acted as agents and *de facto* officers of Trust I on that call.

19.     While it was stated on the Q3 2011 earnings call that Ward, Bennett and Grubb were officers of SandRidge, Ward, Grubb and Bennett acted as agents and *de facto* officers of Trust I on that call.

20.     While it was stated on the Q4 2011 earnings call that Ward, Bennett and Grubb were officers of SandRidge, Ward, Grubb and Bennett acted as agents and *de facto* officers of Trust I on that call.

21.     While it was stated on the Q1 2012 earnings call that Ward, Bennett and Grubb were officers of SandRidge, Ward, Grubb and Bennett acted as agents and *de facto* officers of Trust I on that call.

22.     While it was stated on the Q2 2011 earnings call that Trust I had no employees or officers, Defendants omitted to mention on the call that SandRidge employees acted as the *de facto* employees of Trust I.

23.     While it was stated on the Q3 2011 earnings call that Trust I had no employees or officers, Defendants omitted to mention on the call that SandRidge employees acted as the *de facto* employees of Trust I.

24.     While it was stated on the Q4 2011 earnings call that Trust I had no employees or officers, Defendants omitted to mention on the call that SandRidge employees acted as the *de facto* employees of Trust I.

25.     While it was stated on the Q1 2012 earnings call that Trust I had no employees or officers, Defendants omitted to mention on the call that SandRidge employees acted as the *de facto* employees of Trust I.

26.     Disputed. The Trust I Registration Statement Trust I filed with the SEC contained false and misleading statements.

## III.     PLAINTIFFS' COUNTER-STATEMENT OF UNDISPUTED FACTS

1.     The Q2 2011, Q3 2011, Q4 2011, and Q1 2012 Trust I earnings calls (collectively, "Trust I earnings calls") were each described by both the operator and Bennett as the respective quarter's "SandRidge Mississippian Trust I earnings conference call" or "SandRidge Mississippian Trust I conference call." Dkt. Nos. 360-11, 360-12, 360-13, 360-14.

2.     During the Q2 2011 Trust I earnings call, Grubb described the call as an "SDT call." Dkt. No. 360-11.

4

3.     During each of the Trust I earnings calls, Ward described the call as the "SandRidge Mississippian Trust conference call," Dkt. Nos. 360-11, 360-12, "SandRidge Mississippian Trust Number 1 conference call." Dkt. No. 360-13, or "SandRidge Mississippian Trust I conference call." Dkt. No. 360-14.

4.     During the Q4 2011 Trust I earnings call, Bennett stated that "This call's intended to cover SandRidge Mississippian Trust I and not SandRidge Energy or our other trust." Dkt. No. 360-13.

5.     During the Q4 2011 Trust I earnings call, Ward stated that "in addition to beating the target distribution, *we* exceeded the (inaudible) threshold for the period." Dkt. No. 360-13 (emphasis added).

6.     During the Q1 2012 Trust I earnings call, Ward stated that "in addition to beating the target distribution, *we* exceeded the incentive threshold for the period." Dkt. No. 360-14 (emphasis added).

7.     During the Q3 2011 Trust I earnings call, an analyst asked "do you have the capacity to hedge out this gas production for future years?" and Bennett responded, "We do not, not at the Trust." Dkt. No. 360-12.

8.     During the Q2 2011 Trust I earnings call, Bennett described a press release regarding Trust I's first distribution as "***our*** press release." Dkt. No. 360-11 (emphasis added).

9.     Trust I issued a press release regarding Trust I's first distribution, but SandRidge did not. Ex. 1.

10.     Trust I issued press releases announcing each of the Trust I earnings calls, but SandRidge did not. Exs. 1-4; Newell Dep. 28:13-17.

