# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

DUANE & VIRGINIA LANIER TRUST,
individually and on behalf of all others
similarly situated,

               Plaintiffs,           Case No. 5:15-CV-00634-G

      v.

SANDRIDGE MISSISSIPPIAN TRUST I,
et al.,

               Defendants.

# PLAINTIFFS' MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

## **TABLE OF CONTENTS**

I.   INTRODUCTION ......................................................................................... 1

II.  THE PARTIES LITIGATE THE DUAL COUNT CLAIMS THROUGH FACT
     AND EXPERT DISCOVERY ...................................................................... 3

     A.  The Complaint Alleges that Defendants Had A Duty to Update the Dual-Count
         Statements..................................................................................... 3

     B.  The Parties Represent to the Court that Plaintiffs Still Allege Fraud Based on the
         Dual Count Statements After Dismissal of the Securities Act Claims ................... 5

     C.  The Court Finds that the Exchange Act Claims Do Not Incorporate Certain
         Statements Made in the Trust II Registration Statement........................................ 11

     D.  Discovery Proves that Defendants Knew the Dual Count Statements Were False
         *When Made* ................................................................................. 12

     E.  Defendants Switch Horses Midstream ...................................................... 14

III. THE PROPOSED COMPLAINT .......................................................... 14

IV.  STANDARD ........................................................................................ 15

V.   ARGUMENT........................................................................................ 15

     A.  There Is Good Cause to Allow Amendment ........................................... 15

     B.  Plaintiffs Meet Rule 15........................................................................ 18

         i.   No prejudice ............................................................................ 19

         ii.  No undue delay ....................................................................... 20

     C.  The Statute of Repose Is Not Implicated ................................................ 20

VI.  CONCLUSION .................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bales v. Green*,
No. 16-CV-106-GKF-JFJ, 2018 WL 840762 (N.D. Okla. Feb. 13, 2018) ................... 16

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019) ............................................................. 20

*Bleznak v. C.G.S. Sci. Corp.*,
61 F.R.D. 493 (E.D. Pa. 1973) ....................................................................... 7

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
137 S. Ct. 2042 (2017) .................................................................................... 5

*Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*,
889 F.3d 1153 (10th Cir. 2018) ....................................................................... 5

*Foman v. Davis*,
371 U.S. 178 (1962) ..................................................................................... 19

*Fresno Cty. E'ees' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) .............................................................. 7

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007) ............................................................. 4

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993) ............................................................................... 5

*Joseph v. Wiles*,
223 F.3d 1155 (10th Cir. 2000) ....................................................................... 5

*Lewy v. SkyPeople Fruit Juice, Inc.*,
No. 11 CIV. 2700 PKC, 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ........................ 3

*Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*,
No. 08-1250-WEB-KGG, 2011 WL 5837234 (D. Kan. Nov. 21, 2011) ............... 15, 16

*Martin v. Altisource Residential Corp.*, No.,
CV 15-24, 2019 WL 2762923 (D.V.I. July 2, 2019) ..................................... 20

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988) ................................................................. 7

*Minter v. Prime Equip. Co.*,
    451 F.3d 1196 (10th Cir. 2006) ............................................................... 19, 20

*New Jersey v. Sprint Corp.*,
    531 F. Supp. 2d 1273 (D. Kan. 2008) .............................................................. 4

*Pumpco, Inc. v. Schenker Int'l, Inc.*,
    204 F.R.D. 667 (D. Colo. 2001) ..................................................................... 16

*Vazirabadi v. Denver Health & Hosp. Auth.*,
    782 F. App'x 681 (10th Cir. 2019) ................................................................. 16

*Video Gaming Techs., Inc. v. Castle Hill Studios LLC*,
    No. 17-CV-454-GKF-JFJ, 2018 WL 3437083 (N.D. Okla. July 17, 2018) ................. 15

## **Statutes**

28 U.S.C. § 1658(b)(2) ....................................................................................... 20

## **Rules**

Fed. R. Civ. P. 9(b) ............................................................................................. 3

Fed. R. Civ. P. 15(a) ......................................................................................... 18

Fed. R. Civ. P. 15(b) ......................................................................................... 21

iii

## I.      INTRODUCTION

The Court should grant Plaintiffs leave to file their [Proposed] Second Amended Complaint to ensure the case the parties litigated is the case the jury hears.

