# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

DUANE & VIRGINIA LANIER TRUST,
individually and on behalf of all others
similarly situated,

                     Plaintiffs,

       v.

SANDRIDGE MISSISSIPPIAN TRUST I,
*et al.*,

                     Defendants.

Case No. 15-cv-00634-G

## REPLY IN SUPPORT OF
## SANDRIDGE MISSISSIPPIAN TRUST I's
## MOTION FOR SUMMARY JUDGMENT

**BRACEWELL LLP**

W. Stephen Benesh
  (*admitted pro hac vice*)
David B. Springer
  (*admitted pro hac vice*)
111 Congress Ave., Suite 2100
Austin, Texas 78701
Email: steve.benesh@bracewell.com
Phone: (512) 494-3680
Fax: (800) 404.3970

**WILSON LAW FIRM**

Ryan S. Wilson, OBA #14340
Post Office Box 891390
Oklahoma City, OK 73189
Email: ryan@RSWilsonlaw.com
Phone: 405.246.0092
Fax: 405.246.9652

Date:  September 22, 2020

# **TABLE OF CONTENTS**

I.   Introduction ................................................................................................ 1

II.  Argument and Authorities ......................................................................... 1

   A.  SandRidge's officers were not agents of Trust I in connection with the statements at issue ................................................................................................ 1

   B.  Ward and Grubb were not de facto officers of Trust I ........................... 6

   C.  Trust I was not the "maker" of the statements at issue .......................... 8

   D.  Trust I did not disseminate false and misleading statements ................ 9

   E.  Trust I is entitled to summary judgment on grounds common to all Defendants. 10

III.  Prayer ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basile v. Valeant Pharm. Int'l*,
No. 14-2004, 2015 WL 7352005 (C.D. Cal. Nov. 9, 2015) ......................................................4

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
56 F. Supp. 3d 549 (S.D.N.Y. 2014) ..........................................................................................8

*De Boer Const. v. Reliance Ins. Co.*,
540 F.2d 486 (10th Cir. 1976) ...................................................................................................2

*Hinton Travel Inn, Inc. v. Wichita Wayne, LLC.*,
No. 11-291-C, 2012 WL 2789873 (W.D. Okla., July 9, 2012) .................................................2

*IOP Cast Iron Holdings, LLC v. J.H. Whitney Capital Partners*,
LLC, 91 F.Supp.3d 456 (S.D.N.Y. 2015) ..................................................................................9

*In re Lamey*,
No. 14-13729, 2020 WL 1884189 (Bankr. D.N.M. Apr. 15, 2020) ..........................................2

*McNutt Oil & Ref. Co. v. Mimbres Valley Bank*,
174 F.2d 311 (10th Cir. 1949) ...............................................................................................4, 5

*Music Group Macao Commercial Offshore v. Foote*,
No. 14-cv-03078-JSC, 2015 WL 3882448 (N.D. Cal. June 23, 2015) ..................................6, 7

*S.E.C. v. Prince*,
942 F. Supp. 2d 108 (D.D.C. 2013) ...........................................................................................6

*St. Anthony Hosp. v. U.S. Dep't of H.H.S.*.,
309 F.3d 680 (10th Cir. 2002) ...................................................................................................4

**Treatises**

3 Am.Jur.2d Agency § 77 (1962) .....................................................................................................2

Restatement (Second) of Agency § 8, cmt c (1958) ........................................................................2

## I.    Introduction

Plaintiffs' ever-shifting theories in this case have few constants, but one is their inability to advance a consistent or legally sound framework for Trust I's alleged liability.

In their summary judgment briefing, the individual SandRidge officer Defendants Ward, Grubb, and Bennett have articulated several grounds upon which this Court could—and should—dispose of this entire case, not the least of which is that Plaintiffs oppose summary judgment based on claims that they did not plead and cannot prove and that the statements at issue are neither false nor actionable. But should the Court reach grounds specific to Trust I, Plaintiffs' counter-statement of facts raises no genuine, <u>material</u> fact dispute and therefore Trust I is entitled to judgment as a matter of law.

## II.    Argument and Authorities

Plaintiffs' case against Trust I relies on imputing statements by, and the scienter of, the individual SandRidge officers to Trust I. None of those statements were false or misleading, but even if they were, Trust I is entitled to summary judgment. None of those SandRidge officers were actual or apparent agents of Trust I, nor were they officers or "*de facto* officers" of Trust I.

