## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

DUANE & VIRGINIA LANIER TRUST, individually and on behalf of all others similarly situated,

                           Plaintiffs,

      v.

SANDRIDGE MISSISSIPPIAN TRUST I, et al.,

                       Defendants.

Case No. 5:15-CV-00634-G

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (together with all Exhibits hereto, the "Settlement Agreement"), dated as of November 16, 2021, which is entered into by and among (i) Plaintiffs Ivan Nibur, Deborah Rath, Jase Luna, Reed Romine, Matthew Willenbucher, and the Duane & Virginia Lanier Trust (the "Plaintiffs"), on behalf of themselves and on behalf of the *Settlement Class* (as defined herein); and (ii) Settling Defendants Tom L. Ward, Matthew K. Grubb, and James D. Bennett (the "Settling Defendants," and with the Plaintiffs, the "Settling Parties"), by and through their undersigned attorneys, states all of the terms of the settlement and resolution of this matter by the Settling Parties (as defined herein) and is intended by the Settling Parties to fully and finally release, resolve, remise, and discharge the Released Claims (as defined herein)

against the Released Persons (as defined herein), subject to the approval of the United States District Court for the Western District of Oklahoma (the "Court").

Throughout this Settlement Agreement, all terms used with initial capitalization, but not immediately defined, shall have the meanings ascribed to them in Section IV.1 below.

**WHEREAS:**

**I. THE LITIGATION**

On June 9, 2015, plaintiff Duane & Virginia Lanier Trust (the "Lanier Trust") commenced this Litigation, then styled *Duane & Virginia Lanier Trust, Individually and on Behalf of All others Similarly Situated v. SandRidge Energy, Inc., et al.*, No. CIV-15-634-M (W.D. Okla.), on behalf of all persons who purchased or otherwise acquired common units of (i) SandRidge Mississippian Trust I ("Trust I") pursuant or traceable to Trust I's initial public offering on or about April 7, 2011 (the "Trust I Offering"), and/or at other times during the time period between April 5, 2011 and November 8, 2012, both dates inclusive (the "Settlement Class Period"); and/or (ii) SandRidge Mississippian Trust II ("Trust II") pursuant or traceable to Trust II's initial public offering on or about April 17, 2012 (the "Trust II Offering" and, together with the Trust I Offering, the "SandRidge Trust Offerings"). The original complaint asserted claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") and under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against SandRidge Energy, Inc. ("SandRidge") and several additional defendants, including the Settling Defendants.

On March 16, 2016, Judge Miles-LaGrange appointed the Lanier Trust, Ivan Nibur, Lawrence Ross, Jase Luna, and Matthew Willenbucher (the "Initial Plaintiffs") as lead plaintiffs and approved their choice of counsel, The Rosen Law Firm, P.A., as Lead Counsel. (ECF No. 64).

SandRidge filed for bankruptcy protection on May 16, 2016. (ECF No. 72). Four days later, in light of SandRidge's voluntary bankruptcy petition, Judge Miles-LaGrange administratively closed this Litigation temporarily. (ECF No. 73). Judge Miles-LaGrange then reopened this Litigation on October 27, 2016. (ECF. No. 76).

### *Amended Complaint and Motions to Dismiss*

On November 11, 2016, Initial Plaintiffs filed an Amended Complaint. (ECF No. 78). The Amended Complaint asserted claims under Sections 11, 12(a)(2), and 15 of the Securities Act and under Sections 10(b) and 20(a) of the Exchange Act on behalf of investors in both Trust I and Trust II (together, the "Trusts"). The Amended Complaint asserted Securities Act claims against: (a) SandRidge, as a nominal defendant sued to the extent of its available insurance; (b) the Trusts; (c) James D. Bennett and Tom L. Ward; (d) certain SandRidge directors; and (e) the underwriters of the Trusts' IPOs. The Amended Complaint asserted Exchange Act claims against: (a) SandRidge, as a nominal defendant sued to the extent of its available insurance; (b) Bennett, Ward, and Matthew K. Grubb (the "Individual Defendants"); and (c) the Trusts (collectively, the "Exchange Act Defendants"), among others.

On January 13, 2017, Defendants moved to dismiss all claims. (ECF Nos. 94, 95). Initial Plaintiffs timely opposed such motions (ECF No. 106) and Defendants timely filed

replies in support thereof. (ECF Nos. 116, 117). The parties also briefed Initial Plaintiffs' request to file a Supplemental Complaint (ECF Nos. 110, 115, 117), and thereafter filed supplemental briefs in support and opposition of Defendants' motions to dismiss directed to the Supplemental Complaint's allegations. (ECF Nos. 121, 122, 124).

On June 26, 2017, the Supreme Court of the United States held that the filing of a securities class action does not toll the statute of repose applicable to claims under Section 11 of the Securities Act. *See Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2047 (2017). That holding abrogated *Joseph v. Wiles*, 223 F.3d 1155, 1166 (10th Cir. 2000), on which Initial Plaintiffs had relied to establish that their Securities Act claims were timely. On August 3, 2017, Initial Plaintiffs filed a non-opposition to Defendants' motion to dismiss the Securities Act claims (ECF No. 128), and on August 30, 2017, Judge Miles-LaGrange dismissed such claims and all Defendants except for the Exchange Act Defendants. (ECF No. 129).

On September 11, 2017, Judge Miles-LaGrange entered an order granting dismissal of the Section 10(b) claims asserted against Defendant Bennett but denying dismissal as to the remaining Exchange Act Defendants (hereafter, "Defendants"). (ECF No. 130). Defendants timely answered the Amended Complaint. (ECF Nos. 137-38, 140-41).

