# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUANE & VIRGINIA LANIER TRUST, Individually and On Behalf of All Others Similarly Situated, | Case No. 5:15-CV-00634-G <br><br> <u>CLASS ACTION</u> |
| Plaintiffs, | |
| v. | |
| SANDRIDGE MISSISSIPPIAN TRUST I, SANDRIDGE MISSISSIPPIAN TRUST II, TOM L. WARD, JAMES D. BENNETT, MATTHEW K. GRUBB, RANDALL D. COOLEY, JIM J. BREWER, EVERETT R. DOBSON, WILLIAM A. GILLILAND, DANIEL W. JORDAN, ROY T. OLIVER, JR., JEFFREY S. SEROTA, D. DWIGHT SCOTT, RAYMOND JAMES & ASSOCIATES, INC., MORGAN STANLEY & CO. LLC (F/K/A MORGAN STANLEY & CO INC.), MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., CITIGROUP GLOBAL MARKETS INC., and RBC CAPITAL MARKETS, LLC, | |
| Defendants. | |
| SANDRIDGE ENERGY, INC., | |
| Nominal Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FINAL CERTIFICATION OF CLASS, AND TO MODIFY PLAN OF ALLOCATION**

1

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II. PROCEDURAL HISTORY ....................................................................................... 2

    A.  Plaintiffs File Their Amended Complaint ....................................................... 2

    B.  Judge Miles-LaGrange Sustains Exchange Act Claims as to Defendants Ward, Grubb, Bennett, Trust I, and SandRidge................................................. 3

    C.  Judge Miles-LaGrange Dismisses the Securities Act Claims ......................... 4

    D.  Defendants File Additional Dispositive Motions ............................................ 5

    E.  Plaintiffs Move for Class Certification ............................................................ 5

    F.  The Parties Conduct Extensive Merits Discovery ........................................... 6

    G.  Defendants File Dispositive Motions ............................................................... 6

    H.  The Settling Parties Reach a Settlement After Protracted Negotiations ......... 7

III. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ................. 8

    A.  Legal Standard ................................................................................................. 8

    B.  The Settlement is Fair, Reasonable and Adequate as it Satisfies Both the Tenth Circuit and Rule 23(e)(2) Factors for Approval .................................... 9

        1.  The Settlement was Fairly and Honestly Negotiated (Rule 23(e)(2)(A)-(B)) .......................................................................................................... 9

        2.  Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt (Rule 23(e)(2)(C)(i)) ................ 10

        3.  The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief (Rule 23(e)(2)(C)(i)) ................................................. 13

        4.  The Fourth Factor Supports Approval Because Plaintiffs and Counsel Have Adequately Represented the Settlement Class and No Settlement Class Members Objected to the Settlement or Excluded Themselves (Rule 23(e)(2)(A)) ........................................................ 13

        5.  The Additional Rule 23(e)(2) Factors Support Final Approval ......... 15

i

       i.      The Method of Distributing Relief and Processing Claims .... 16

       ii.     Proposed Attorneys' Fees ........................................................ 16

       iii.    The Parties Have No Other Agreements Besides Opt-Outs .... 17

       iv.    All Class Members Are Treated Equitably ............................. 18

IV.    THE COURT SHOULD APPROVE THE [AMENDED] PLAN OF
       ALLOCATION ............................................................................... 18

V.     THE NOTICE PROGRAM SATISFIED RULE 23 AND DUE PROCESS .......... 21

VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ....................... 22

VII.   CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Home Assur. Co. v. Cessna Aircraft Co.*,
  551 F.2d 804 (10th Cir. 1977) ................................................................8

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ..............................................................12

*California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017) ............................................................................4

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
  2020 WL 3288059 (D. Kan. June 18, 2020) .........................................10

*China Agritech, Inc. v. Resh*,
  138 S. Ct. 1800 (2018) ............................................................................5

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................11, 14

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
  807 F. App'x 752 (10th Cir. 2020) .......................................................15

*Farley v. Family Dollar Stores, Inc.*,
  2014 WL 5488897 (D. Colo. Oct. 30, 2014) .........................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ................................................................12

*Gradie v. C.R. Engl*and, Inc.,
  2020 WL 6827783 (D. Utah Nov. 20, 2020) .........................................14

*Gundrum v. Cleveland Integrity Servs., Inc.*,
  2017 WL 3503328 (N.D. Okla. Aug. 16, 2017) ....................................16

*Harris v. Chevron U.S.A., Inc.*,
  2020 WL 8187464 (E.D. Okla. Feb. 27, 2020) .....................................10

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................................9, 10

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................. 11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................................ 12

*In re China Sunergy Sec. Litig.*,
  No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............. 13

*In re Crocs Sec. Litig.*,
  2014 WL 4670886 (D. Colo. Sept. 18, 2014) ..................................................... 11

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014) ............................................................... 9, 13, 19

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................... 10

*In re HealthSouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) ...................................................................... 17

*In re Molycorp, Inc. Sec. Litig.*,
  2017 WL 4333997 (D. Colo. Feb. 15, 2017) ........................................................ 9

*In re Ocean Power Techs., Inc.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) .......................................................... 16

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  997 F.3d 1077 (10th Cir. 2021) ............................................................................. 8