11.     The Thomson Reuters final transcripts for the Q2 2011, Q3 2011, and Q1 2012 Trust I earnings calls listed Bennett as "SandRidge Mississippian Trust I – CFO," Ward as "SandRidge Mississippian Trust I – Chairman, CEO," and Grubb as "SandRidge Mississippian Trust I – President, COO." Dkt. Nos. 360-11, 360-12, 360-14.

12.     Thomson Reuters's editorial policy is to provide the transcripts to the company for corrections prior to publication. Ex. 5.

13.     The Trustee's files reflect that it received transcripts for at least the Q2 2011 earnings call for corrections. Ex. 6.

14.     The version of the Q2 2011 earnings call transcript the Trustee received for corrections listed Bennett as "SandRidge Mississippian Trust I – CFO," Ward as "SandRidge Mississippian Trust I – Chairman, CEO," and Grubb as "SandRidge Mississippian Trust I – President, COO." .

15.     The Trustee knew that the Trust I earnings calls were being held. Newell Dep. 26:11-17; 30:2-3.

16.     The Trustee attended the Q3 2011 Trust I earnings call. Dkt. No. 360-12.

17.     The Trustee set up the Trust I earnings calls. Newell Dep. 30:19-24.

18.     The Trustee understood that the Trust I earnings calls were discussing only Trust I, not SandRidge. Newell Dep. 39:19-23.

6

19.     The Trustee participated in the review, gave final approval, and filed on behalf of Trust I all documents Trust I filed with the SEC, including the Trust I Registration Statement. Newell Dep. 41:8-19; 42:2-11; 50:11-18.

## IV.    ARGUMENT

### A.    Trust I Bears a Heavy Burden On its Motion for Summary Judgment

The Court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).[1] "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* The Tenth Circuit requires that the moving party show "beyond a reasonable doubt that it is entitled to summary judgment." *Blocker v. ConocoPhillips Co.*, 378 F. Supp. 3d 1066, 1068 (W.D. Okla. 2019) (quoting *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008)).

"When the parties disagree about a material fact or about the significance and relationship of the factual events, the role of the judge is to test the 'genuineness' of the dispute." *In re Ribozyme Pharm., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[1] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

When considering a motion for summary judgment, a court must draw all inferences in the light most favorable to the party opposing summary judgment. *Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

The immateriality of a false or misleading statement is rarely grounds for summary judgment. To enter summary judgment, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988). Summary judgment against a plaintiff is only appropriate when the misrepresentations are "so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality[.]" *Naomi L. Miles Revocable Tr. v. Lawrence*, No. 10-CV-034-S, 2014 WL 11498025, at *3 (D. Wyo. Apr. 2, 2014).

**B.    The Court May Impute the Statements and Scienter of Ward and Grubb to Trust I Either as Agents or De Facto Officers of Trust I**

As Trust I concedes, Trust I is a corporate entity that can act or speak only through its agents. Trust I MSJ at 10; *Roscoe v. United States*, 134 F. App'x 226, 228 (10th Cir. 2005) ("An inanimate entity, however, can act only through its agents"); *Marshall v. Wells Fargo Advisors, LLC*, 668 F. App'x 874, 874 (11th Cir. 2016) (a trust "can act only through agents"). The Tenth Circuit has consistently held that "the scienter of a corporation's agents must be imputed to it." *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1312 (10th Cir. 2020). The individuals whose statements and scienter may be properly imputed to an entity include non-employee agents; that is, they need *not* bear the official titles of officer,

employee, or trustee. *See* Trust I MSJ at 10 ("a plaintiff must prove that an **agent or employee** of the corporation committed a culpable act with the requisite scienter").

Here, the statements and scienter of Ward and Grubb may properly be imputed to Trust I because Ward and Grubb were acting as the agents or *de facto* officers of Trust I on the Trust I Conference Calls.