The operative First Amended Complaint ("Complaint") alleges that Defendants made false statements in the SandRidge Mississippian Trust I Registration Statement which registered the Trust I securities certain Class Members bought. The false statements concerned Trust I's reserves and the consistency of the Mississippian. These false statements are set out in the section of the Complaint which alleges that Defendants violated Section 11 of the Securities Act of 1933 ("Securities Act"), which prohibits false statements in registration statements used to publicly offer securities as in Trust I's IPO. Plaintiffs stipulated to dismiss the Securities Act claims when an intervening Supreme Court decision overruled a controlling Tenth Circuit decision to retroactively make them untimely.

Yet Plaintiffs' claims under the Securities and Exchange Act of 1934 ("Exchange Act"), which prohibits fraud in connection with any securities transaction, survived Defendants' motion to dismiss. In these claims, Plaintiffs allege that Defendants breached a duty to *update* the statements they made in the Trust I Registration Statement (hence, these statements are the "Dual Count Statements."). Plaintiffs did not stipulate to the dismissal of any of the factual allegations in their Complaint. So both Plaintiffs and Defendants have acknowledged throughout this litigation that Plaintiffs continue to allege securities fraud claims based on the Dual Count Statements.

In their motions for summary judgment, Defendants maintain for the first time that claims based on the Dual Count Statements were dismissed alongside Plaintiffs' Section 11 IPO securities claims. So, out of an abundance of caution, Plaintiffs seek to amend their Complaint to unambiguously plead that Defendants committed securities fraud in connection with the Dual Count Statements.

Plaintiffs meet the standards for amendment. First, there is good cause for allowing amendment. The Parties – both Plaintiffs and Defendants – maintained during discovery that Plaintiffs alleged securities fraud claims based on the Dual Count Statements. The Parties spent hundreds of thousands of dollars on experts to provide expert testimony relevant only to the Dual Count Statements. The amendments Plaintiffs propose simply clarify the Complaint in response to Defendants' new contention, raised for the first time in their motion for summary judgment, that the Complaint does not allege Section 10(b) securities fraud claims based on the Dual Count Statements.

Defendants will not suffer any prejudice. They litigated this case through fact and expert discovery under the correct assumption that Plaintiffs allege that the Dual Count Statements were actionable. In any case, Defendants accept that the Dual Count Statements are at issue in *Glitz*. They will have to defend against them either way.

The Court should grant it Plaintiffs' motion for leave to file a [Proposed] Second Amended Complaint.[1]

---

[1] A copy of the [Proposed] Second Amended Complaint is attached as Exhibit 1 to the Declaration of Jonathan Horne, filed herewith.

## II.     THE PARTIES LITIGATE THE DUAL COUNT CLAIMS THROUGH FACT AND EXPERT DISCOVERY

### A.  The Complaint Alleges that Defendants Had A Duty to Update the Dual-Count Statements

The Complaint alleges claims based on the Dual Count Statements in the body of its Exchange Act claims.

The Complaint is divided into two sections. In the first section, consisting of Paragraphs 2-288, Plaintiffs bring claims under Section 11 of the Securities Act of 1933 ("Securities Act") ("Securities Act Section"), which establishes liability for false statements made in registration statements. In the second section, Paragraphs 289-358, Plaintiffs bring securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") ("Exchange Act Section"), which prohibits fraudulent statements in all securities transactions, including Plaintiffs' purchases of Trust I and Trust II securities on the open market.

Plaintiffs commonly structure complaints to completely allege Securities Act claims before raising Exchange Act claims is common practice. To adequately allege a violation of Section 10(b), i.e. securities fraud, a plaintiff must allege facts raising a strong inference of scienter. But if plaintiffs raise allegations of fraud in a Securities Act claim, they  must comply with Federal Rule of Civil Procedure 9(b) which requires precision in averments of fraud. So plaintiffs commonly (as Plaintiffs did here) plead the entirety of their Securities Act claims without any scienter allegations before beginning their Exchange Act claims. *E.g. Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 CIV. 2700 PKC, 2012 WL 3957916, at *9 (S.D.N.Y. Sept. 10, 2012) (not applying Rule 9(b) because "'[t]he Securities Act claims

are found in the first half of the complaint; the Exchange Act allegations, which include allegations of fraud by some-but not all-of the defendants named in the Securities Act claims, are found in the second half of the complaint."); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (similar).[2]

The Securities Act Section alleged that the Dual Count Statements, made in Trust I's Registration Statement, violated Section 11 of the Securities Act. The Securities Act claims alleged that Defendants incorrectly recognized Trust I's reserves as proved in violation of SEC standards. Compl. ¶¶130, 138-40. The Complaint also alleges that Defendants violated Section 11 by misleadingly stating in the Trust I Registration Statement that the Mississippian was consistent and that SandRidge could reliably predict how much oil it would get when it drilled a well. *Id.* Thus, the Dual Count Statements concern the Mississippian's consistency and the Trusts' wells' reserves, but not their production.