### A. SandRidge's officers were not agents of Trust I in connection with the statements at issue

Plaintiffs have unequivocally argued that, "when the SandRidge Officer Defendants made statements on Trust I earnings calls, they did so as officers of, and with the authorization of, SandRidge." *See* Dkt. 294 at 7. Indeed, the SandRidge officers and Trust I had clearly delineated, unambiguously identified roles, and no reasonable person

could have assumed or believed that Ward or Grubb were apparent agents of Trust I.[1] Yet Plaintiffs now claim that the SandRidge officers were simultaneously apparent agents of Trust I (tellingly, Plaintiffs hardly argue any actual authority).

"[T]hree elements must exist before a third party can hold a principal liable for the acts of another on an apparent-agency theory: '(a) conduct of the principal [which would reasonably lead the third party to believe that the agent was authorized to act on behalf of the principal], (b) reliance thereon by [the] third person, and (c) change of position by the third party to his detriment.'" *Hinton Travel Inn, Inc. v. Wichita Wayne, LLC.*, No. 11-291-C, 2012 WL 2789873, *2 (W.D. Okla., July 9, 2012). Importantly, however, "apparent authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." Restatement (Second) of Agency § 8, cmt c (1958). Specifically, "a third party has an obligation to 'use reasonable diligence and prudence to ascertain whether the agent is acting within the scope of its powers.'" *In re Lamey*, No. 14-13729, 2020 WL 1884189, at * 2 (Bankr. D.N.M. Apr. 15, 2020). The Tenth Circuit has also made it clear that "knowledge that an agent has limited authority defeats any right to rely on apparent authority" and that "it is always competent to limit the authority of an agent, and if the limitations have been brought to the attention of the person dealing with the agent, he is bound by them." *De Boer Const. v. Reliance Ins. Co.*, 540 F.2d 486, 491 (10th Cir. 1976); 3 Am.Jur.2d Agency § 77 (1962).

---

[1] Defendant Bennett did not make any of the challenged statements.

Based on the unequivocal statements made at the beginning of each earnings call, stating that Trust I "has no employees or officers," a person could not reasonably believe that Grubb or Ward were agents of Trust I authorized to act on behalf of Trust I.[2] Indeed, listeners were told multiple times on earnings calls that Ward and Grubb were not officers or employees of Trust I (because "the Trust ha[d] no employees or officers") and that they were instead officers of SandRidge, a completely separate entity who "sponsored" Trust I.[3]  Additionally, the Administrative Services Agreement between SandRidge and Trust I, which was publicly filed with the SEC, disclaimed any agency relationship between Trust I and SandRidge and described SandRidge as an independent contractor. No reasonable investor could ignore such clear and repeated disclaimers.

Plaintiffs gloss over meaningfully distinguishing features of the agency and apparent agency cases upon which they rely. For example, Plaintiffs repeatedly cite *In re ChinaCast Educ. Corp. Sec. Litig.*, in which ChinaCast's *founder and CEO*, participated in a series of earnings calls and other communications with investors where he failed to disclosure fraudulent activities of the organization and emphasized the company's financial health and stability, which was, in fact, not true. 809 F.3d 471, 472-73 (9th Cir. 2015) (emphasis added). The Ninth Circuit held that the founder was an agent of ChinaCast and was acting with apparent authority when he made misrepresentations on the earning calls. However, that holding was based on the fact that the founder was an

---

[2] *See* Trust I MSJ Ex. J, SD-SECURITIES-0000089; Ex. K, SD-SECURITIES 0000097; Ex. L, SD-SECURITIES-0000106; Ex. M, SD-SECURITIES-0000112.
[3] *See* Trust I MSJ Ex. J, SD-SECURITIES-0000089; Ex. K, SD-SECURITIES 0000097; Ex. L, SD-SECURITIES-0000106; Ex. M, SD-SECURITIES-0000112.