### *Early Litigation and Motion for Class Certification*

On November 27, 2017, this Litigation was reassigned to the Honorable Scott L. Palk. (ECF No. 143). In February and April 2018, respectively, Judge Palk entered a scheduling order and a protective order governing the confidentiality of documents produced in this Litigation. (ECF Nos. 161, 190).

On February 1, 2018, Initial Plaintiffs filed a suggestion of death as to Plaintiff Lawrence Ross. (ECF. No. 162). Initial Plaintiffs filed a request to substitute Deborah Rath as representative of the executor of Plaintiff Ross's estate (ECF No. 167), which request the Court granted (ECF No. 259). Plaintiff Reed Romine also moved to intervene (ECF No. 166), and the Court granted that motion. (ECF No. 343). As a result, the Court-appointed Plaintiffs in this Litigation are the Lanier Trust, Rath, Nibur, Luna, Willenbucher, and Romine (collectively, "Plaintiffs").

On February 15, 2018, Plaintiffs filed their motion for class certification. (ECF No. 170). All six Plaintiffs and their expert were deposed, as well as a representative of one Plaintiff's broker. Defendants opposed the motion for class certification on June 1, 2018 (ECF No. 202), and Plaintiffs filed their reply on August 6, 2018 (ECF No. 235). In addition, each of Plaintiffs and Defendants filed a motion to strike portions of the other's evidentiary submission (ECF No. 236, 245). The Court held a hearing on the motions to strike and the motion for class certification on September 6, 2019 (ECF No. 338), and those motions are pending.

### Fact Discovery

The parties conducted extensive fact, class certification, and expert discovery. Beginning in December 2018, the parties took a total of 20 fact depositions. Defendants produced over 2.4 million pages of documents. The parties collectively exchanged eleven expert reports, and took seven expert depositions.

When the settlements were reached, as described below, there were nine fully-briefed and undecided motions (in addition to the motions connected to Class Certification

listed above): three motions for summary judgment, one filed by Defendants Bennett and Grubb, one filed by Defendant Ward, and one filed by Defendant Trust I (ECF Nos. 360, 370, 373); motions to exclude each of Plaintiffs' three expert witnesses (ECF Nos. 365, 367, 368); a motion to strike portions of the testimony of one of Defendants' expert witnesses (ECF No. 357); a motion for reconsideration of the denial of Defendants' motion to dismiss (ECF No. 361); and a motion to dismiss filed by Defendant SandRidge Energy (ECF No. 433).

### *Settlement*

The parties held a mediation before the Honorable Layn Phillips (ret.) on December 13, 2019, but did not reach an agreement to resolve the outstanding claims at that time. After full briefing of the outstanding motions described above, the parties resumed their discussion of settlement proposals as part of an arm's-length negotiation process. At first, Plaintiffs negotiated with all Defendants collectively, as a group. Plaintiffs subsequently negotiated with Defendant Ward directly and separately negotiated with Defendants Bennett and Grubb directly. On June 4, 2021, Plaintiffs executed a confidential term sheet memorializing their agreement in principal to settle the claims asserted against Defendant Ward. The agreement included, among other things, an agreement to settle the claims and allegations that were or could have been asserted against Defendant Ward in both this Litigation as well as the *Glitz* Litigation (as defined below) in return for a total aggregate cash payment across both cases of $18,750,000 on behalf of Defendant Ward, for the benefit of both the Settlement Class (as defined below) and a class in connection with the *Glitz* Litigation, subject to negotiating the terms of this Stipulation of Settlement and

approval by the Court. Separately, on June 18, 2021, Plaintiffs and Defendants Bennett and Grubb agreed in principle to accept a mediator's recommendation to settle the claims and allegations that were or could have been asserted against Messrs. Bennett and Grubb in both this Litigation and the *Glitz* Litigation for an aggregate total across both cases of $17 million. This Stipulation (along with the Exhibits hereto) reflects the final and binding agreement, and a compromise of all matters that are in dispute, between the Settling Parties with respect to this Litigation. The terms of the *Glitz* Litigation settlement are documented in a separate but substantively similar stipulation and subject to Court approval.

## II. PLAINTIFFS' CLAIMS AND BENEFITS OF SETTLEMENT

Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. Plaintiffs and their counsel, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Settling Defendants through trial and through appeals. Plaintiffs and their counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs and their counsel also are mindful of the problems of proof and possible defenses to the securities law violations asserted in the Litigation. Plaintiffs and their counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class. Based on their evaluation, Plaintiffs and their counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Plaintiffs and the Settlement Class and is fair, reasonable, and adequate.

## III.   SETTLING DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout the course of the Litigation and in this Settlement Agreement, the Settling Defendants have denied and continue to deny each, any, and all claims and allegations of wrongdoing, fault, or liability that have been asserted against them. Settling Defendants also have specifically denied and continue to deny, *inter alia*, that Plaintiffs or the Settlement Class suffered any damages attributable to the Settling Defendants or have any right to recover from the Settling Defendants for any such purported damages. Settling Defendants continue to believe the claims asserted in the Litigation are entirely without merit and that the Litigation itself should not be certified as a class action for purposes of trial and adjudication of liability and damages. Settling Defendants have not conceded or admitted any wrongdoing or liability, are not doing so by entering into this Settlement Agreement, and disclaim any and all wrongdoing and liability whatsoever.