*In re Spectranetics Corp. Sec. Litig.*,
  2010 WL 11553082 (D. Colo. Sept. 13, 2010) ................................................... 17

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) ................................................................. 12

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) .............................................................................. 17

*In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*,
  2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ................................................... 17

*Jones v. Nuclear Pharmacy, Inc.*,
  741 F.2d 322 (10th Cir. 1984) ........................................................................... 8, 9

iv

*Joseph v. Wiles*,
  223 F.3d 1155 (10th Cir. 2000) ....................................................................4

*Lawrence v. First Fin. Inv. Fund V, LLC*,
  2021 WL 3809083 (D. Utah Aug. 26, 2021) ...............................................8, 14

*O'Dowd v. Anthem, Inc.*,
  2019 WL 4279123 (D. Colo. Sept. 9, 2019) .....................................9, 10, 13, 19

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
  2021 WL 1387110 (D. Colo. Apr. 13, 2021) .....................................9, 13, 18, 22

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016) ................................................................17

*Ramos v. Banner Health*,
  2020 WL 6585849 (D. Colo. Nov. 10, 2020) ...............................................8, 15

*Shaw v. Interthinx, Inc.*,
  2015 WL 1867861 (D. Colo. Apr. 22, 2015) .................................................16

*Suaverdez v. Circle K Stores, Inc.*,
  2021 WL 4947238 (D. Colo. June 28, 2021) .................................................18

*Vinh Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................15

*Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*,
  758 F.2d 86 (3d Cir. 1985) .........................................................................22

**Rules**

Fed. R. Civ. P. 23 ........................................................................................22

Fed. R. Civ. P. 23(a) ...................................................................................22

Fed. R. Civ. P. 23(b)(3) ...............................................................................22

Fed. R. Civ. P. 23(e) ......................................................................................8

Fed. R. Civ. P. 23(e)(2) ...............................................................................8, 9

Fed. R. Civ. P. 23(e)(2)(A) ...........................................................................13

Fed. R. Civ. P. 23(e)(2)(A)-(B) .......................................................................9

Fed. R. Civ. P. 23(e)(2)(C)(i) ...................................................................10, 13

Lead Plaintiffs the Duane & Virginia Lanier Trust, Ivan Nibur, Jase Luna, Matthew Willenbucher, and Reed Romine ("Plaintiffs") move this Court for an order (i) granting final approval of the Settlement; (ii) approving an [Amended] Plan of Allocation; and (iii) finally certifying the Settlement Class for settlement purposes.[1]

## I.    INTRODUCTION

After six years of litigation, Plaintiffs agreed to settle the class's claims against Defendants Tom L. Ward, Matthew K. Grubb, and James D. Bennett ("Settling Defendants", with Plaintiffs "Settling Parties")) for $13.94 million ("Partial Settlement"). The Partial Settlement warrants approval.

The Partial Settlement recovers substantial funds in circumstances where the Settlement Class might easily have recovered nothing at all. SandRidge filed for bankruptcy years ago, discharging all Plaintiffs' claims against it, except to the extent of the available insurance. Its applicable insurance policy proceeds, which are the funds the Settling Defendants use to litigate or settle this action, are rapidly dwindling. The settlements in this case and *In re SandRidge Energy Inc. Sec. Litig., 12*-cv-1341-G ("*Glitz*") collectively recover $35.75 million from insurance policies that purportedly have less than $40 million of coverage remaining. Indeed, Settlement Class Members will recover a ***greater*** percentage of their damages than the median settlement in cases of like size. The Partial Settlement is also

---

[1] Unless otherwise noted, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement ("Stipulation") (ECF No. 463), all citations and internal quotations are omitted, and all emphasis is added. Citations to "Horne Dec." followed by "¶_" or "Ex. _" or "Bravata Dec." followed by "¶_" or "Ex. _" are to, respectively, paragraphs of or Exhibits to the Declarations of Jonathan Horne and Josephine Bravata, filed herewith. References to the "Fee Brief" are to the Memorandum Of Law Support Of Motion For Award Of Attorneys' Fees, Reimbursement Of Expenses, And Awards To Plaintiffs, filed herewith.

procedurally fair. It took protracted negotiations that took a year and a half, with the assistance of renowned mediator, the Hon. Layn R. Phillips (ret.). And no Partial Settlement Class Members have objected and only one sought exclusion. Thus, the Partial Settlement is fair, reasonable, and adequate, and warrants approval.

The Court should also grant other relief necessary to consummate the Partial Settlement. Nothing has changed since the Court's decision preliminary certifying a Settlement Class, so it should grant the Class final certification.[2] For the same reason, the Court should finally approve the notice it has already preliminarily approved.

The Court should finally approve the plan of allocation, but with small modifications. The modifications will have a *de minimis* impact on the Partial Settlement's distribution but allow all Settlement Class Members with valid claims to submit them. The proposed [Amended] Plan of Allocation is fair, reasonable, and adequate, and warrants approval.