### 1.      Ward and Grubb Made Statements on the Trust I Conference Calls as Agents of Trust I

The Court may impute the statements and scienter of Ward and Grubb to Trust I because they acted as agents of Trust I on the Trust I Conference Calls. To determine when an individual's "acts and intent" may be imputed to an entity, "courts have looked to agency principles for guidance." *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015). No contract or express formalities are required for the Court to find an agent-principal relationship. *St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 704 (10th Cir. 2002) ("the absence of a formal relationship does not preclude a finding that an agency relationship exists.").

Under the principles of agency, a principal may be held liable for the acts or statements of its agents if they acted with apparent authority. *Id.* This holds true regardless of whether the agents had actual authority. *Id.* (under Oklahoma law, "actual authority between principal and agent is not a prerequisite to establishing apparent authority"). Under the securities laws, too, principals are liable for statements made by their agents with apparent authority. *ChinaCast*, 809 F.3d at 476 ("In the context of Rule 10b–5, we have adopted the general rule of imputation and held that a corporation is responsible … for a

misleading statement made by an employee or other agent who has actual or apparent authority."). *See also Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 708 (7th Cir. 2008) ("The doctrines of *respondeat superior* and apparent authority remain applicable to suits for securities fraud.").

The Tenth Circuit has long held that an agent acts with apparent authority when the principal knowingly permits the agent to act on its behalf, or otherwise manifests its consent to the agent's actions. "Apparent authority of an agent is such authority as the principal knowingly permits the agent to assume." *St. Anthony Hosp.*, 309 F.3d at 704; *McNutt Oil & Ref. Co. v. Mimbres Valley Bank*, 174 F.2d 311, 313 (10th Cir. 1949) (same); *Travelers Ins. Co. v. Morrow*, 645 F.2d 41, 44–45 (10th Cir. 1981) (to establish apparent authority, "it must be shown that the principal knowingly permitted the agent to exercise the authority in question, or in some manner manifested its consent that such authority be exercised."); *Inst. for Bus. Planning, Inc. v. Standard Life & Acc. Ins. Co.*, 242 F. Supp. 100, 107 (W.D. Okla. 1965) (to establish apparent authority requires "that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority").

Restatement (2d) of Agency states that "apparent authority is created when a principal writes, speaks, or acts in a way which causes a third person to reasonably believe that the principal consents to the acts of the agent." Restatement (Second) of Agency § 27 (1958). Put another way, apparent authority is created where both the third party and the principal know of the actions of the agent, and the principal fails to object even though it could have done so. *Id.* § 43, Comment e.

10

The Court may find that an agent acted with apparent authority even if the principal did not subjectively intend to grant the agent authority to act on its behalf. "Absence of the intention to confer any power of the character of that exercised cannot be asserted as a defense. The agent's authority as to those with whom he deals, absent knowledge to the contrary, is what it reasonably appears to be." *McNutt*, 174 F.2d at 314.

Here, Ward and Grubb acted as agents of Trust I with respect to their statements during the Trust I Conference Calls because they spoke with apparent authority on behalf of Trust I. Trust I knowingly permitted Ward and Grubb to make public statements on behalf of Trust I to Trust I investors during the Trust I Conference Calls. The calls were conducted under the auspices of a "SandRidge Mississippian Trust I earnings conference call." Dkt. Nos. 360-11, 360-12, 360-13, 360-14. Bennett, Ward, and Grubb each presented the calls as "Trust I" or "SDT" calls, repeatedly spoke for Trust I as "we," and Bennett referred to Trust I's press release as "our" press release. *Id.*

Trust I set up the calls. Newell Dep. 30:19-24. Trust I issued press releases to alert Trust I investors of the upcoming Trust I Conference Calls. Exs. 1-4; Newell Dep. 28:13-17. The Trustee testified that the Trust knew that the Trust I Conference Calls were being held, and personally attended some of the calls. Newell Dep. 26:11-17, 30:2-3; Dkt. No. 360-12.