The Exchange Act Section alleges that Defendants fraudulently breached a duty to update the Dual Count Statements. In the Exchange Act Section, Plaintiffs allege Defendants fraudulently failed to disclose worsening Trust I oil production. The Complaint alleges that Defendants made misleading statements about the trends on earnings calls. *E.g. Id.* ¶309. But the Complaint also alleges that Defendants violated the ***Exchange Act***

---

[2] At least one court in the Tenth Circuit has held that a single complaint can plead ***both*** Securities Act claims that sound in negligence ***and*** Exchange Act claims that sound in fraud in the same pleading so long as the plaintiffs set out a separate theory of negligence and do not incorporate fraudulent allegations into the Section 11 claims. *New Jersey v. Sprint Corp.*, 531 F. Supp. 2d 1273, 1285 (D. Kan. 2008).

because "the material new information concerning Negative Trust I Oil Production Trends *rendered misleading the prior statements in the Registration Statements classifying the oil reserves of the Trust I Development Wells as 'Proved.*'" Compl. ¶297. The Complaint similarly alleges that new information about the Mississippian's geology rendered the Registration Statement's classification of oil reserves as "proved" misleading. *Id.* ¶298. The Complaint's language parallels that of the Second Circuit in the case recognizing the duty to update. *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993) ("A duty to disclose arises whenever [] information renders prior public statements materially misleading.").[3]

### B. The Parties Represent to the Court that Plaintiffs Still Allege Fraud Based on the Dual Count Statements After Dismissal of the Securities Act Claims

A change in the law made Plaintiffs' Section 11 claims untimely. After briefing on Defendants' motion to dismiss the Complaint was complete, the Supreme Court decided *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2044 (2017) ("*CALPERS*"). Under previous Tenth Circuit precedent, *Joseph v. Wiles*, 223 F.3d 1155, 1157 (10th Cir. 2000), Plaintiffs' Securities Act claims would unquestionably have been timely. Under *CALPERS*, the claims unquestionably were untimely. With no way to distinguish *CALPERS*, Plaintiffs filed a notice explaining that they did not oppose

---

[3] The Tenth Circuits refer to the "duty to correct" and "duty to update" interchangeably. *Employees' Ret. Sys. of Rhode Island v. Williams Companies, Inc.*, 889 F.3d 1153, 1166 (10th Cir. 2018).

Defendants' motion to dismiss the Securities Act claims. Dkt. # 126. Relying on Plaintiffs' non-opposition, the Court then dismissed the claims. Dkt. # 129.

Yet the Court never dismissed the facts or the statements set out in the Securities Act claims. Plaintiffs' Exchange Act claim, including the duty to update the Dual Count Statements, largely survived Defendants' motion to dismiss. Dkt. # 130.

Plaintiffs' subsequent filings in this case – as well as Defendants' – recognized that Plaintiffs continued to allege that the Dual Count Statements violated the Exchange Act. First, in their Amended Joint Status Report and Discovery Plan, filed after dismissal of the Securities Act claims, the Parties told Judge Palk that this case and *Glitz* "involve common defendants and raise nearly identical factual and legal issues." Dkt. # 160, at 8. Notably, the *Glitz* case primarily concerns the subject matter of the Dual Count Statements – i.e., reserves and the Mississippian's consistency, but not production.[4]

---

[4] As the *Glitz* Plaintiffs summarized their case in moving for Class certification:

> Defendants materially misrepresented the economics for its Mississippian play by, among other things, understating the amount of gas relative to oil (the gas to oil ratio or "GOR") [footnote omitted] (¶¶141-148) and overstating the amount of oil (the estimated ultimate recovery or "EUR") in the Mississippian play for its typical horizontal Mississippian well. ¶¶132-148.
> […]
> After the close of trading on November 8, 2012, and during a conference call the next morning, SandRidge announced its financial results for the third quarter of 2012, reporting a loss of $184 million and acknowledging, among other things, the EUR for its typical Mississippian horizontal well was lower than represented and there was more natural gas and less oil recoverable than represented by Defendants during the Class Period. *Glitz* Dkt. # 268, at 2, 4.