*employee* of the principal and that, under the "well-established parameters, ChinaCast [did] not dispute that [he] acted within the scope of his authority." *See id*. at 476. Indeed, a court distinguishing *ChinaCast* described it as a case that "applied agency principles in the particular context of 'when an *employee*'s acts and intent are to be imputed as those of the company.'" *Basile v. Valeant Pharm. Int'l*, No. 14-2004, 2015 WL 7352005, n. 6 (C.D. Cal. Nov. 9, 2015) (*quoting ChinaCast*, 809 F.3d 471 at 475) (emphasis added).

Plaintiffs' reliance on *ChinaCast* is misplaced. Here, the undisputed fact is exactly the opposite: Ward and Grubb were *not* employees of Trust I. Moreover, investors were explicitly made aware on multiple occasions that Trust I had no employees or officers.

Plaintiffs' apparent authority argument also relies on *St. Anthony Hosp. v. U.S. Dep't of H.H.S..*, 309 F.3d 680 (10th Cir. 2002). While *St. Anthony Hosp.* articulates the law of apparent authority, the court engaged in no analysis of apparent authority, because, unlike here, "there [was] substantial evidence to support the existence of *actual* authority." *Id. at* 704.  Moreover, Plaintiffs also repeatedly cite *McNutt Oil & Ref. Co. v. Mimbres Valley Bank*, 174 F.2d 311 (10th Cir. 1949), where the court found that apparent authority existed when the principal did not communicate to any third party that there were limitations on the agent's behavior. *See McNutt*, 174 F.2d at 313-14. The facts here are plainly different. Indeed, more relevant here, the Tenth Circuit noted that a third party's knowledge of limitations on an agent's authority may defeat the finding of apparent authority. *See id.*  Specifically, the court stated, "the test is what powers, persons of ordinary prudence, familiar with business practices, dealing with the agent, *without*

4

*knowledge of any limitation on the agent's authority*, might reasonably believe him to have on the basis of the principal's conduct." *Id*. (emphasis added).

On each call, Ward and Grubb were introduced as SandRidge officers and it was stated that Trust I had no employees or officers, SandRidge Energy was Trust I's sponsor, and SandRidge was responsible for operating the underlying properties.[4]

Plaintiffs also cite *Travelers Ins. Co. v. Morrow*, a case where apparent authority did *not* exist. *See* 645 F.2d 41, 45 (10th Cir. 1981). In deciding that the "evidence [was] without conflict" and there was no apparent authority, the relevant evidence was the contract itself (an insurance policy), which "provided that no agent had authority to change or waive any of its provisions." *Id*. at 43. Just as in *Traveler's*, the Administrative Services Agreement between SandRidge and Trust I unequivocally limited any employee or officer of SandRidge from binding Trust I to any contract or exercising any type of agency authority. Specifically, the ASA provided, in an "Independent Status" clause:

> It is expressly acknowledged by the parties hereto that each party is an "independent contractor" and nothing in this Agreement is intended nor shall be construed to create an employer/employee, joint venture or partnership relationship, or to allow any party to exercise control or direction over the other party. Except as required in connection with the performance of the Services, neither the Company nor any agent, employee, servant, contractor or subcontractor of the Company or any of its Affiliates shall have the authority to bind the Trust to any contract or arrangement.[5]

As the ASA was filed with the SEC and publically available to all investors, the ASA provided an effective limitation of authority. Such limitation, combined with the other

---

[4] *See* Trust I MSJ Ex. J, SD-SECURITIES-0000089; Ex. K, SD-SECURITIES 0000097; Ex. L, SD-SECURITIES-0000106; *See* Ex. M, SD-SECURITIES-0000112.
[5] Trust I MSJ Ex. Q.

undisputed facts of this case, demonstrates without conflict that no third-person could reasonably believe Ward and Grubb to have such agency authority, and, therefore, no apparent authority existed.

### B. *Ward and Grubb were not de facto officers of Trust I*

Plaintiffs' attempt to shoe-horn facts into the fairly obscure "*de facto* officer" doctrine similarly falls flat. Plaintiffs begin their argument that Ward and Grubb were *de facto* officers of Trust I by citing sundry cases discussing the approaches that various out-of-circuit courts employed to determine whether someone was a *de facto* officer. *See* Opp. at 14. But the crux of their argument is that Ward and Grubb performed "policy-making functions" for Trust I. *See* Opp. at 15. As one of Plaintiffs' own cases makes clear, "the few cases that have found an employee to be a *de facto* officer because of their ability to make policy involved alleged 'consultants' *who were actually in total control of the company*." *S.E.C. v. Prince*, 942 F. Supp. 2d 108, 134 (D.D.C. 2013) (emphasis added).