Nonetheless, the Settling Defendants have concluded that further conduct of the Litigation would be protracted and expensive and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. In making this decision, the Settling Defendants considered the uncertainty and risks inherent in any litigation, especially in complex cases such as this Litigation. In light of these considerations, and without in any way admitting fault, liability, or wrongdoing of any kind, the Settling Defendants have determined that it is desirable and beneficial for them to settle the Litigation on the terms set forth in this Stipulation.

## IV.    STIPULATION OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and all the Settlement Class Members) and the Settling Defendants, by and through their respective counsel, that, subject to the approval of the Court, and in consideration of the benefits flowing to the Settling Parties from the Settlement, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

### 1.    Definitions

As used in this Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" means any Settlement Class Member whose claim for recovery of payment from the Net Settlement Fund has been allowed pursuant to the terms of the Stipulation.

1.2    "Claim(s)" means a paper claim submitted on a Proof of Claim or an electronic claim that is submitted to the Claims Administrator.

1.3    "Claims Administrator" means Strategic Claims Services ("SCS").

1.4    "Settlement Class Period" means the period from April 5, 2011 to November 8, 2012, inclusive.

1.5    "Court" means the United States District Court for the Western District of Oklahoma.

1.6    "Effective Date," or the date upon which this Settlement becomes "effective," means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have occurred or have been waived.

1.7    "Escrow Account" means the interest-bearing account controlled by the Escrow Agent into which the Settling Defendants shall cause their insurance carriers to deposit the sum of $7,312,500 on behalf of Defendant Ward, and $6,630,000 on behalf of Defendants Bennett and Grubb, in consideration for the settlement of this Litigation on the terms set forth herein.

1.8    "Escrow Agent" means The Rosen Law Firm, P.A.

1.9    "Final" when referring to an order or judgment means: (l) that the time for appeal or appellate review of the order or judgment has expired, and no appeal has been taken; or (2) if there has been an appeal, (a) that the appeal has been decided by all appellate courts without causing a material change in the order or judgment, (b) that the order or judgment has been upheld on appeal and is no longer subject to appellate review by further appeal or writ of certiorari, or (c) that the appeal has been dismissed without material modification of the order or judgment, and the order or judgment is no longer subject to appellate review by further appeal or writ of certiorari.  For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of Plaintiffs' Counsel's attorneys' fees and expenses, payments to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of

the Settlement Class, the Plan of Allocation of the Net Settlement Fund, as hereinafter defined, or the procedures for determining Authorized Claimants' recognized claims.

1.10    "*Glitz* Litigation" means the related case captioned *In re SandRidge Energy, Inc. Securities Litigation*, No. 5:12-cv-01341-G (W.D. Okla.).

1.11    "Judgment" means a judgment dismissing this Litigation substantially in the form of the proposed judgment attached as Exhibit B (or in any revised form to which each of the Settling Parties consent in writing).

1.12    "Lead Counsel" means The Rosen Law Firm, P.A.

1.13    "Litigation" means the instant case captioned Duane & Virginia Lanier Trust, et al. v. SandRidge Mississippian Trust I, et al., 15-cv-00634-G (W.D. Okla.).

1.14    "Net Settlement Fund" means the Settlement Amount less (i) any attorneys' fees and litigation expenses approved by the Court, (ii) any award to Plaintiffs approved by the Court, and (iii) Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

1.15    "Notice and Administration Expenses" means costs and expenses actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, soliciting Claims, assisting with the submission of Claims, processing Proofs of Claim, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any.

1.16    "Person" means a natural person, individual, corporation (and all its divisions and subsidiaries thereof), partnership, limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal

representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity.

1.17    "Plaintiffs" means Ivan Nibur, Deborah Rath, Jase Luna, Reed Romine, Matthew Willenbucher, and the Duane & Virginia Lanier Trust.

1.18    "Plaintiffs' Counsel" means Lead Counsel and any attorney or firm who has appeared in the Litigation on behalf of Plaintiffs or the Settlement Class.

1.19    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of the Stipulation and neither the Settling Defendants nor the Related Parties shall have any responsibility or liability with respect thereto.

1.20    "Proof of Claim" means the Proof of Claim and Release form for submitting a Claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2.

1.21    "PSLRA" means the Private Securities Litigation Reform Act of 1995.

1.22    "Related Parties" means each of the Settling Defendants' respective family members, agents, servants, attorneys, accountants, advisors, insurers, and partners; any entity in which any Settling Defendant has or had a controlling interest, including all partners, principals, officers, employees, subsidiaries, affiliates, divisions, predecessors, successors, assigns, attorneys, stockholders, accountants, auditors, advisors, trustees, administrators, fiduciaries, consultants, representatives, insurers, and agents of those entities, in their respective capacities as such;  any trust of which any Settling Defendant

is the settler or which is for any Settling Defendant's benefit and/or that of any Settling Defendant's family members; and the predecessors, successors, administrators, personal representatives and assigns of each of the foregoing.  For the avoidance of doubt, the Related Parties for purposes of this Settlement include, among others, WCT Resources, L.L.C; 192 Investments, L.L.C; and TLW Land & Cattle, L.P.  Notwithstanding the foregoing, in no event shall the term "Related Parties" include any nominal or actual defendant in the Litigation or the *Glitz* Litigation other than the Settling Parties themselves.