## II.   PROCEDURAL HISTORY

### A.  Plaintiffs File Their Amended Complaint

The Duane & Lanier Trust filed this Action in June 2015 on behalf of all persons who purchased or otherwise acquired common units of SandRidge Mississippian Trusts I or II from April 5, 2011 through November 8, 2012, both dates inclusive ("Class Period"). The Lanier Trust alleged claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act) and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). Judge Miles-LaGrange duly appointed the Lanier Trust, alongside Ivan

---

[2] As further explained below, Ms. Rath is no longer seeking appointment as a Settlement Class Representative.

Nibur, Jase Luna, Matthew Willenbucher, and Lawrence Ross ("Initial Plaintiffs") as lead plaintiffs, and their counsel The Rosen Law Firm, P.A. ("Rosen") as lead counsel with Wohl & Fruchter LLP ("Wohl & Fruchter") as additional Plaintiffs' counsel. (ECF No. 64).

Shortly after appointment, SandRidge filed for bankruptcy, prompting Judge Miles-LaGrange to stay the case. (ECF No. 72). Plaintiffs then intervened in SandRidge's bankruptcy to ensure it could not discharge Trust investors' claims against the Settling Defendants. (Horne Dec. ¶12). On October 27, 2016, after SandRidge emerged from bankruptcy, Judge Miles-LaGrange reopened the Action. (ECF No. 76). Two weeks later, Initial Plaintiffs filed their amended complaint ("Complaint"). (ECF No. 78). The Complaint continued to assert the same Exchange Act and Securities Act claims on behalf of the same class.

### B. Judge Miles-LaGrange Sustains Exchange Act Claims as to Defendants Ward, Grubb, Bennett, Trust I, and SandRidge.

The Amended Complaint raised Exchange Act Claims against Defendants Bennett, Grubb, Ward, Trust I, and SandRidge ("Exchange Act Defendants").[3] Exchange Act Defendants moved to dismiss all claims. In September 2017, after full briefing Judge Miles-LaGrange sustained the Exchange Act Claims against all Exchange Act Defendants, except that she dismissed Section 10(b) (primary) claims against Defendant Bennett while sustaining Section 20(a) (controlling person) claims against him. (ECF No. 130). Exchange Act Defendants timely answered the Amended Complaint. (ECF Nos. 137, 138, 140, 141).

---

[3] SandRidge was named as a nominal defendant to the extent of its available insurance.

3

### C.  Judge Miles-LaGrange Dismisses the Securities Act Claims

Both the initial complaint and Amended Complaint raised claims on behalf of all persons who purchased Trust I or Trust II securities pursuant or traceable to their respective initial public offerings under Sections 11 and 15 of the Securities Act. The Securities Act's 3-year statute of repose, which ran before this case was filed, threatened to make Plaintiffs' claims untimely. But the Amended Complaint alleged, and the Initial Plaintiffs argued, that the Securities Act Claims were timely under *Joseph v. Wiles*, 223 F.3d 1155, 1166 (10th Cir. 2000). *Joseph* held that the filing of a securities class action complaint, here *Glitz*, tolls the 3-year statute of repose applicable to such claims. *Id.* Thus, under controlling law, Plaintiffs' Section 11 claims were timely. Yet after Defendants' motions to dismiss were fully briefed, the Supreme Court decided *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2047 (2017) ("*CALPERS*"), which held that the filing of a securities class action does *not* toll the 3-year statute of repose applicable to claims under Section 11 of the Securities Act, thus abrogating *Joseph*. Initial Plaintiffs then withdrew their opposition to Defendants' motions to dismiss the Securities Act claims (ECF No. 128), and Judge Miles-LaGrange dismissed such claims and all Defendants except for the Exchange Act Defendants. (ECF No. 129).

The Action was reassigned to Judge Scott L. Palk soon after the decisions on Defendants' motions to dismiss (ECF No. 143) and to this Court in October 2018. (ECF No. 258). In February 2018, the Initial Plaintiffs filed a suggestion of death as to Plaintiff Lawrence Ross (ECF No. 162) and requested to substitute Deborah Rath as representative of the executor of Plaintiff Ross's estate, and Plaintiff Reed Romine moved to intervene. (ECF

Nos. 166-67).  The Court later granted both motions. (ECF Nos. 259, 343). In May 2022, Ms. Rath withdrew as lead plaintiff. (ECF No. 469). The Initial Plaintiffs, except Dr. Ross and Ms. Rath, and with the addition of Mr. Romine, are the Plaintiffs.

### D. Defendants File Additional Dispositive Motions

Dispositive motions were outstanding for nearly all of the discovery period. In January 2018, Defendant Trust I moved for judgment on the pleadings as to the claims asserted against it by Trust II investors. (ECF No. 157). Trust I argued that Trust II investors' purchases were not made "in connection with" the statements the Complaint attributed to Trust I. The Court granted the motion in January 2019. (ECF No. 282). Within a month, the Settling Defendants filed motions for judgment on the pleadings on the same grounds. (ECF No. 284). SandRidge joined them a month later. (ECF No. 299). But the Court largely denied the remaining Defendants' "in connection with" motions in October 2019. (ECF No. 347).

In July 2018, while the "in connection with" motions were pending, all Defendants filed a motion for judgment on the pleadings to dismiss Plaintiffs' class claims. (ECF No. 215). Relying on the Supreme Court's June 2018 decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 (2018), the Defendants argued that the Plaintiffs' class claims were not timely because the statute of limitations had never been ***tolled***. The Court denied the motion because it agreed with Plaintiffs that the statute of limitations had not begun to ***run***. ECF No. 309.