"The earnings conference call is a way for companies to relay information to all interested parties, including institutional and individual investors, as well as buy- and sell-side analysts." *S.E.C. v. Bankatlantic Bancorp, Inc.*, No. 12-cv-60082, 2013 WL 12009694, at *2 n.5 (S.D. Fla. Nov. 14, 2013). Investors understand that earnings calls are

a corporate disclosure function typically conducted by a company's management. Diamond, Colin J. and Irina Yevmenenko, *Earnings Releases and Earnings Calls*, Thomson Reuters (2015) ("An earnings call is an oral presentation by senior management").[2] When Ward and Grubb hosted the Trust I Conference Calls—set up, announced by, and at all times with the knowledge of Trust I—it gave reasonable investors the impression that Ward and Grubb were authorized by Trust I to carry out this important corporate function on behalf of Trust I.

The call transcripts confirm that Ward and Grubb had apparent authority. The transcripts referred to Ward and Grubb as officers of Trust I. The transcripts, listing Grubb and Ward as officers of Trust I, were emailed to the Trustee for correction before publication. Ex. 6. The Trustee did not correct Ward and Grubb's listed positions.

Accordingly, a genuine issue of material fact exists as to whether Ward and Grubb acted with apparent authority to speak on Trust I's behalf during the Trust I Conference Calls, which would permit the Court to impute both their statements and their scienter to Trust I.

Contrary to Trust I's assertions, the "Independent Status" clause in the Administrative Services Agreement ("ASA") between Trust I and SandRidge does not foreclose the possibility that SandRidge, Ward, or Grubb could act as Trust I's agent. *See*

---

[2] *Available at* https://www.whitecase.com/sites/whitecase/files/files/download/ publications/article-earnings-releases-and-earnings-calls.pdf. *See also* Chen, James, *Earnings Call*, Investopedia (2018) (an earnings call is "a conference call between the management of a public company, analysts, investors, and the media to discuss the company's financial results during a given reporting period"), *available at* https://www.investopedia.com/terms/e/earnings-call.asp.

Trust I MSJ at 15. The clause provides only that "nothing in this Agreement" creates an agency relationship based on the "performance of the Services" delineated therein. *Id.* Conversely, nothing in the ASA *precludes* an agency relationship between Trust I and SandRidge, Ward, or Grubb based on actions taken *outside* the scope of the ASA, such as conducting the Trust I Conference Calls. *See* Dkt. No. 360-18 (ASA). Similarly, the absence of a formal agency relationship between Trust I and Ward and Grubb, or the fact that Trust I did not *expressly* authorize Ward and Grubb to act on Trust I's behalf, does not preclude a finding that Ward and Grubb made public statements on behalf of Trust I with apparent authority. Trust I MSJ at 16; *St. Anthony Hosp.*, 309 F.3d at 704; *McNutt*, 174 F.2d at 314.

Plaintiffs do not assert, nor need they, that Ward and Grubb were "general agents" for Trust I. Trust I MSJ at 17. Plaintiffs assert only that Ward and Grubb acted as agents for Trust I with respect to the statements that Trust I knowingly permitted them to make during the Trust I Conference Calls, thus imbuing Ward and Grubb with apparent authority to speak on Trust I's behalf.

Permitting Plaintiffs' claims as a matter of law would not unduly impact the use of passive trusts and would not require any reworking of the trust-trustor relationship. Trust I MSJ at 17. A passive trust may still exist without officers, and the trustor would not be a general agent of the trust. However, if a trust knowingly permits someone to undertake a critical corporate function of the trust, such as holding earnings calls in the trust's name for securities analysts and the trust's investors, the trust is liable for that person's false

13

statements or omissions made with scienter under the longstanding principles of agency and apparent authority. Trusts do not get a free pass from the securities laws.