Second, the Class Period makes no sense unless Plaintiffs allege that Defendants breached a duty to update the Dual Count Statements. Plaintiffs alleged that the Exchange Act Class Period began on April 5, 2011, the day of Trust I's IPO, though the first statement concerning Trust I's oil production was not made until November 11, 2011. Compl. ¶¶3, 308. Plaintiffs sought to certify a class that included all persons who purchased shares between April 5, 2011, and November 8, 2012. Dkt. # 171-1, ¶ 1. There is no point in beginning the Class Period on April 5, 2011, unless the false statements and omissions of material fact are made that first day. *Bleznak v. C.G.S. Sci. Corp.*, 61 F.R.D. 493, 499 (E.D. Pa. 1973) (declining to certify class that included persons who purchased shares before false statements); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 673 (M.D. Ala. 1988) ("[purported objectors] are not, and cannot be, members of the plaintiff class in this case, due to the fact that they purchased their stock before the alleged wrongdoing occurred."). So the Class Period requires that Defendants breached a duty to update the Dual Count Statements.

Defendants argued in opposition to the motion for Class Certification that the Class Period could not begin until November 12, 2011. In reply, Plaintiffs explained that "The Trust I Registration Statement that became effective on April 5, 2011, contained several misleading omissions":

> To be sure, since scienter was not an element of the Securities Act claims, Plaintiffs deliberately alleged those omissions were negligent in the Securities Act section of the Complaint. *See Fresno Cty. E'ees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 557-58 (S.D.N.Y. 2017) (when a plaintiff asserts both Securities Act and Exchange Act claims, it must segregate the complaint "into two parts" that clearly distinguish between claims based on negligence and claims based on fraud). But in structuring

the complaint to minimize pleading burdens, Plaintiffs did not concede that the representations in the Trust I Prospectus were inactionable under the Exchange Act. In fact, Count I of the Exchange Act claims "repeat[s] and reallege[s] each and every allegation contained above as if fully set forth herein" (Dkt. # 78 at ¶ 334), and thereby incorporates all of the Securities Act allegations above.

Dkt. # 235, at 3.

Then, in opposing Defendants' motion for judgment on the pleadings based on the statute of limitations, Plaintiffs summarized their Exchange Act claims as including statements in the Registration Statements that "failed to disclose material facts that heightened the risk that projections were inaccurate." Dkt. # 231, at 5.

Defendants likewise acknowledged that Plaintiffs alleged securities fraud based on the Dual Count Statements. In the fall of 2018, Defendants moved to consolidate this case and *Glitz*. In their opening brief Defendants stated that "[t]he allegations in both cases are thus virtually identical." Dkt. # 256. They added that "the only claims remaining in both *Glitz* and *Lanier Trust* are Exchange Act claims arising from alleged misrepresentations and omissions concerning oil and gas performance in the Mississippian that purportedly were revealed to the public by SandRidge on November 8 and 9, 2012." *Id.* at 7. Thus, Defendants, too, acknowledged that Plaintiffs continued to allege Exchange Act claims based on the Dual Count Statements

Plaintiffs continued to maintain that the Complaint included the Dual Count Statements. In their response, under header "The Allegedly False Statements In This [*Lanier*] Action", Plaintiffs listed the following false statements:

- "First, the Trust I Registration Statement misleadingly stated that the Producing Wells with which the relevant type curve was created 'cover a wide area of the AMI' while omitting that the wells that made up the type curve were unrepresentative. ¶138." Dkt. # 260, at 5.

- "Second, the Trust I Registration Statement misleadingly overstated the uniformity of the Mississippian Formation." *Id.* at 6.

- "Third, the Trust I Registration Statement based its reserves estimate on the assumptions that the high-quality Chesapeake wells were representative and that the Mississippian Formation was uniform, making it relatively easy to find high-quality wells by drilling next to high-producing vertical or horizontal wells." *Id.*

Defendants had filed a similar motion to consolidate in the *Glitz* Action. In their reply, Defendants argued for consolidation because "according to the *Glitz* Plaintiffs, *Lanier Trust* focuses on the Trust I Registration Statement and Prospectus […]" *Glitz* Dkt. # 372, at 7. And in their reply in support of their motion for consolidation in this action, Defendants summarized their argument for consolidation thus: "substantially the same statements made by the same individuals over a substantially similar period of time were false and misleading." Dkt # 264, at 3. Defendants provided examples:

- "*Glitz*, like this action, alleges misstatements about oil and gas performance made in the Trust I and II Registration Statements[.]" Dkt # 264, at 1-2.