Here, no reasonable interpretation of the evidence puts Ward and Grubb in "total control" of Trust I. Aside from the uncontroverted testimony of the Trustee, Plaintiffs themselves note that Ward and Grubb held the earnings calls to simply "relay information" and "answer questions." *See* Opp. at 16. As a matter of law, that activity falls far short of "total control" or "policy making." Indeed, the principle of *de facto* officer-ship "protect[s] innocent third parties during the course of transactions with corporate officers that present themselves as having authority to act." *Music Group Macao Commercial Offshore v. Foote*, No. 14-cv-03078-JSC, 2015 WL 3882448, at *22 (N.D. Cal. June 23, 2015) (emphasis added); 2 William Meade Fletcher, Fletcher

6

Cyclopedia Of The Law Of Private Corporations § 385 ("The de facto rule will not be extended to a case where a person dealing with alleged corporate officers is not misled nor induced to believe that they are dealing with legal officers, but has knowledge that the person pretending to be an officer is not a de jure officer.").

Plaintiffs challenge Trust I's assertion that courts consistently hold that an individual may not be a *de facto* officer when the interested or third party knows that the individual is in fact not an officer. But Plaintiffs ignore the public policy behind the law. "[T]he goal of this *limited exception* is to *protect* innocent third parties during the course of transactions with corporate officers that *present themselves* as having authority to act." *Music Group*, 2015 WL 3882448, at *22 (emphasis added). Additionally, the exception does not apply "where all the parties interested have knowledge that the person *pretending* to be an officer is not an office de jure; for in such a case the reason for the rule no longer exists, and the law should not be involved for protection." *Id*. (emphasis added).

Ward and Grubb were not *pretending* to be officers of Trust I; they explicitly held themselves out as officers of SandRidge, not Trust I. In each earnings call at issue, Bennett introduced Ward and Grubb as officers of SandRidge and, immediately following, then made clear that "Trust [I] has no employees or officers."[6] As a matter of law, that is not "present[ing] themselves as having authority to act."

Plaintiffs' last hope is a tenuous argument that *even more* disclosure was required, that Trust I should have further "clarified that Ward and Grubb were not Trust I officers."

---

[6] *See* Trust I MSJ Ex. J, SD-SECURITIES-0000089; *See* Ex. K, SD-SECURITIES 0000097; *See* Ex. L, SD-SECURITIES-0000106; *See* Ex. M, SD-SECURITIES-0000112.

Opp. at 15. Besides straining rationality, this argument ignores the animating intent of the *de facto* officer doctrine—that third parties should be protected from persons *pretending* to be officers. Trust I is aware of no case remotely similar to the facts here, where the doctrine was used to invent liability against a completely separate entity based on the statements of people who expressly disclaimed being officers or employees of that entity. This Court should not be the first to follow that path in a case where all parties made unmistakable efforts to delineate between the roles of SandRidge officers and Trust I.

### C.  Trust I was not the "maker" of the statements at issue

Trust I did not make any of the allegedly false and misleading statements because Trust I did not have the ultimate authority or control over the statements made by Ward or Grubb. The issue is not just who physically uttered the statements, but more importantly, the issue is control. Of course there can be more than "one maker of a statement." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 56 F. Supp. 3d 549, 558 (S.D.N.Y. 2014). But in that case, upon which Plaintiffs rely, it is clear that multiple "makers" of a statement existed not merely because more than one "maker" *could* make a statement but because, on the facts presented at the motion to dismiss stage, the defendant's president "was able to cause Barclay's Bank to make false . . . statements by instructing it to do so." *Id*. at 558-59. The court found that "alone implie[d] a level of control [that was] sufficient at the pleading stage to withstand scrutiny under *Janus*." *Id*.

The facts here are clear that Trust I did not exert a sufficient level of control over Ward or Grubb to render it a "maker" of the statements at issue, nor did Trust I "cause" Ward or Grubb to make such statements. First, on the earnings calls at issue, Ward and

Grubb were introduced, repeatedly, as SandRidge officers, not Trust I officers, and, secondly, Trust I and trustee had no role in drafting scripts for the earnings calls. Trust I merely set up the earnings calls for investors and SandRidge; Trust I was not consulted about what information would be discussed in the earnings calls. *See* Ex. O (30:19-24).