1.23   "Released Claims" means all rights, liabilities, suits, debts, obligations, demands, damages, costs, expenses, fees, injunctive relief, attorneys' fees, expert consulting fees, prejudgment interest, indemnities, duties, losses, judgments, matters, issues, claims (including Unknown Claims), obligations, and causes of action of every nature and description whatsoever, in law, equity, or otherwise, whether accrued or unaccrued, fixed or contingent, liquidated or unliquidated, direct or indirect, known or unknown, whether or not concealed or hidden, anticipated or unanticipated, whether arising under federal, state, local, statutory, common law, foreign law, or any other law, rule, or regulation, and whether class and/or individual in nature that arise out of or in connection with, or otherwise relate to both:

(a)  the purchase or other acquisition of common units of Trust I during the period from April 5, 2011 through November 8, 2012, inclusive, or common units of Trust II during the period from April 17, 2012 through November 8, 2012, inclusive; and

(b) any of the allegations, transactions, acts, facts, matters, occurrences, disclosures, statements, filings, representations, omissions, or events that were or could have been alleged or asserted in the Litigation.

Released Claims do not include claims to enforce the Settlement.

1.24   "Released Defendants' Claims" means any and all claims that arise out of, are based upon, or relate to in any way to institution, prosecution, or settlement of the claims against the Settling Defendants in the Litigation, except for claims relating to the enforcement of the Settlement. For the avoidance of doubt, nothing in this Stipulation shall be deemed to release or discharge any rights of any of the Settling Defendants under any policy of insurance or any claim that any of the Settling Defendants may have against any insurer under any insurance policy.  The Settling Defendants' releases also shall not apply to any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.  For the avoidance of doubt, nothing in this Stipulation shall be deemed to release or discharge any rights of any of the Settling Defendants or any insurer of the Settling Defendants against SandRidge or any predecessor, successor, parent, subsidiary or affiliate of SandRidge.

1.25   "Released Persons" means the Settling Defendants and their Related Parties.

1.26   "SandRidge" means SandRidge Energy, Inc.

1.27   "Settlement" means the resolution of the claims against the Settling Defendants in accordance with the terms and provisions of this Stipulation.

1.28   "Settling Defendants" means Tom L. Ward, James D. Bennett, and Matthew K. Grubb.

1.29    "Settlement Class" means all persons who purchased or otherwise acquired Common Units of SandRidge Mississippian Trust I, between April 5, 2011 and November 8, 2012, inclusive, and were damaged thereby, or who purchased or otherwise acquired Common Units of SandRidge Mississippian Trust II between April 17, 2012 and November 8, 2012, inclusive, and were damaged thereby, or a comparable settlement class determined by the Court on final approval of the settlement and consented to by the Settling Parties. Excluded from the Settlement Class are (i) Defendants; (ii) the officers and directors of SandRidge at all relevant times; (iii) the trustee of Trust I and Trust II; (iv) members of the immediate family of Defendants; (v) any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, or which is related to or affiliated with any of the Defendants; (vi) Defendants' liability insurance carriers and any affiliates or subsidiaries thereof; and (vii) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party.  Also excluded from the Settlement Class are those Persons who timely and validly request exclusion from the Settlement Class pursuant to the requirements set forth in the Notice to be sent to Settlement Class Members pursuant to the Preliminary Approval Order.

1.30    "Settlement Class Member" means a Person who or which falls within the definition of the Settlement Class as set forth in ¶1.29 above.

1.31    "Settlement Amount" means the sums of $7,312,500 paid on behalf of Settling Defendant Ward and $6,630,000 paid on behalf of Settling Defendants Grubb and Bennett.

1.32    "Settlement Fund" means the Settlement Amount plus all accrued interest.

1.33   "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.34   "Settling Defendants' Counsel" means Latham & Watkins LLP, Corbyn Law Firm, Covington & Burling LLP, and Crowe & Dunlevy.

1.35   "Settling Parties" means, collectively, the Settling Defendants and Plaintiffs, on behalf of themselves and the Settlement Class.

1.36   "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits hereto.

1.37   "Supplemental Agreement" means the Supplemental Agreement dated November 12, 2021, between the Settling Parties.

1.38   "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.39   "Unknown Claims" means: (a) any Released Claims that Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons which, if known by him, her, or it, might have affected his, her, or its settlement or decisions with respect to the Settlement, including, but not limited to, whether to release the Released Claims, object to, or opt out of this Settlement; and (b) any Released Defendants' Claims that the Released Persons do not know or suspect to exist in his, her, or its favor at the time of the release of the Plaintiffs, the Settlement Class Members and Plaintiffs' Counsel, which if known by him, her, or it,

might have affected his, her, or its settlement and release of Plaintiffs, the Settlement Class Member and Plaintiffs' Counsel. With respect to: (a) any and all Released Claims against the Released Persons; and (b) any and all Released Defendants' Claims against Plaintiffs, the Settlement Class Members and Plaintiffs' Counsel, the Settling Parties stipulate and agree that, upon the Effective Date, they shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by the law of any state or territory of the United States or other jurisdiction or principle of common law or foreign law that is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**.

The Settling Parties or the Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims and Released Defendants' Claims, but the Settling Parties shall expressly fully, finally, and forever settle and release, and each other Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims and Released Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which

now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of law (including by operation of the Judgment) to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement.