### E. Plaintiffs Move for Class Certification

Plaintiffs timely moved for class certification in February 2018. ECF No. 169. Defendants took the depositions of all six plaintiffs, the Lanier Trust's broker, and Plaintiffs'

expert, while Plaintiffs deposed the person who had submitted a declaration with statistical analysis. The parties filed two related motions to strike. Plaintiffs moved to strike Defendants' statistical analysis as improper lay opinion testimony. (ECF No. 236). Defendants moved to strike what they argued was improper reply argument. (ECF No. 245). All three motions were pending at the time of the Partial Settlement, at which time the Court stayed them. (ECF No. 457).

### F.  The Parties Conduct Extensive Merits Discovery

The scope of discovery in this case was immense. Over 2.7 million pages of documents were produced. Rather than wastefully reviewing every page, Plaintiffs used predictive coding and targeted searches. Even with these techniques, reviewing Defendants' documents and identifying the documents that would make or break Plaintiffs' case still took substantial effort. (Horne Dec. ¶7).

The Parties then took a further 20 fact depositions. Many of these depositions stretched more than a day because both Plaintiffs and the *Glitz* plaintiffs participated. For the most part, the depositions were highly technical and explored complex petroleum engineering topics. (Horne Dec. ¶8).

Expert discovery was also substantial. Plaintiffs and Defendants each retained 3 experts. The Parties collectively exchanged 11 expert reports and took 8 expert depositions. (Id. ¶ 9).

### G.  Defendants File Dispositive Motions

The scheduling order required that summary judgment motions be filed in April 2020. Trust I (ECF No. 360) and Ward (ECF No. 373) each filed a motion, as did Bennett and

Grubb. ECF No. 370. In total, Defendants submitted 79 pages of opening briefs in support of their motions for summary judgment. Ward also filed a motion for reconsideration of the order denying his motion to dismiss. (ECF No. 361). Defendants filed 3 motions to exclude expert testimony, and Plaintiffs filed one. (ECF No. 357, 365, 367, 368). These motions had not been decided when the Settling Parties reached the Partial Settlement.

### H. The Settling Parties Reach a Settlement After Protracted Negotiations

The Parties to this case and *Glitz* (collectively, "*Lanier/Glitz* Plaintiffs") held a full-day mediation with all Defendants in these actions in December 2019. The parties did not reach a settlement, but discussions continued for the following months. These discussions ended before Defendants filed their motions for summary judgment in April 2020. (Horne Dec. ¶13).

The *Lanier/Glitz* Plaintiffs sporadically discussed with Defendants a global settlement of all claims in both actions over the next year. Eventually, the *Lanier/Glitz* Plaintiffs opened separate settlement discussions with Ward on the one hand and Bennett and Grubb on the other. The *Lanier/Glitz* Plaintiffs secured a settlement with Bennett and Grubb first. Weeks later, they settled with Ward. Plaintiffs here retain their claims against Trust I and SandRidge.

The funds Ward, Bennett, and Grubb paid were to settle both this case and *Glitz*. The *Lanier/Glitz* Plaintiffs agreed to submit the allocation of the combined settlement fund to arbitration before Judge Phillips. Judge Phillips awarded $13.94 million of the global settlement to Plaintiffs.

Plaintiffs moved for preliminary approval of the Partial Settlement. (ECF No. 461). The Court granted approval in May 2022 (ECF No. 468), scheduling a final approval hearing

for October 6, 2022.

## III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.  Legal Standard

The "inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 808 (10th Cir. 1977). The "presumption in favor of voluntary settlement agreements" is especially strong here "where substantial judicial resources can be conserved by avoiding formal litigation." *See Ramos v. Banner Health*, 2020 WL 6585849, at *3 (D. Colo. Nov. 10, 2020).

A class action settlement should be approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Tenth Circuit instructs courts to analyze four factors when analyzing a settlement: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

In 2018, Federal Rule of Civil Procedure 23(e) was amended. The amendments added specific requirements to the consideration, like evaluating whether the attorneys' fees are reasonable. But as to the core analysis, "the Tenth Circuit has continued to apply its own [pre-amendment] test." *Lawrence v. First Fin. Inv. Fund V, LLC*, 2021 WL 3809083, at *3 (D. Utah Aug. 26, 2021); *cf. In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. &*

8

*Prod. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021) (stating that courts should consider both the Rule 23(e)(2) and prior factors). That is because other than the new specific requirements, the standards substantially overlap. *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).

In the following analysis, Plaintiffs follow the traditional Tenth Circuit standard set out in *Jones* with parallel references to the corresponding provisions of Rule 23(e)(2).

**B. The Settlement is Fair, Reasonable and Adequate as it Satisfies Both the Tenth Circuit and Rule 23(e)(2) Factors for Approval**

**1. The Settlement was Fairly and Honestly Negotiated (Rule 23(e)(2)(A)-(B))**

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate and reasonable." *O'Dowd*, 2019 WL 4279123, at *13. Use "of an experienced mediator [] supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017). That the settlement negotiations broke down "can tend to display the negotiation's arms-length and non-collusive nature." *Hicks v. Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005).