### 2. Ward and Grubb Made Statements on the Trust I Conference Calls as *De Facto* Officers of Trust I

Alternatively, the same facts demonstrating that Ward and Grubb acted as agents of Trust I also support the theory that they were *de facto* officers of Trust I. Rule 16a–1 of the Exchange Act defines an "officer" to include "***any other person who performs similar policy-making functions for the issuer***." 17 C.F.R. § 240.16a-1(f). As explained in a case Trust I cites, courts around the country use a fact-intensive, functional approach to determine whether individuals are *de facto* officers. *S.E.C. v. Prince*, 942 F. Supp. 2d 108, 133 (D.D.C. 2013) (collecting cases).

In determining whether persons are *de facto* officers, courts have generally employed a fact-intensive analysis of their responsibilities. *Colby v. Klune*, 178 F.2d 872, 873 (2d Cir. 1949) (addressing whether an individual is an officer under Section 16(b) of the Exchange Act); *Wolf v. Weinstein*, 372 U.S. 633, 652 n.19 (1963) (citing *Colby*, 178 F.2d at 875) ("it is clear that a determination of who is a corporate 'officer' within the meaning of the statute requires a flexible assessment of particular powers and responsibilities rather than a rigid rule of thumb"); *Winston v. Fed. Exp. Corp.*, 853 F.2d 455, 456–57 (6th Cir. 1988) (evaluating whether a corporation's former vice president still had access to confidential information after his resignation); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston*, 566 F.2d 1119, 1122 (9th Cir. 1978) (noting that "court must look behind the title ... to ascertain [a] person's real duties"); *Gold v. Sloan*, 486 F.2d 340,

351 (4th Cir. 1973) (evaluating facts to determine if particular officer actually received insider information).

Courts likewise employ a functional analysis to apportion liability under Section 10(b) of the Securities Exchange Act. *See S.E.C. v. Solucorp Indus., Ltd.*, 274 F. Supp. 2d 379, 384–87 (S.D.N.Y. 2003) (using functional approach to determine whether individual was "officer" for purpose of Section 10(b)). This functional, fact-intensive analysis of an alleged officer's duties and responsibilities "is a fair and reasonable approach which is consistent with the SEC's overriding obligation to protect the investing public." *Prince*, 942 F. Supp. 2d at 134 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976) (noting that investor protection was a primary purpose behind passage of the Securities Act and the Securities Exchange Act)).

Here, Ward and Grubb performed policy-making functions for Trust I. Ward and Grubb oversaw the drafting of Trust I's Registration Statement, drafted earnings call scripts, and communicated with analysts concerning Trust I. On the Trust I Conference Calls, Ward and Grubb spoke to Trust I investors, not SandRidge investors. *See* Dkt. No. 360-13 (Bennett: "This call's intended to cover SandRidge Mississippian Trust I and not SandRidge Energy."). These are exactly the functions typically performed by corporate officers demonstrating they acted as *de facto* officers of Trust I during the Trust I Conference Calls. Accordingly, their statements and scienter are properly imputed to Trust I.

Trust I boldly declares that "Courts have consistently held that a person may not be deemed a 'de facto officer' where interested parties know that the person purporting to be

an officer is not in fact an officer." Trust I MSJ at 13. But it does not cite any cases in support of this assertion.

In any case, Trust I offers no evidence that interested parties knew Ward and Grubb were not actual officers of Trust I. Neither Ward nor Grubb (nor Bennett) disclaimed that they were acting as agents or *de facto* officers of Trust I during the Trust I Conference Calls. Trust I MSJ at 14. Trust I could have clarified that Ward and Grubb were not Trust I officers, or corrected the call transcripts describing Ward and Grubb as Trust I officers. It did neither. Bennett noted that Ward and Grubb were SandRidge officers, *id.*, which is not mutually exclusive with acting concurrently as officers of Trust I. *E.g., Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 100 (2d Cir. 2001) (finding individual acted as an agent whose scienter was imputable to multiple entities concurrently); *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 122 (D. Del. 2000) (where corporate officer served multiple entities "it could have been reasonable for DuPont to believe that on January 22, 1998, [the officer] spoke for both entities"). Bennett stated that Trust I had no named officers or employees, Trust I MSJ at 14, but he, Ward, and Grubb were serving a critical corporate function for Trust I by holding these calls to relay information and answer questions about Trust I for securities analysts and Trust I investors. Thus, with respect to the Trust I Conference Calls, Ward and Grubb spoke as *de facto* officers of Trust I.