- "Plaintiffs also inaccurately assert that the Trust II Registration Statement, including statements that allegedly 'misleadingly overstated the uniformity

of the Mississippian Formation,' is not at issue in *Glitz*. Opp'n at 6. These statements are at issue in *Glitz. See Glitz* Dkt. 225 ¶¶ 250–54 (alleging inter alia that "there was no 'continuity' or "consistency' across the AMI" and "the formation geology and individual well productivity across the AMI was highly variable," contrary to Trust II Registration Statement disclosures)." Dkt. # 264, at 3.

Then, at the hearing, Defendants summarized their argument:

> "There's an allegation that SandRidge and the individual defendants made false statements *regarding oil and gas reserves*; in particular, regarding the percentage of oil and gas being recovered and the percentage of oil being recovered *as it found its way into type curves. There are slight differences in the allegations, but that's the core*."
>
> Transcripts of 10/28/2018 hearing, at 22:12-17.

The parties also conducted expert discovery under the assumption that Plaintiffs were alleging that the statements in the registration statement were still actionable. Plaintiffs proffered two geological experts, one of whom focused his opinion on whether a statement drawn from the Registration Statement was true. Expert Report of Jan Tomanek, at 1 (dkt. # 405-2). Another opined that SandRidge's reserves estimate, stated in the Registration Statement but not in the earnings calls, was inaccurate. [Corrected] Expert Report of Letha Lencioni, at 1-2 (dkt. # 401-1).

Defendants retained experts to opine on these same topics. For example, Defendants' expert Terry Brittenham expressed an opinion on:

> B. The geology of the Mississippian and to what extent has the industry's understanding of that geology changed over time.
>
> *          *          *          *          *
>
> E. The Lanier Plaintiffs' expert witness Jan J. Tomanek's "opinion that based on the information available at the time of each of the Trusts' IPOs, the geology of the Mississippian Lime was not well understood by SandRidge. Thus, the results of their drilling was not predictable or consistent."

Expert Rpt. of Terry Brittenham, at 1, dkt. # 405-4.

> Likewise, Defendants' expert Robert Rasor opined that:
>
> Ms. Lencioni manufactures conflicts between Mississippian well performance and statements in the Trust I and II Prospectuses by confusing "consistency in formation" with consistency of estimated ultimate recovery ("EUR").
>
> *          *          *          *          *
>
> Ms. Lencioni's analysis of how accurately vertical well production predicts the amount of oil produced from nearby horizontal wells is beside the point. SEC regulations do not require any particular level of correlation between vertical well production and horizontal well production before a nearby horizontal well can be classified as "proved".

Expert Rpt. of Robert Rasor, at 4 (dkt. # 405-5).

Plaintiffs also timely responded to Defendants' interrogatories seeking that they identify all statements they challenged. Plaintiffs responded that they challenged statements about the Mississippian's consistency and the Trusts' reserves estimates. Dkt. # 375-6 at 5-38.

### C. The Court Finds that the Exchange Act Claims Do Not Incorporate Certain Statements Made in the *Trust II* Registration Statement

In opposing one of Defendants' motions for judgment on the pleadings, Plaintiffs argued that the Complaint's Exchange Act allegations incorporated by reference the statements in its Securities Act section, citing a paragraph alleging that "Lead Plaintiffs

11

repeat and reallege each and every allegation contained above as if fully set forth herein." Dkt. # 78 ¶¶334, 345. While the Court largely denied the motion for judgment on the pleadings, it found that "a generic, boilerplate incorporation-by-reference allegation is not sufficient to rewrite the pleading." Dkt. # 347, at 7.

At issue in that motion was whether the Exchange Act count incorporated the statements in Trust II's Registration Statement. Compl. ¶¶298-98. The Complaint did not allege that Defendants had a duty to update the statements in *Trust II*'s Registration Statement. So the Court did not hold and had no reason to even consider whether the Complaint alleged a duty to update the Dual Count Statements.

### D. Discovery Proves that Defendants Knew the Dual Count Statements Were False *When Made*

Though the Complaint did not specify the exact moment when Defendants' duty to update arose, Defendants did not argue that the Complaint needed to do so. Yet as set out in Plaintiffs' [Corrected] Opposition to the Motion for Summary Judgment of Defendants James Bennett and Matthew Grubb ("G&B Mem."), dkt. 4 406-5, discovery has shown that the statements were false when made. G&B Counterstatement of Undisputed Facts ("CSUF") ¶¶9-29.