Plaintiffs also cite to *IOP Cast Iron Holdings*, another out-of-circuit case, in support of their contention that there can be more than one "maker" of a statement. *IOP Cast Iron Holdings, LLC v. J.H. Whitney Capital Partners*, LLC, 91 F.Supp.3d 456 (S.D.N.Y. 2015). While *IOP Cast Iron Holdings* does state that more than one entity can be a "maker" of a statement, the court clarified that "the ultimate test is whether a particular defendant made it necessary or inevitable that any falsehood would be contained in the statement." *Id*. at 473. Again, for Trust I to be a "maker" of the statements at issue, Plaintiffs must show that Trust I made it "necessary or inevitable" that the statements would be false or misleading. Plaintiffs have not and cannot meet that burden.

Plaintiffs attempt to argue that Trust I had a continuing duty to correct any false statements contained in the Trust I Registration Statement. *See* Opp. at 17. As thoroughly briefed before, that argument does not relate to a live claim in this case. *See* Dkt. 409.

### D. *Trust I did not disseminate false and misleading statements*

Setting aside the obvious inconsistency of Plaintiffs' prior assertion that "when the SandRidge Officer Defendants made statements on Trust I earnings calls, they did so as officers of, and with the authorization of, SandRidge," Dkt. 294 at 7, Plaintiffs cite *Lorenzo v. S.E.C.* in an attempt to show disseminator liability, suggesting that Trust I cannot escape liability because it is not an "actor tangentially involved in dissemination

. . . for whom liability would typically be inappropriate." 139 S.Ct. 1094, 1101 (2019). Not so. The scienter of the defendant in *Lorenzo* was undisputed, allowing the court to infer that the statements at issue were sent with "the intent to deceive, manipulate, or defraud the recipients." *See id.* ("Recall that Lorenzo does not challenge the appeals court's scienter finding, so we take for granted that he sent the emails with 'intent to deceive, manipulate, or defraud' the recipients."). Here, there is not even an allegation that the Trust itself (through the Trustee) acted with an intent to deceive, manipulate, or defraud. The only scienter at issue is that of Ward and Grubb, and Plaintiffs cite no case where an entity that disputed scienter or that simply arranged some logistics of a communication could be liable under the reasoning in *Lorenzo.*

### E. Trust I is entitled to summary judgment on grounds common to all Defendants

As to grounds common among all Defendants, Trust I joins and incorporates by reference the motions for summary judgment and replies filed by Ward, Grubb, and Bennett. These grounds, including that (1) Plaintiffs' claims are barred by statute of limitations or repose, (2) Defendants made no false statements, (3) the statements at issue are immunized under the PSLRA's safe harbor, (4) Ward and Grubb did not act with scienter and (5) Plaintiffs failed to show loss causation, could—and should—be dispositive of this case without the Court needing to reach issues unique to Trust I.

### III.    Prayer

For these reasons, the Court should grant summary judgment in favor of Trust I and against Plaintiffs, and for such other and further relief as to which Trust I may be entitled.

10

Dated: September 22, 2020

Respectfully submitted,

**BRACEWELL LLP**

W. Stephen Benesh
(*admitted pro hac vice*)
David B. Springer
(*admitted pro hac vice*)
111 Congress Ave., Suite 2100
Austin, Texas 78701
Email: steve.benesh@bracewell.com
Phone: (512) 494-3680
Fax: (800) 404.3970

**WILSON LAW FIRM**

*/s/ Ryan S. Wilson*
Ryan S. Wilson, OBA #14340
Post Office Box 891390
Oklahoma City, OK 73189
Email: ryan@RSWilsonlaw.com
Phone: 405.246.0092
Fax: 405.246.9652

*Counsel for Defendant SandRidge*
*Mississippian Trust I*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel certifies that, on September 22, 2020, he caused the
foregoing document to be filed using the Court's Electronic Case Filing system, which will
cause notice of the filing to be served electronically upon all counsel who have appeared
in this action.


By: *<u>W. Stephen Benesh</u>*
W. Stephen Benesh