## 2. The Settlement

### a. The Settlement Amount

2.1     In consideration of the Released Claims, and other consideration granted to them in the Settlement, Settling Defendants Ward, Bennett, and Grubb shall cause their insurers to pay the Settlement Amount into the Escrow Account no later than seventeen (17) calendar days after the first date by which each of the following has occurred, but in no event earlier than December 1, 2021: (i) the Court has entered the Preliminary Approval Order preliminarily approving the Settling of this Litigation and (ii) the Settling Defendants' Counsel and Settling Defendants' insurers have been provided with all of information necessary to effectuate a payment of funds, including the beneficiary account name, the U.S. bank name, address, account number and ABA bank code (i.e., routing number), and a completed W-9 for the Escrow Account; and the payment reference (seventeen (17) calendar days after the later of the foregoing (i) and (ii), but in no event earlier than December 1, 2021, being hereinafter referred to as the "Payment Date"). Plaintiffs' Counsel shall provide the above-referenced information on firm letterhead and

signed by two representatives of the firm.  These funds, together with any interest and income earned thereon once transferred, shall constitute the Settlement Fund.

2.2     If the entire Settlement Amount is not deposited into the Escrow Account by the Payment Date, Lead Counsel may terminate the Settlement but only if: (i) Settling Defendants have received from Lead Counsel written notice of Lead Counsel's intention to terminate the Settlement; and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel has provided such written notice.

2.3     The Settling Defendants and Plaintiffs expressly agree and acknowledge with respect to the Escrow Account and the Settlement Amount that the Settlement Amount is being paid entirely by insurance carriers from the proceeds of available insurance, and not by any of the Settling Defendants themselves or from any of their respective assets or property.  The Escrow Account and all funds on deposit therein from time to time, including but not limited to the Settlement Amount, are not, and shall not be deemed to be, property of the estate of any Person (including but not limited to any of the Released Persons) within the meaning of 11 U.S.C. §541 or any similar provision of any other law, and each of the Settling Defendants hereby disclaims, releases, and waives any right to assert to the contrary in any proceeding in any forum whatsoever.

2.4     The obligations incurred pursuant to this Stipulation shall be in full and final disposition and settlement of all Released Claims. The Settling Defendants shall have no responsibility for payment of Notice and Administration Expenses, Plaintiffs' attorneys' fees

or expenses, or any out-of-pocket expenses, all of which shall be paid from the Settlement Amount.

### b.    The Escrow Agent

2.5    The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.1 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund. The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.6    The Escrow Agent shall not disburse the Settlement Fund, or any portion thereof, except as provided in the Stipulation, by an order of the Court, or with the written agreement of Lead Counsel and the Settling Defendants' Counsel.

2.7    Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation. The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or the monies maintained in the Escrow Account, including, without limitation, any responsibility or liability related to any fees, Taxes, investment decisions, maintenance, supervision, or distributions of any portion of the Settlement Fund..

2.8     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

2.9     Notwithstanding the fact that the Effective Date has not yet occurred, Lead Counsel may pay from the Settlement Fund the Notice and Administration Expenses reasonably and actually incurred. If the Settlement is not approved by the Court or the Settlement is terminated, canceled, or the Effective Date otherwise does not occur, any money paid or incurred for the above purposes shall not be returned or repaid to the Settling Defendants or their insurers. Subject to ¶2.10 below, the Settling Defendants are not responsible for, and shall not be liable for, any Notice and Administration Expenses, administering the Settlement, and paying Taxes, Tax Expenses, and escrow fees and costs, if any.

### c.     Taxes

2.10    (a)     The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.10, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely

and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. Lead Counsel shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.10(a) hereof) shall be consistent with this ¶2.10 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.10(c) hereof. The Released Persons shall have no responsibility or liability for the Settlement Fund's tax returns or other filings.

(c)     All (a) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this ¶2.10 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.10) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons, the parties hereto, and their counsel

shall have no liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.10.

### d.    Termination of Settlement

2.11   The Settling Parties agree in good faith to pursue Court approval of the Settlement.  In the event the Settlement is not approved by the Court or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur, the Settlement Amount less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.9 and 2.10 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from the respective Settling Defendants' Counsel in accordance with ¶7.4 herein.  If any Settling Defendant(s) elect(s) to terminate the Settlement in accordance with ¶7.3, the portion of the Settlement Amount paid by or on behalf of such Settling Defendant(s) opting to terminate the Settlement less

that terminating Settling Defendant(s)'s pro rata portion of the Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.9 and 2.10 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from the respective Settling Defendants' Counsel in accordance with ¶7.4 herein.

**3.      Preliminary Approval Order, CAFA Notice, and Settlement Hearing**

3.1      Promptly after execution of the Stipulation, Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, among other things, the preliminary approval of the Settlement set forth in the Stipulation, and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice (the "Summary Notice"), substantially in the forms of Exhibits A-1 and A-3 attached hereto. The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶6.1 hereof, and the date of the Settlement Hearing and notice that the Settlement Hearing may be conducted telephonically.

3.2      Upon entry of the Preliminary Approval Order, the parties shall request that SandRidge provide the Claims Administrator, at no cost to Plaintiffs or the Settlement Class, reasonably available transfer records in electronic searchable form, such as Excel, containing the names and addresses of registered owners of common units in the

SandRidge Trust Offerings during the Settlement Class Period. It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Settlement Class in accordance with this Stipulation and as ordered by the Court. The Settling Defendants shall have no responsibility for giving notice of the Settlement, and Settlement Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

3.3    Lead Counsel shall request that after notice is given, the Court hold the Settlement Hearing and approve the Settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application and Plaintiffs' request for awards pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.