The global settlement results from protracted negotiations facilitated by Judge Phillips, which began but did not end with a full-day mediation. Judge Phillips's participation should give the Court confidence that the global settlement was fairly negotiated, as he has earned a reputation as a "sophisticated mediator." *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 679, 690 (D. Colo. 2014). *See also Peace Officers' Annuity & Benefit Fund of Georgia*

9

*v. DaVita Inc.*, 2021 WL 1387110, at *4 (D. Colo. Apr. 13, 2021) (settlement was "fairly and honestly negotiated at arms' length" with Judge Phillips as mediator); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (settlement procedurally fair, in part, due to "prolonged, arms-length negotiation, including as facilitated by a respected mediator [Judge Phillips].").[4]

The Parties' drawn out settlement discussions also show there was no collusion. *Hicks*, 2005 WL 2757792, at *5. The Settling Parties did not settle at the mediation, nor in its aftermath, nor in the several attempts made over a year to revive discussions. The Settling Parties only settled when the *Lanier/Glitz Plaintiffs* stopped seeking a global settlement and opened separate discussions with groups of defendants.

### 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt (Rule 23(e)(2)(C)(i))

Courts should approve settlements "where disputes between the parties are 'such that they could significantly impact [the] case if it were litigated.'" *O'Dowd*, 2019 WL 4279123, at *13.[5] "Very few attorneys have the desire to take on the risk involved in class actions[.]" *Harris v. Chevron U.S.A., Inc.*, 2020 WL 8187464, at *4 (E.D. Okla. Feb. 27, 2020). "Securities class actions in   particular   are   notably   difficult   and notoriously uncertain."

---

[4] Judge Phillips allocated the global settlement in an adversarial proceeding, so the allocation does not require scrutiny.

[5] The Tenth Circuit factors—"'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt' and 'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation'"— "largely overlap" with Rule 23(e)(2)(C)(i). *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *3 (D. Kan. June 18, 2020).

*Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019). "Litigating an action under the PSLRA is not a simple undertaking." *In re Crocs Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014).

Settling Defendants dispute whether they made false statements, whether any statements were made with scienter, whether their statements caused Plaintiffs' losses, whether Plaintiffs are entitled to class certification, and whether Plaintiffs suffered any damages. Ward even maintains that the Court should reconsider the denial of his motion to dismiss.

Because of these disputes, the ultimate outcome of this case is in doubt. None of the Defendants have been indicted for fraud, and the evidence is ambiguous enough that the Settling Defendants could file non-frivolous motions for summary judgment. At the time of the Partial Settlement, the Court had not resolved these motions, nor Defendants' motions to exclude Plaintiffs' experts. Thus, it was still possible that Plaintiffs would never even get to trial.

If Plaintiffs did get a chance to present their case to a jury, any prediction of the verdict is speculation. The jury could well reject Plaintiffs' argument that Defendants' statements were recklessly or intentionally false or misleading. *Christiane Asia*, 2019 WL 5257534, at *12 (final approval warranted in part because "[t]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."). Or, in this highly-technical case, it could reject Plaintiffs' geologist's and reservoir engineer's testimony in favor of Defendants' experts'. *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012)("When the success of a party's case turns on

11

winning a so-called 'battle of experts,' victory is by no means assured."). Or, siding with Defendants' expert, the jury might conclude that there are no damages or that damages are a small fraction of those Plaintiffs estimate. *In re Cendant Corp. Litig.*, 264 F.3d 201, 236 (3d Cir. 2001).

The sheer duration of securities class actions also imperils recovery. Securities class actions are *so* lengthy and *so* complex that plaintiffs risk that the law will shift beneath their feet, eliminating a victory that was unimpeachable under the standards that existed when it was secured. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (in case brought in 2005, Supreme Court decision after entry of verdict in Plaintiffs' favor reduced the billion-dollar verdict into an approximately $78 million recovery); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414, 433 (7th Cir. 2015) (reversing and remanding securities class action jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds because intervening Supreme Court decision had made then-proper jury instructions erroneous); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231–32 (10th Cir. 1996) (case filed in 1973 and tried to a verdict for plaintiffs in 1988 with jury instructions compelled by then-controlling precedent which the Supreme Court overruled in a 1994 opinion causing the court to vacate the jury verdict in 1996). This case is similar, albeit on a smaller scale. When it was filed, Plaintiffs' Section 11 claims were timely. After *CALPERS*, they were not. When the case was filed, Plaintiffs could rely on *American Pipe* tolling for their class claims. After *China Agritech*, they could not. There is no guarantee that *CALPERS* and *China Agritech* would be the only changes in the law that imperiled this case.

### 3.   The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief (Rule 23(e)(2)(C)(i))

In assessing a settlement, courts weigh the recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *O'Dowd*, 2019 WL 4279123, at *13. The $13.94 million Partial Settlement recovers approximately 5.9% of Plaintiffs' expert's estimate of the proposed Settlement Class's damages of $235.7 million. According to Cornerstone Research, between 2012 and 2020, the median settlement in cases with damages of $150 million to $249 million recovered 4.0% of total damages.[6] The 5.9% recovery also surpasses what courts around the country have found reasonable. *See e.g., Crocs*, 306 F.R.D. at 691 (approving settlement recovery of 1.3% of damages as it was "in line with the median[.]"); *In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the classes' total estimated losses).