### C.   Trust I Made False and Misleading Statements

Trust I argues it did not "make" the alleged false and misleading statements uttered by Ward and Grubb during the Trust I Conference Calls. Trust I MSJ at 8 (citing *Janus*

*Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011)). But the fact that Ward and Grubb physically uttered the statements does not mean their statements cannot also be imputed to Trust I. Indeed, "*Janus* does not imply that there can be only one 'maker' of a statement." *Carpenters Pension Tr. Fund of St. Louis, St. Clair Shores Police & Fire Ret. Sys. v. Barclays PLC*, 56 F. Supp. 3d 549, 558 (S.D.N.Y. 2014) (recognizing that individual and three separate entities could all be "makers"). *See also IOP Cast Iron Holdings, LLC v. J.H. Whitney Capital Partners, LLC*, 91 F. Supp. 3d 456 (S.D.N.Y. 2015) (similar); *In re Nat'l Century Fin. Enterprises, Inc.*, 846 F. Supp. 2d 828, 861 (S.D. Ohio 2012) (holding that an underwriter and issuer both made statements contained in a private placement memorandum); *Scott v. ZST Digital Networks, Inc.*, 896 F. Supp. 2d 877, 890 (C.D. Cal. 2012) (similar).

Moreover, as demonstrated in Plaintiffs' opposition to Grubb's and Bennett's motion for summary judgment, filed concurrently herewith, Plaintiffs assert valid claims based on statements contained in the Trust I Registration Statement. Trust I does not contest that it "made" the statements in the Trust I Registration Statement. These statements were false when made, and Trust I was under a continuing duty to correct those false statements throughout the Class Period. It failed to correct its knowingly false statements.

Finally, *contra* Trust I MSJ at 10, it is not inconsistent for Plaintiffs to argue that Ward and Grubb acted as agents or *de facto* officers of Trust I at the same time they acted as officers of SandRidge. A court may properly impute scienter from the same individual to more than one entity. *See, e.g., Toronto-Dominion Bank*, 250 F.3d at 100; S.*E.C. v. Arcturus Corp.*, 171 F. Supp. 3d 512, 537 (N.D. Tex. 2016) ("Parvizian had the requisite

17

scienter which can be imputed to both Aschere and Arcturus"), *rev'd on other grounds*, 928 F.3d 400 (5th Cir. 2019).

This is simply a banal application of the well-worn principle that a person may serve two masters. For example, the Fair Labor Standards Act provides that "[a] single individual may stand in the relation of an employee to two or more employers at the same time." 29 C.F.R. § 791.2(a). *See also In re Cooper Mfg. Corp.*, 131 F. Supp. 2d 1238, 1246 (N.D. Okla. 2001) ("The Tenth Circuit held that Holmes could potentially be liable to Cooper on a dual agency theory. That is, Home alleged Holmes was an agent of both Cooper and Home"); *Mitsui & Co. v. Puerto Rico Water Res. Auth.*, 528 F. Supp. 768, 790 (D.P.R. 1981) (finding individuals acted as "employees or agents of both Mitsui entities at the same time.").