First, Defendants knew that the Mississippian was not predictable, as they defined it, when they signed the Trust I Registration Statement. For example, in January 2011, three months before the Trust I IPO, Defendant Grubb admitted that wells in Grant County, where SandRidge planned to drill one third of Trust I's wells, were performing more poorly

than the wells used to construct its Year End 2010 Type Curve.[5] *Id.* ¶11. Defendants admitted that even in June 2012, they "did not know much" about the Mississippian. *Id.* ¶14. Ms. Lencioni also proved that data available to Defendants as of December 31, 2010 and 2011 showed wide regional variations in productivity within the Mississippian. Lencioni Rpt., Dkt. # 401-1, at 13-17. So when Defendants said in the Registration Statement that the Mississippian was predictable, they knew their statements were false or misleading.

Second, Defendants knew their reserves estimates were misleading when they were issued. Defendant Grubb's admission that Grant County performed poorly is also an admission that the Year End 2010 Type Curve misleadingly overstated Trust I's reserves. SandRidge based the Year End 2010 Type Curve on wells drilled predominantly in Alfalfa County. In January 2011, Defendants were learning that the Alfalfa County wells were not representative of the wells SandRidge planned to drill in Trust I: Grant County, where a third of Trust I's wells were planned, performed substantially worse. Moreover, throughout the process of estimating reserves, Defendants sought, in Defendant Ward's words, to get "as much as [they] can get," and in Defendant Grubb's words, "always trying to stretch" the reserves estimate. G&B CSUF ¶28. Defendants used various schemes to overstate the YE 2010 and 2011 Type Curves including "beat[ing] up" the geological firm with which

---

[5] A type curve is a representation of a well used to estimate the reserves and monthly production of undrilled wells. CSUF ¶¶2, 4. An engineer creates a type curve by applying statistical techniques to data from existing wells. *Id.* ¶3. SandRidge maintained a single Type Curve for the Mississippian, which it used to estimate its own reserves, as well as those of the Trusts. G&B CSUF ¶5.

SandRidge created the YE 2010 Type Curve and excluding more than a quarter of SandRidge's wells from its YE 2011 Type Curve. *Id.* ¶¶17-24. *See also Glitz* Plaintiffs' Statements of Undisputed Facts Precluding Summary Judgment, *Glitz* dkt. # 514, at 14-31. So Defendants knew the reserves estimates were misleading, too.

Thus, discovery has permitted Plaintiffs to fix the exact moment when Defendants incurred the duty to update the Dual Count Statements: when they made them. In the special circumstances of this case, the duty to update false and misleading statements is the same as the duty not to make the false and misleading statements in the first place.

### E.  Defendants Switch Horses Midstream

When they filed their motion for summary judgment almost a year after expert discovery closed, Defendants acknowledged that Plaintiffs had pled they breached their duty to update the Dual Count Statements. Dkt. # 371, at 13-14. Yet, inconsistently, Defendants also raised for the first time an argument that Plaintiffs did not allege Exchange Act claims based on the Dual Count Statements. For example, Defendants moved to exclude Plaintiffs' Expert Jan Tomanek based largely on their argument that his testimony could not aid the factfinder because it related to one of the Dual Count Statements. Dkt. # 367, at 5. The Defendants also asked the Court to enter summary judgment on the claims based on their contention that the Dual Count Statements were dismissed. Dkt. # 371, at 14-20.

### III.   THE PROPOSED COMPLAINT

The [Proposed] Second Amended Complaint ("Proposed Complaint") modifies the existing Complaint by:

- Eliminating the Securities Act claims, including Section 11 claims based on the Dual Count Statements;

- Alleging that Defendants had a duty both not to make the Dual Count Statements and to update them when they were made;

- Amending the allegations to reflect the evidence cited in Plaintiffs' oppositions to the motions for summary judgment of Defendants Ward, Bennett and Grubb;

- Alleging that additional statements similar to those pled in the Complaint violated the Exchange Act.

## IV.   STANDARD

A party seeking leave to file an amended complaint after the scheduling order's deadline to amend pleadings has passed, as here, must show "good cause" under Federal Rule of Procedure 16(b)(4). *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-WEB-KGG, 2011 WL 5837234, at *2 (D. Kan. Nov. 21, 2011). Then, if the movant demonstrates good cause, the court "proceed[s] to determine if the more liberal Rule 15(a) standard for amendment has been satisfied." *Id.*

## V.   ARGUMENT

### A.  There Is Good Cause to Allow Amendment

To show good cause, a movant must show that the scheduling  for seeking leave to amend, here, July 2018, could not "be met "despite [the movant's] diligent efforts.'" *Video Gaming Techs., Inc. v. Castle Hill Studios LLC*, No. 17-CV-454-GKF-JFJ, 2018 WL 3437083, at *2 (N.D. Okla. July 17, 2018). "Rule 16's good cause requirement may be

satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Vazirabadi v. Denver Health & Hosp. Auth.*, 782 F. App'x 681, 686 (10th Cir. 2019), *cert. denied,* 206 L. Ed. 2d 498 (Mar. 30, 2020).