3.4    Pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, *et seq.* ("CAFA"), no later than ten (10) calendar days after this Stipulation is filed with the Court, the Settling Defendants shall serve or cause to be served proper notice of the proposed Settlement (the "CAFA Notice") upon those who are entitled to notice pursuant to CAFA. In accordance with 28 U.S.C. § 1715(d), the order giving final approval of the Settlement shall not be issued earlier than ninety (90) days after any such requisite notices are served. The Settling Defendants' insurers are solely responsible for the costs of the CAFA Notice and administering the CAFA Notice.

4.      **Releases**

4.1      Upon the Effective Date, Plaintiffs and each of the Settlement Class Members shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, discharged, and dismissed each and all of their respective and/or collective Released Claims (including Unknown Claims) against the Released Persons, whether or not such Settlement Class Member executes and delivers the Proof of Claim or shares in the Settlement Fund. Claims to enforce the terms of this Stipulation are not released.

4.2      The Proof of Claim to be executed by Settlement Class Members shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3      Upon the Effective Date, all Settlement Class Members and anyone claiming through or on behalf of any of them (including without limitation each and every one of the Plaintiffs), will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any of the Released Claims against any of the Released Persons.

4.4      Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all of their respective and/or collective Released Defendants' Claims against Plaintiffs, the Settlement Class, and Plaintiffs' Counsel. Claims to enforce the terms of this Stipulation and the Settlement are not released.

**5.     Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of Lead Counsel, and as may be necessary or as circumstances may require, the Court, shall administer and calculate the Claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2     The Settlement Fund shall be applied as follows:

(a)     to pay all Notice and Administration Expenses;

(b)     to pay the Taxes and Tax Expenses described in ¶2.10 hereof;

(c)     to pay attorneys' fees and expenses to Lead Counsel (the "Fee and Expense Award"), and to pay Plaintiffs awards pursuant to 15 U.S.C. §78u-4(a)(4), in each case if and to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3     After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this ¶5.

5.4     Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such

documents as are specified therein. Any Person who submits a Proof of Claim shall reasonably cooperate with the Claims Administrator, including by promptly responding to any inquiry made by the Claims Administrator.

5.5    All Settlement Class Members shall be bound by all determinations and judgments in the Litigation concerning the Settlement, including, but not limited to, the releases provided for therein, whether favorable or unfavorable to the Settlement Class, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim form or any similar document, any distribution from the Settlement Fund or the Net Settlement Fund.

5.6    Lead Counsel shall cause to be provided to Settling Defendants' Counsel copies of all requests for exclusion, and any written revocation of requests for exclusion, as expeditiously as possible and in any event no later than seven (7) calendar days prior to the Settlement Hearing.

5.7    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Released Persons asserting any Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted Claims for processing by the

Claims Administrator so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Plaintiffs, Lead Counsel, the Claims Administrator, or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

5.8     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants, who cash their initial distribution payment and who would receive a distribution of at least $10.00, in an equitable and economic fashion. Thereafter, any *de minimis* balance which still remains in the Net Settlement Fund shall be donated to the Howard University School of Law Investor Justice & Education Clinic.

5.9     This Settlement is not a claims-made settlement.  If all conditions of the Settlement are satisfied and the Effective Date occurs, no portion of the Settlement Fund will be returned to the Settling Defendants or their insurers. The Settling Defendants and the Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of Claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No person shall have any claim of any kind against the Settling Defendants or the Related Parties with respect to the matters set forth in ¶¶5.1-5.8 hereof.

5.10   No Person shall have any claim against Plaintiffs, Lead Counsel, the Settling Defendants and/or the respective Settling Defendants' Counsel, the Related Parties, the Claims Administrator or other entity designated by Lead Counsel arising from distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court. This does not include any claim by any party for breach of this Stipulation.

5.11   It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's Claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.

## 6.   Plaintiffs' Counsel's Attorneys' Fees and Expenses

6.1   Lead Counsel may submit an application or applications for: (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Application"). In addition, Plaintiffs may request awards in connection

with their representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4). Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2     The fees and expenses, as awarded by the Court, shall be paid to Lead Counsel, as ordered, immediately after the Court executes the Judgment and an order awarding such fees and expenses. Lead Counsel may thereafter allocate the attorneys' fees among other Plaintiffs' Counsel, if any, in a manner in which it in good faith believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3     If the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Settlement is not approved by the Court or the Settlement is canceled or terminated, and such reversal, modification, cancellation or termination becomes final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Plaintiffs' Counsel who received any portion of the Fee and Expense Award shall be obligated, within ten (10) calendar days from receiving notice from the Settling Defendants' Counsel or from a court of appropriate jurisdiction, whichever is earlier, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification. Each such Plaintiffs' Counsel's law firm receiving fees and expenses, as a condition of receiving the Fee and Expense Award, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this provision.

6.4    The procedure for and the allowance or disallowance by the Court of any applications by counsel for the Plaintiffs for attorneys' fees and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including, without limitation, the releases contained herein). An award of attorneys' fees and/or litigation expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein.  Lead Counsel's application for an award of attorneys' fees and/or litigation expenses is not the subject of any agreement between Settling Defendants and Plaintiffs, and Settling Defendants will take no position on the Fee and Expense Application.  The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.

6.5    Any attorneys' fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund. The Settling Defendants and the Related Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Plaintiffs' Counsel or Plaintiffs.

7.      **Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1      The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)      the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof, substantially in the form set forth in Exhibit A attached hereto;

(b)      the Settlement Amount has been deposited into the Escrow Account;

(c)      the Settling Defendants have not exercised their option to terminate the Settlement pursuant to ¶7.3 hereof;

(d)      the Court has entered the Judgment; and

(e)      the Judgment has become Final.