### 4.   The Fourth Factor Supports Approval Because Plaintiffs and Counsel Have Adequately Represented the Settlement Class and No Settlement Class Members Objected to the Settlement or Excluded Themselves (Rule 23(e)(2)(A))

Courts afford great weight to counsel's judgment that a settlement is fair, reasonable, and adequate, provided counsel is experienced and otherwise adequate. *DaVita*, 2021 WL 1387110, at *5 ("[T]he Court gives weight to the judgment of Lead Counsel, who are highly

---

[6] Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements: 2021 Review and Analysis, at 6 (available at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf).

13

experienced in prosecuting securities class actions, that the settlement is an excellent result for the class."); *Farley v. Family Dollar Stores, Inc.*, 2014 WL 5488897, at *3 (D. Colo. Oct. 30, 2014) ("[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight.").

As to adequacy, courts consider the "actual performance of counsel acting on behalf of the class." *Lawrence*, 2021 WL 3809083, at *5. Counsel have been representing Plaintiffs for more than seven years. There are 469 entries on the case docket. Before the Partial Settlement, counsel, among other things, opposed 6 motions to dismiss, served and responded to more than 10 sets of discovery requests, gained an understanding of more than 2.7 million pages of documents, prepared 8 expert reports, took or defended 7 expert depositions and 26 fact depositions, moved for class certification, opposed 4 motions for judgment on the pleadings, opposed 3 motions for summary judgment and a motion for reconsideration of the denial of a motion to dismiss, and briefed 4 motions to exclude experts and one motion for reconsideration of the denial of a motion to dismiss. Counsel devoted more than 20,000 hours to litigating this case. These efforts show Counsel adequately represented the Settlement Class. *See Lawrence*, 2021 WL 3809083, at *5 (class counsel adequately represented the class and gained appreciation for the merits of the case by engaging in extensive discovery and motion practice before settlement); *Gradie v. C.R. England, Inc.*, 2020 WL 6827783, at *9 (D. Utah Nov. 20, 2020) (Plaintiffs adequately represented class by representing class for years, including reviewing documents and holding mediation).

Counsel's attorneys have decades of experience prosecuting securities class actions and have a long track record of securing recoveries for investors. *See Christine Asia Co. v.*

14

*Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), appeal *withdrawn sub nom.* 2020 WL 763277 (2d Cir. Jan. 2, 2020) (finding in approving the largest ever securities class action settlement in a case against a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (Rosen "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement."). *See also* Horne Dec. Schedule A. Rosen was also assisted by Plaintiffs' additional counsel, Wohl & Fruchter, which has a long track record of success in securities class actions. (Horne Dec. Ex. 2, Declaration of Josh Fruchter, at Ex. A).

Thus, Counsel are adequate, so their judgment that the Partial Settlement is fair, reasonable, and adequate, is entitled to substantial weight.

In determining whether the parties support a settlement, courts also look to the reaction of absent class members. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 762 (10th Cir. 2020) (that there were only four objectors showed reinforced the parties' judgment that the settlement was fair); *Ramos*, 2020 WL 6585849, at *2("The Court may also consider the fact that no objections were filed by any class member."). There have been no objections. One Settlement Class Member, who purchased 25 Trust units during the Class Period, has requested exclusion. (Bravata Dec. Ex. D).

Thus, the fourth factor supports approval.

### 5.  The Additional Rule 23(e)(2) Factors Support Final Approval

The Rule 23(3)(2) factors which do not overlap with the Tenth Circuit factors also

support approval of the Settlement.

    i.  The Method of Distributing Relief and Processing Claims

  There is no central registry that identifies all persons who purchased Trust securities during the Settlement Class Period. (Bravata Dec. ¶4). Only Settlement Class Members know what their transactions are. (*Id.*) Thus, to file a claim in the Partial Settlement, as in any other securities class action settlement, Settlement Class Members must list their transactions under penalty of perjury. To avoid fraudulent claims, Settlement Class Members must also provide documentation. These are standard procedures. *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016) (noting that these "claim-processing procedures are the standard ones used in securities class-action settlements.").

    ii.  Proposed Attorneys' Fees

  The Notice disseminated to Settlement Class Members explained that Counsel would request attorneys' fees of up to one-third of the Settlement Fund. Counsel discuss their request in the Fee Brief, filed herewith. Thus far, Counsel have spent 20,314.29 hours, for a lodestar of $11,266,462.1, and incurred $1,518,890.74 in expenses. Plaintiffs' fee request is reasonable and comparable to awards in other complex class actions settlements approved in the Tenth Circuit and nationwide. *See, e.g., Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) ("[T]he Court notes that contingent fees in the range of one-third of a common fund are frequently awarded in Rule 23 class settlements."). Indeed, "[t]he customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class." *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015). Yet if the Court

disagrees, it may simply award a lower fee while still approving the Settlement. Stipulation ¶6.4.