### D.   Trust I Disseminated False and Misleading Statements

Trust I may be found liable even if it did not "make" the challenged statements. Under *Lorenzo v. S.E.C.*, 139 S. Ct. 1094, 1099 (2019), the Supreme Court held that those who disseminate false and misleading statements to investors with the intent to defraud may be held primarily liable under Rule 10b-5(a) and (c), despite not "making" the statements under *Janus*. The defendant forwarded emails containing false statements to investors. *Id.* Lorenzo did not draft or approve the content in the emails, and he sent the emails at his boss's direction. *Id.*

Trust I argues that it did not disseminate the Trust I Conference Call statements because the Trustee did not speak on any of the Trust I Conference Calls. Trust I MSJ at 9. As Trust I admits, however, it arranged the calls, provided administrative support for the

calls, and attended the calls. *Id.* at 10. This is not one of the "borderline cases" the *Lorenzo* Court alluded to, where it described "actors tangentially involved in dissemination—***say, a mailroom clerk***—for whom liability would typically be inappropriate." *Lorenzo*, 139 S. Ct. at 1101. Here, Trust I's role in disseminating the earnings calls was far beyond that of a mailroom clerk. The Trustee set up, announced to investors, provided administrative support for, and attended the calls. Trust I MSJ at 10. The Trustee knew that Ward and Grubb would be using the calls to relay information about Trust I to securities analysts and Trust I investors. Ward and Grubb could not have made their statements during the Trust I Conference Calls if the Trustee had not set up the calls to begin with, just as the corporate defendant in *Lorenzo* could not have made its statements if Lorenzo had not sent the emails. Under *Lorenzo*, Trust I may properly be found liable for disseminating the challenged statements in the Trust I Conference Calls under Rule 10b-5(a) and (c) even if Trust I did not "make" the statements under *Janus*.

### E.   Trust I is Not Entitled to Summary Judgment on the Grounds Adopted from Other Defendants' Motions

Trust I cites the motions for summary judgment filed by Defendants Ward and Grubb to argue that Ward and Grubb did not act with scienter. Trust I MSJ at 17. For the reasons explained in Plaintiffs' oppositions to Ward and Grubb's respective motions, filed concurrently herewith, there is at least a genuine issue of material fact as to whether Ward and Grubb acted with scienter. Neither Ward, Grubb, nor Trust I are entitled to judgment as a matter of law with respect to scienter.

19

Trust I also claims that it is entitled to summary judgment for various reasons common to all Defendants, and "joins and incorporates by reference" the motions for summary judgment and accompanying briefs filed by Defendants Ward, Grubb, and Bennett. Trust I MSJ at 17-18. As demonstrated in Plaintiffs' respective oppositions to these motions, filed concurrently herewith, none of the Defendants, including Trust I, are entitled to summary judgment for any of the reasons recounted in Trust I's motion.

## V.   CONCLUSION

For the foregoing reasons the Court should deny Trust I's motion for summary judgment in its entirety.

Dated: July 24, 2020                          Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

_/s/ Laurence M. Rosen_____
Laurence M. Rosen, Esq. (*pro hac vice*)
lrosen@rosenlegal.com
Phillip Kim, Esq. (*pro hac vice*)
pkim@rosenlegal.com
Jonathan Horne, Esq. (*pro hac vice*)
jhorne@rosenlegal.com
275 Madison Avenue, 40th Floor
New York, NY 10016
(212) 868-1060

*Lead Counsel for Plaintiffs*

FARHA LAW, PLLC
Nicholas G. Farha, OBA # 21170
nick@farhalawfirm.com
1900 NW Expressway, Suite 501
Oklahoma City, OK 73118
(405) 471-2224

Email: nick@farhalawfirm.com

*Liaison Counsel for Plaintiffs*

WOHL & FRUCHTER, LLP
J. Elazar Fruchter, Esq.
jfruchter@wohlfruchter.com
570 Lexington Avenue, 16th Floor
New York, NY 10022
(212) 758-4000

*Additional Plaintiffs' Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 24, 2020, I electronically transmitted the attached **PLAINTIFFS' OPPOSITION TO DEFENDANT SANDRIDGE MISSISSIPPIAN TRUST I'S MOTION FOR SUMMARY JUDGMENT** using the ECF system for filing, which will send notification of such filing to all counsel registered through the ECF System.

*/s/ Jonathan Horne*