Learning new facts in discovery can constitute good cause. *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). So can a change in the law. *Bales v. Green*, No. 16-CV-106-GKF-JFJ, 2018 WL 840762, at *3 (N.D. Okla. Feb. 13, 2018). And so can new developments in the case. *Martin*, 2011 WL 5837234, at *3 ("Plaintiff cannot dispute the fact that the thrust of the claims contained in the proposed amended pleading did not become necessary until the District Court's summary judgment ruling on February 22, 2011.")

Here, Defendants' assertion in their April 2020 motion for summary judgment that the Dual Count Statements had been dismissed since September 2017 is the quintessential "new fact" and "new development" Rule 16 contemplates. Plaintiffs could not have known in July 2018 that Defendants would later take the position that the Dual Count Statements had been dismissed, because Defendants took the position that these statements had ***not*** been dismissed until April 2020. Both Plaintiffs ***and*** Defendants told the Court that the statements in the Registration Statement were part of the case even after dismissal of Plaintiffs' Securities Act claims.  Pp. 6-10, above. Not one of Defendants' four motions for judgment on the pleadings sought judgment on Plaintiffs' Dual Count Statements.

Defendants' answers did not claim that the Dual Count Statements were not in the case, they denied the claims. Dkts. # 137, 138, 140, 141, at ¶¶296-98. For example, Trust I's answer provided:

296. [] The Trust denies that material new information concerning the Negative Trust I Oil Production Trends rendered misleading the prior statements in the Trust I Registration Statement and Prospectus classifying the oil Reserves of the Trust I Development Wells as "Proved" based on a "Reasonable Certainty" concerning the amounts that could be recovered from those Wells.

297. The Trust denies that the Trust I Prospectus had classified the oil reserves of the Trust I Development Wells as Proved instead of Probable "based on an assumption of geological uniformity" across the Trust I AMI.[]

Thus, Plaintiffs had good cause not to seek to amend their pleadings to add Dual Count Statements that both sides told the Court were already alleged.

Until their motion for summary judgment, Defendants never argued that the Dual Count Statements had been dismissed entirely. On March 12, 2019, three weeks before the close of fact discovery, Defendants changed their position to argue that statements made in the *Trust II* Registration Statement were not incorporated by reference into Plaintiffs' pleading. Dkt. # 298 at 4-6. But the Complaint's Dual Count Statements appeared in the *Trust I* Registration Statement, not the Trust II Registration Statement. Thus, Defendants had not changed their position as to the Dual Count Statements until April 2020.

Plaintiffs anticipate that Defendants will argue that the Dual Count Statements only encompassed the failure to disclose negative trends occurring in Trust I Wells after the Trust I IPO. The Complaint alleges that Defendants failed to update/correct the Dual Count Statements in light of the "Negative Trust I Oil Production Trends", which the Complaint defines as "declining oil production and 'gassier' production profile of the Trust I Development Wells." Compl. ¶160. While the Complaint does not state when the trend became unmistakable, it alleges that the trend had already materialized in the four Trust

wells completed in 2011 with at least six months' production by the end of August 2011 – that is, wells completed *before* Trust I's April 2011 IPO. Compl. ¶156. Thus, the Complaint alleged that the trends began before the Trust I IPO; the only open question was when Defendants noticed it.

When they filed the Complaint, Plaintiffs did not know that by monitoring those four wells, wells drilled in Grant County at the end of 2010, and SandRidge non-Trust wells drilled in the environs, Defendants had identified the Negative Trust I Oil Production Trend *before* the IPO. See pp. 12-14, above. So by alleging that Defendants had a duty to update the Dual Count Statements when they were made, Plaintiffs are not changing the Complaint's theory, but fixing the point at which Defendants' duty arose.

Plaintiffs had no reason to amend their Complaint until Defendants filed for summary judgment. Before then, Defendants maintained that the Dual Count Statements were part of Plaintiffs' Exchange Act allegations. So there is good cause to let Plaintiffs amend their Complaint after the close of discovery to more clearly reflect the claims it has always asserted.