7.2      Upon the Effective Date, any and all remaining interest or right of the Settling Defendants or the Settling Defendants' insurers in or to the Settlement Amount, if any, shall be absolutely and forever extinguished and the releases herein shall be effective. If the conditions specified in ¶7.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶7.4 hereof unless Lead Counsel and counsel for the Settling Defendants mutually agree in writing to waive any condition that has not been satisfied and proceed with the Settlement.

7.3      Any of the Settling Defendants, and only the Settling Defendants, shall have the option to terminate the Settlement as to himself (in the case of Ward) or themselves (in the case of Bennett and Grubb) if:

(a)     the Court declines to approve the proposed settlement of the *Glitz* Litigation or the settlement of the *Glitz* Litigation is otherwise terminated, provided that any Settling Defendant electing to terminate the Settlement pursuant to this subparagraph notifies Lead Counsel and the Escrow Agent in writing of such termination within thirty days of the *Glitz* Litigation settlement's disapproval or termination, and such termination shall have no effect on the Settlement as to any Settling Defendant(s) not opting to terminate the Settlement pursuant to this subparagraph; or

(b)     valid requests for exclusion from the Settlement Class exceed the criteria set forth in the Supplemental Agreement (the "Opt Out Threshold") executed between Plaintiffs and the Settling Defendants through their respective counsel concurrently with this agreement. The terms of the Supplemental Agreement shall not be disclosed in any other manner other than the statements herein and in the Notice, or as otherwise provided in the Supplemental Agreement, unless and until the Court otherwise directs or a dispute arises between Plaintiffs and the Settling Defendants concerning its interpretation or application; provided, however, that the Settling Defendants may include a copy of the Supplemental Agreement with the Opt Out Threshold redacted in the CAFA Notice. If submission of the Supplemental Agreement to the Court is required for resolution of a dispute or is otherwise ordered by the Court, the Settling Parties will undertake to have the Court review the Supplemental Agreement *in camera* without filing it on the docket. If the Court requires that the Supplemental Agreement be filed, the Settling Parties shall request that it be filed under seal or with the Opt Out Threshold redacted.

7.4     Unless otherwise ordered by the Court, if the Settlement is not approved by the Court or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur, within ten (10) calendar days after written notification of such event is sent by Settling Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less Taxes, Tax Expenses, and Notice and Administration Expenses which have either been disbursed pursuant to ¶¶2.9 and 2.10 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.9 and 2.10 hereof, shall be refunded by the Escrow Agent pursuant to written instructions from the respective Settling Defendants' Counsel. The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written instructions from the Settling Defendants' Counsel. In the event that any funds received by Lead Counsel consistent with ¶6.3 have not been refunded to the Settlement Fund within ten (10) calendar days specified in this paragraph, those funds shall be refunded by the Escrow Agent to Settling Defendants (or such other Persons as Settling Defendants may direct) immediately upon their deposit into the Escrow Account consistent with ¶6.3.

7.5     If the Settlement is not approved by the Court or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur, the Settling Parties shall be restored to their respective positions in the Litigation as of June 4, 2021 (as to Settling Defendant Ward), and June 18, 2021 (as to Settling Defendants Bennett and Grubb), accordingly. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.8-2.11, 6.3-6.5, 7.4-7.6, and 8.5-8.6 hereof, shall have no further force and effect with respect to

the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses, and interest awarded by the Court to any of Plaintiffs' Counsel or expenses to the Plaintiffs shall operate to terminate or cancel the Settlement or constitute grounds for cancellation or termination of the Settlement.

7.6     If the Settlement is not approved by the Court or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur, neither Plaintiffs nor any of their counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.9 or 2.10. In addition, any expenses already incurred pursuant to ¶¶2.9 or 2.10 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.11 and 7.4 hereof.

7.7     The Settling Defendants warrant and represent that they are not "insolvent" within the meaning of 11 U.S.C. §101(32) as of the time the Stipulation is executed. This representation is made by the Settling Defendants and not by Settling Defendants' Counsel. In the event of a Final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Settlement Fund, or any portion thereof, by or on behalf of the Settling Defendants to be a voidable preference, voidable transfer, fraudulent transfer, or similar transaction under Title 11 of the United States Code

(Bankruptcy), or applicable state law, and any portion thereof is required to be refunded and such amount is not promptly deposited in the Settlement Fund by or on behalf of the Settling Defendants, then, at the election of Plaintiffs the Settlement may be terminated and the Judgment entered in favor of the Settling Defendants pursuant to the Settlement shall be null and void. Alternatively, at the election of Plaintiffs, the Settling Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of the Settling Defendants and that the Settling Defendants and Plaintiffs and the Settlement Class Members shall be restored to their litigation positions as of June 4, 2021 (as to Settling Defendant Ward) and June 18, 2021 (as to Settling Defendants Bennett and Grubb), accordingly, and the Settlement Fund, less any amounts disbursed or incurred pursuant to ¶2.9 and ¶2.10, shall be promptly returned.

### 8. Miscellaneous Provisions

8.1     The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.2     The Settlement is contingent upon the Court's entry of provisions in the Judgment containing a bar order, consistent with the PSLRA (15 U.S.C. § 78u-4(f)(7)), barring contribution claims against and among the Settling Defendants. Further, the bar order shall not preclude any Settling Defendant from seeking to enforce any right of indemnification or contribution with respect to the payment of the Settlement Amount or defense costs.