As far as timing, attorneys' fees and expenses will be paid to Plaintiffs' Counsel immediately after entry of a judgment and order awarding such fees and expenses. ¶6.2 Such so-called quick-pay provisions are common and regularly approved. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) (quick-pay provisions generally approved by federal courts); *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) ("Quick-pay provisions are common."). *In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, 2016 WL 5338012, at *21 (N.D. Ohio Sept. 23, 2016) ("The essential purpose of a quick-pay clause is to disincentivize lawyers who are 'professional objectors.'").

### iii.   The Parties Have No Other Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the parties to disclose any side agreement. The Settling Parties have entered into a standard supplemental agreement. The agreement provides that if Settlement Class Members opt out of the Settlement such that the number of Trust I and Trust II units represented by such opt outs equals or exceeds a certain amount, Settling Defendants may terminate the Partial Settlement. Stipulation, ¶7.3. While the supplemental agreement is identified in the Stipulation (*id.*), the amount is confidential, as courts allow. *In re Spectranetics Corp. Sec. Litig.*, 2010 WL 11553082, at *5 (D. Colo. Sept. 13, 2010); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 251 (11th Cir. 2009) (termination threshold "is traditionally concealed and not included in the Class Notice.").

iv.   All Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement does not privilege Plaintiffs or any other Settlement Class Member. The proposed [Amended] Plan of Allocation distributes the Net Settlement Fund to Authorized Claimants on a *pro rata* basis. The [Amended] Plan of Allocation's formula for calculating recognized losses is the same for all Settlement Class Members. The Plan was developed by Lead Counsel after consulting with the Claims Administrator and Plaintiffs' damages expert. *DaVita*, 2021 WL 1387110, at *5 (finding equitable treatment as "[t]he settlement fund will be allocated to authorized claimants on a pro rata basis based on the relative size of their recognized claims.").

As detailed further in the Fee Motion, Plaintiffs also seek reimbursement of costs of $58,500 (0.4% of the Partial Settlement Fund) they incurred representing the Settlement Class, as authorized by the PSLRA. Service awards to plaintiffs are "typical in class action settlements." *Suaverdez v. Circle K Stores, Inc.*, 2021 WL 4947238, at *9 (D. Colo. June 28, 2021). Plaintiffs have carried this case for seven years. They have all been deposed. The awards are fair. See *DaVita*, 2021 WL 1387110, at *7  *Id*. at *7 (awarding plaintiffs $10,000 each).

*          *          *          *          *

The Court should finally approve the Settlement as it is fair, reasonable, and adequate.

## IV.   THE COURT SHOULD APPROVE THE [AMENDED] PLAN OF ALLOCATION

The objective of a plan of allocation is to provide an equitable method for distributing a settlement fund among eligible class members. "Approval of a plan of allocation of a

18

settlement fund in a class action is governed by the same standards of review applicable to the approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *Crocs*, 306 F.R.D. at 692. A plan of allocation like the one Plaintiffs propose here "that reimburses class members based on the type and extent of their injuries is reasonable" and should be approved. *O'Dowd*, 2019 WL 4279123, at *15.

The Plan of Allocation is set out in the Notice of Pendency and Proposed Partial Settlement of Class Action ("Long Notice"). (ECF No. 463-1, at 10-18). It provides that in some circumstances, the price at which Settlement Class Members purchased their Units might have an impact on their Recognized Loss. (*Id.* at 11-15). Thus, to have their claims accepted, Settlement Class Members set out and document all transactions during the Settlement Class Period, including the purchase price. (ECF No. 463-2 at 5-7).

After the Long Notice was mailed, several Settlement Class Members informed counsel and the Claims Administrator that their brokers had purged all trading records after 10 years. (Bravata Dec. ¶15). Naturally, many Settlement Class Members would have kept their own trading records, but some did not. Settlement Class Members who did not maintain their own records of transactions may not be able to document all of their Settlement Class Period transactions without undue burden. Settlement Class Members had no conceivable obligation to maintain records for a decade; they were not negligent if they lost or disposed of the records.

The Court should approve *de minimis* adjustments to the Plan of Allocation that will permit Settlement Class Members to file claims. Settlement Class Members whose brokers purged records after 10 years can still document the number of units they owned as of the

first corrective disclosure on November 8, 2012 because 10 years after November 2012 is November 2022. They can also document subsequent transactions. Because the Class Period begins with the Trusts' IPO, *every* unit held as of November 8, 2012 is a damaged unit. ***Every*** unit was purchased at allegedly artificially inflated prices and is entitled to a recovery under the current Plan of Allocation. Thus, *every* unit is entitled to a recovery. The only question is the amount.

Under the existing Plan of Allocation, the amount of Recognized Loss for each Unit depends on the price at which the Settlement Class Member purchased the Unit.[7] In the vast majority of cases, the price at which the Units were purchased would have no impact on their recognized loss.[8] For a tiny sliver of the class, the price limitation would reduce the recognized loss, but even for them, the impact is *de minimis*.[9]

The Court should modify the Plan of Allocation to (a) eliminate the limitation on recognized loss based on the Units' purchase price and (b) allow the Claims Administrator to approve claims based on documentation of the number of Trust units held as of November 8,

---

[7] *E.g.* ECF No. 463-1 at 12 (D) ("For units purchased or otherwise acquired during the Settlement Class Period and retained as of the close of trading on June 2, 2013, the Recognized Loss will be the lesser of: (1) [] or (2) the purchase price per unit minus $13.61 per unit.")