### B. Plaintiffs Meet Rule 15

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Interpreting the rule, the Supreme Court has held that

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (finding abuse of discretion to deny amendment because there was no prejudice and no delay).

### i.   No prejudice[6]

The "most important [] factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party." *Id.* at 1207. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Id.* at 1208.

Defendants will not suffer any prejudice. Defendants maintained all through fact and expert discovery that the Complaint alleged Exchange Act claims based on the Dual Count Statements. Discovery does not need to be reopened because Defendants have already prepared their defense, including through hiring experts to address the statements. Defendants will suffer no prejudice.

---

[6] None of the other *Foman* factors weigh against allowing amendment. First, the Court found that the Complaint did state a claim, so there has been no "repeated failure to cure deficiencies by amendments previously allowed." Second, Plaintiffs have maintained the same position throughout the litigation, pp. 6-11 above, so there is no bad faith. Third, amendment would not be futile, as Judge West upheld substantially similar claims even without the wealth of evidence obtained in discovery. Fourth, there is no dilatory motive. Amendment will not delay discovery because discovery is complete, and it will not delay trial because briefing on Defendants' motions for summary judgment is not even complete.

ii. No undue delay

"Lateness does not of itself justify the denial of the amendment." *Minter*, 451 F.3d at 1205. In considering whether delay bars amendment, "[t]his Circuit, however, focuses primarily on the reasons for the delay." *Minter*, 451 F.3d at 1206.

Plaintiffs did not move to amend their Complaint between September 2017 and April 4, 2020, because during that time Defendants agreed that the Dual Count Statements were part of the case. Between April 2020 and now, Plaintiffs had no time to move to amend their Complaint because they were occupied with responding to Defendants' three motions for summary judgment, motions to exclude every one of Plaintiffs' three experts, and Defendants' motion for reconsideration of the September 2017 denial of their motion to dismiss.

### C.  The Statute of Repose Is Not Implicated

The statute of repose does not prevent plaintiffs from clarifying claims they have already alleged. The statute of repose provides that "a private right of action [] may be brought no later than [] 5 years after such violation." 28 U.S.C. § 1658(b)(2). Defendants do not claim that plaintiffs "brought" a new "action." Indeed, "we are in the same action [] that was brought in 2015." *Martin v. Altisource Residential Corp.*, No. CV 15-24, 2019 WL 2762923, at *6 (D.V.I. July 2, 2019). So none of Plaintiffs' claims are barred by the statute of limitations because they are brought in this timely action. *Id.*

Indeed, even cases Defendants cited in moving for summary judgment find that the statute of repose does not prevent plaintiffs from repleading dismissed claims, let alone clarifying existing claims. In *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 262

(S.D.N.Y. 2019), the court held that the statute of repose prevented plaintiffs from bringing in an entirely new theory about the defendants' reasons for entering a new business, but it allowed plaintiffs to replead claims they had previously attempted to plead. Allowing the statute of repose to cut off repleading would: (a) make any dismissal a dismissal with prejudice provided enough time had passed; (b) prevent parties from clarifying their claims based on discovery they received; and (c) for complex federal litigation which cannot be tried within the statute of repose, effectively make amendment to conform to the evidence at trial, Fed. R. Civ. P. 15(b), a dead letter.

## VI.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs leave to amend the Complaint attached as Exhibit 1 hereto.

Dated: August 5, 2020

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

*/s/ Jonathan Horne*
Laurence M. Rosen, Esq. (*pro hac vice*)
lrosen@rosenlegal.com
Phillip Kim, Esq. (*pro hac vice*)
pkim@rosenlegal.com
Jonathan Horne, Esq. (*pro hac vice*)
jhorne@rosenlegal.com
275 Madison Avenue, 40th Floor
New York, NY 10016
(212) 868-1060

*Lead Counsel for Plaintiffs*

FARHA LAW, PLLC
Nicholas G. Farha, OBA # 21170
nick@farhalawfirm.com
1900 NW Expressway, Suite 501
Oklahoma City, OK 73118
(405) 471-2224
Email: nick@farhalawfirm.com

*Liaison Counsel for Plaintiffs*

WOHL & FRUCHTER, LLP
J. Elazar Fruchter, Esq.
jfruchter@wohlfruchter.com
570 Lexington Avenue, 16th Floor
New York, NY 10022
(212) 758-4000

*Additional Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2020, I electronically transmitted the attached **PLAINTIFFS' MOTION FOR LEAVE TO AMEND** using the ECF system for filing, which will send notification of such filing to all counsel registered through the ECF System.

*/s/ Jonathan Horne*