8.3     The Settling Parties intend this Stipulation and the Settlement to be a final and complete resolution of all Released Claims against the Settling Defendants and the Released Persons. The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. Consistent with 15 U.S.C. § 78u-4(c)(1), the Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after extensive negotiations and consultation with competent legal counsel and the assistance of a professional mediator.

8.4     Plaintiffs and Plaintiffs' Counsel and the Settling Defendants and the Settling Defendants' Counsel shall not make any accusations of wrongful or actionable conduct by any Settling Party concerning the prosecution, defense, and resolution of the Litigation, and shall not suggest that the Stipulation or Settlement embodied in this Stipulation constitutes an admission as to the validity of any claim, allegation or defense in the Litigation. The Settling Parties reserve their right to rebut, in a manner that such party reasonably determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

8.5     Pending final settlement approval, the Settling Parties shall not directly or indirectly, individually or in concert with others, engage in any conduct or make, or cause

to be made, any statement, observation, or opinion, or communicate any information (whether oral or written) that is calculated to or is likely to have the effect of in any way (i) undermining, defaming, or otherwise in any way reflecting adversely or detrimentally upon Plaintiffs or the Settling Defendants (including any family members of any Settling Defendant or any entities in which any Settling Defendant has a controlling interest); or (ii) accusing or implying that Plaintiffs or the Settling Defendants (including any family members of any Settling Defendant or any entities in which any Settling Defendant has a controlling interest) engaged in any wrongful, unlawful, or improper conduct, except that Settling Parties shall each be free to report truthfully specific facts, information or events, upon subpoena from a third party as required by law. For the avoidance of doubt, the preceding paragraph does not apply to statements made in court or in briefs and other documents filed or served in the Litigation.

8.6    Neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, or may be deemed to be evidence of any presumption, concession, or admission of the validity of any Released Claim, or of any wrongdoing or liability of the Settling Defendants or their respective Related Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, or may be deemed to be evidence of any presumption, concession, or admission of any fault or omission of the Settling Defendants or their respective Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, arbitration, or other tribunal; or (c) is or may be deemed to be or

may be used as an admission of, or evidence of, or may be deemed to be evidence of any presumption, concession, or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial. The Settling Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.7    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

8.8    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.9    This Stipulation, along with its Exhibits, may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.10   The waiver by any party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation or a waiver by any party other than the waiving party.

8.11   The Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties, and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and/or memorialized in such

documents. Except as otherwise provided herein or in a separate written agreement, each party shall bear its own costs.

8.12    Lead Counsel, on behalf of the Settlement Class, warrants and represents that it is expressly authorized by the Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class that it deems appropriate.

8.13    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

8.14    The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or pdf via e-mail shall be deemed originals.

8.15    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. No assignment shall relieve any party hereto of obligations hereunder.

8.16    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation and matters related to the Settlement. Any such actions,

motions, or disputes arising under or to enforce this Stipulation or any portion thereof shall be commenced and maintained only in this Court.

8.17   Pending approval of the Court of the Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Settlement Class Members shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

8.18   This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Oklahoma, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Oklahoma without giving effect to that State's choice-of-law principles. This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between all Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

8.19   Computing Deadlines:  For all deadlines under this Stipulation, to compute deadlines (a) exclude the day of the event that triggers the period; (b) count every calendar day, including intermediate Saturdays, Sundays and legal holidays; and (c) include the last day of the period, but if the last day is a Saturday, Sunday or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday.

8.20    Time for Compliance: If the date for performance of any act required by or under this Stipulation is due to be performed on or by a Saturday, Sunday, or legal holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of November 12, 2021.

Respectfully submitted,


THE ROSEN LAW FIRM, P.A.

Laurence M. Rosen, Esq. (*pro hac vice*)
lrosen@rosenlegal.com
Phillip Kim, Esq. (*pro hac vice*)
pkim@rosenlegal.com
Jonathan Horne, Esq. (*pro hac vice*)
jhorne@rosenlegal.com
275 Madison Avenue, 40th Floor
New York, NY 10016
(212) 868-1060

*Lead Counsel for Plaintiffs and the Settlement Class*


LATHAM & WATKINS LLP

J. Christian Word

J.  Christian  Word  (*pro  hac  vice*)
Stephen P. Barry (*pro hac vice*)
David L. Johnson (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington,          D.C.          20004
christian.word@lw.com
stephen.barry@lw.com
david.johnson@lw.com
(202) 637-2200

Steven M. Bauer (*pro hac vice*)
505 Montgomery St., Suite 2000
San Francisco, CA 94111
steven.bauer@lw.com

- 44 -

CORBYN LAW FIRM

George S. Corbyn, Jr., OBA #1910
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, OK 73102
gcorbyn@corbynlaw.com
kcaldwell@corbynlaw.com
(405) 239-7055

*Attorneys for Defendant Tom L. Ward*


COVINGTON & BURLING LLP

_____
Mark P. Gimbel (admitted *pro hac vice*)
C. William Phillips (admitted *pro hac vice*)
Christopher Y. L. Yeung (admitted *pro hac vice*)
cphillips@cov.com
mgimbel@cov.com
cyeung@cov.com
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

CROWE & DUNLEVY

Evan G.E. Vincent, OBA #22325
evan.vincent@crowedunlevy.com
324 North Robinson Avenue Suite 100
Oklahoma City, OK 73102
(405) 239-6696


*Attorneys for Defendants James D. Bennett and Matthew K. Grubb*