[8] Specifically, investors who held their Units past June 2013 must have purchased: Trust I units for less than $19.59, which was only possible on November 7-8, 2012, or Trust II units for less than $18.05, which was only possible on June 21-28, 2012. Investors who purchased Units on one of a handful of days on or before November 8, 2012, and sold those units on one of a handful of days on or after November 9, 2012, might also have their Recognized Loss limited by the purchase price.

[9] If a Trust I unit was purchased at the lowest Settlement Class Period-price and held past June 2013, that Trust I unit's Recognized Loss would be $5.42 instead of $5.98. The corresponding figures for Trust II are $5.23 and $5.91.

2012 and subsequent transactions.[10] With this amendment, the Claims Administrator can calculate claims for all Settlement Class Members who can prove the number of Units they **held** as November 8, 2012, even those who cannot document all their **transactions**.[11] (Bravata Dec. ¶17). The amendment will have a *de minimis* impact on the Partial Settlement's distribution and avoid the injustice of denying Settlement Class Members a recovery because of arbitrary events outside of their control.

## V.      THE NOTICE PROGRAM SATISFIED RULE 23 AND DUE PROCESS

Plaintiffs executed the Court-approved notice program in strict accordance with the preliminary approval order. The Notice and Claim Forms, which were substantially identical to those the Court approved, Bravata Dec. Ex. A, were mailed first class to 55,034 potential class members (Bravata Dec. ¶6) and emailed to 15,474 more. (Bravata Dec. ¶ 7). In total 70,508 potential Settlement Class Members received notice of the Settlement. *Id*., ¶8. The Notice explained what Settlement Class Members had to document and instructed them on how they could file their claims.

The Summary Notice was published on June 10, 2022 on *GlobeNewswire* and on June 13, 2022 in *Investors' Business Daily*. (Bravata Dec. ¶10). The published Summary Notice was substantially identical to the version the Court approved. Bravata Dec. Ex. C. Finally, SCS posted the Notice, Claim Form, Stipulation, and Preliminary Approval Order online at the settlement website, and provided a toll-free telephone number for Settlement Class

---

[10] None of the Lead Plaintiffs will benefit from this adjustment.

[11] The Claims Administrator will count all units held as of November 8, 2012 are damaged units and calculate each unit's damages solely based on the date they were sold on or after November 9, 2012, as set out in Tables A. and C. of the existing Plan of Allocation. (ECF No. 463-1 at 12-13, 15).

Members to call with any questions concerning the settlement. (Bravata Dec. ¶¶11-12). Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *DaVita*, 2021 WL 1387110, at *5 (mailed notice, publication of summary notice, and settlement website satisfied requirements of Rule 23); *Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.").

Thus, the notice program delivered the best notice practicable and met all applicable standards.

On August 4 the Claims Administrator mailed a supplemental postcard to advise Settlement Class Members of the issue that some brokers had purged some records. Bravata Dec. ¶15. The Claims Administrator recommended that claimants still file, even if their records had been purged, but that they document the number of Units held as of November 8, 2012, and all transactions from November 9 through June 3, 2013. *Id*.

## VI.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court's Preliminary Approval Order conditionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement and preliminarily certified Plaintiffs as Class Representatives and Lead Counsel as Class Counsel. *See* Preliminary Approval Order (ECF No. 468) ¶¶2-4.

Nothing has changed since the Court's preliminary certification of the Settlement

Class.[12] Thus, the Court should finally certify the Settlement Class it has already preliminarily certified. (ECF No. 462 at 9-13).

## VII.   CONCLUSION

The Court should approve the proposed Settlement and [Amended] Plan of Allocation and finally certify the Settlement Class.

Dated:  August 12, 2022                    Respectfully Submitted,

/s/ Jonathan Horne

Jonathan Horne (Admitted *Pro Hac Vice*)
Phillip Kim (Admitted *Pro Hac Vice*)
Laurence M. Rosen (Admitted *Pro Hac Vice*)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jhorne@rosenlegal.com
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

Nicholas G. Farha, OBA #21170
FARHA LAW, PLLC
1900 NW Expressway, Suite 501
Oklahoma City, Oklahoma 73118
Telephone: (405) 471-2224
Facsimile: (405) 810-9901
Email: nick@farhalawfirm.com

*Liaison Counsel for Plaintiffs*

---

[12] On May 27, 2022, the Court granted Plaintiffs' Unopposed Motion for Withdrawal of One Lead Plaintiff, Deborah Rath (ECF No. 469). Thus, Ms. Rath is no longer a proposed Class Representative, but the Court should appoint the remaining Plaintiffs as Settlement Class Representatives.

Joshua E. Fruchter (Admitted *Pro Hac Vice*)
WOHL & FRUCHTER, LLP
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Additional Plaintiffs' Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2022, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION  with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on August 12, 2022              */s/ Jonathan Horne*
                                         Jonathan Horne