UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUANE & VIRGINIA LANIER TRUST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SANDRIDGE MISSISSIPPIAN TRUST I et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-15-634-G<br>)<br>)<br>)<br>)<br>)<br>) |

# ORDER

Now before the Court is a Motion for Reconsideration (Doc. No. 361) filed by Defendant SandRidge Mississippian Trust I ("Trust I") and nominal defendant SandRidge Energy, Inc. ("SandRidge") (together, "Defendants"). *See also* Doc. Nos. 362, 363, 364.[1] Lead Plaintiffs[2] have filed a Response (Doc. No. 399), to which Defendants have replied (Doc. No. 421; *see also* Doc. Nos. 422, 423, 424).

The Motion for Reconsideration was previously stayed by order of the Court. *See* Doc. No. 457. The Court hereby VACATES the stay as to the Motion and holds as follows.

I.   *Background*

As has been detailed in the Court's previous orders, Lead Plaintiffs filed this action

---

[1] The other defendants who initially joined in the Motion for Reconsideration have since been dismissed from this action.

[2] The remaining Lead Plaintiffs are the Duane & Virginia Lanier Trust ("Lanier Trust"), Ivan Nibur, and Reed Romine, individually and on behalf of all others similarly situated.

1

seeking relief under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, promulgated thereunder. *See* 17 C.F.R. § 240.10b-5. Lead Plaintiffs also brought claims under various provisions of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k, 77*l*(a)(2), 77*o*.

On August 30, 2017, the Court dismissed all claims for relief under the Securities Act. *See* Order (Doc. No. 129) (Miles-LaGrange, J.). The Court entered judgment in the relevant defendants' favor on those claims pursuant to Federal Rule of Civil Procedure 54(b) on December 5, 2017. *See* J. (Doc. No. 146) (Palk, J.).

In the determination challenged here, the Court on September 11, 2017, denied Trust I's and SandRidge's motions to dismiss Lead Plaintiffs' Exchange Act claims. *See* Order of Sept. 11, 2017 ("Dismissal Order," Doc. No. 130) (Miles-LaGrange, J.). In that same Order, the Court denied in part and granted in part the motions to dismiss filed by the three Officer Defendants—Tom L. Ward, James D. Bennett, and Matthew K. Grubb. *See id.*

On December 30, 2022, the Court approved a class action settlement (Doc. No. 481) and entered judgment (Doc. No. 482) dismissing all claims against the Officer Defendants with prejudice.

Following these rulings, what remain for disposition are the section 10(b) and Rule 10b-5 claims (hereafter referred to as the "Section 10(b) Claim") of Lead Plaintiffs Lanier Trust, Nibur, and Romine, asserted individually and on behalf of putative class members against Defendants Trust I and SandRidge. *See* Consol. Am. Compl. ¶¶ 289-344, 352-358

2

(Doc. No. 78); *see also* Suppl. (Doc. No. 120).³

II.     Relevant Standards

    A. Exchange Act: Section 10(b) and Rule 10b-5

In order to state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff generally must allege " (1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) with intent to defraud or recklessness; (4) reliance; and (5) damages." *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1257-58 (10th Cir. 2001) (internal quotation marks omitted). "[T]o curb abuse in private securities lawsuits," Congress enacted the PSLRA, which "mandates a more stringent pleading standard for securities fraud actions in general, and for scienter allegations in particular." *Id.* at 1258 (internal quotation marks omitted).

> The PSLRA . . . heightens the standard for pleading scienter with the following requirement:
>
> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind*.
>
> 15 U.S.C. § 78u-4(b)(2) (emphasis added).

*Id.*⁴

---

³ The section 20(a) Exchange Act claims were asserted only against the now-dismissed Officer Defendants. *See* Consol. Am. Compl. ¶¶ 345-351.

⁴ The Supreme Court has defined "scienter" in this context as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). The Supreme Court has also explained that the statutory language "strongly suggest[s] that § 10(b) was intended to proscribe knowing or intentional misconduct." *Id.*

3

As quoted in the Dismissal Order, the Supreme Court has summarized the general analysis to be applied in deciding a Rule 12(b)(6) motion seeking dismissal of a § 10(b) claim:

> *First*, faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. . . .
>
> *Second*, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. . . . The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. . . .
>
> *Third*, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences. . . .
>
>  . . . To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the "most plausible of competing inferences," . . . . Yet the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

---

at 197. "Recklessness, defined as conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it, can also satisfy the scienter requirement for Section 10(b)." *City of Phila.*, 264 F.3d at 1258 (internal quotation marks omitted).

Dismissal Order at 7 (omissions in original) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007)).

### B. Federal Rule of Civil Procedure 54(b)

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,

> any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

When considering a party's motion to invoke the Court's "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment" under Rule 54(b), the Court "is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008) (internal quotation marks omitted); *see also Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1023-24 (10th Cir. 2018). It has been held by district courts that reconsideration of a nonfinal order should be granted "as justice requires." *Rodeman v. Foster*, 767 F. Supp. 2d 1176, 1188 (D. Colo. 2011); *accord Mahoney v. U.S. Capitol Police Bd.*, 566 F. Supp. 3d 22, 25 (D.D.C. 2022) (explaining that "the 'as justice requires' standard amounts to determining whether relief upon reconsideration is necessary under the relevant circumstances" (alteration and internal quotation marks omitted)).

### III. Discussion

#### A. The Dismissal Order

As noted above, Defendants sought dismissal of Lead Plaintiffs' Section 10(b) Claim for failure to state a claim upon which relief can be granted. *See* Defs.' Mots. to Dismiss (Doc. Nos. 97, 101, 102, 103). The Court denied dismissal in relevant part, finding that the Consolidated Amended Complaint adequately pleaded both scienter and material misrepresentations or omissions for purposes of Federal Rule of Civil Procedure 12(b)(6) and the standards recited above. *See* Dismissal Order at 8-10.

The Court summarized the factual allegations supporting the Exchange Act claims as follows:

> Plaintiffs allege that the Trust I registration statement projected that the Trust I Development Wells would produce approximately 18% more oil than the Trust I Producing Wells. Plaintiffs further allege that by the end of Trust I's second reporting period in August 2011, it had become clear to the Moving Defendants that Trust I would not meet its projections because through August 2011, the oil production of the Trust I Development Wells was only matching that of the Trust I Producing Wells (negative Trust I oil production trends). Given the premium price of oil, the shortfall in oil production from the Trust I Development Wells threatened to cause cash distributions to Trust I investors to miss the targets in the Trust I registration statement. Plaintiffs allege that since Moving Defendants were planning the Trust II IPO to finance their business plan, they specifically needed to showcase the success of the Trust I IPO. Thus, the failure of Trust I to meet targeted cash distributions would have derailed the Trust II IPO. Plaintiffs allege that to avoid this result, Moving Defendants sought to offset the weaker than projected oil production of the Trust I Development Wells by accelerating the drilling of those Wells and successfully masked the weaker oil production of individual Trust I Development Wells with higher aggregate oil production from a greater number of wells drilled than planned.
>
> Additionally, plaintiffs allege that in reporting Trust I's production and cash distribution beats on conference calls with analysts, Moving Defendants falsely stated, among other things, that oil production was "on trend" and "on

target" even though the oil production of the Trust I Development Wells (accounting for two-thirds of the Trust I reserves) was not meeting forecasts. Plaintiffs further allege that Moving Defendants made these false and misleading statements with scienter. First, plaintiffs allege Moving Defendants were plainly in a position to know about and appreciate the significance of the Trust I Development Wells' poor oil production and stayed regularly informed of the Trust I well production. Second, plaintiffs allege that Moving Defendants had a motive to make false statements—by concealing the Trust I Development Wells' poor oil production, SandRidge was able to liquidate most of its Trust I units and complete the Trust II IPO.

*Id.* at 4-5.

The Court then rejected Defendants' argument that the pleading failed to adequately state "facts giving rise to a strong inference" of scienter, at least as to two of the Officer Defendants. 15 U.S.C. § 78u-4(b)(2)(A); *see* Dismissal Order at 7-9. In so doing, the Court relied in part on factual allegations, set forth in paragraphs 63-75 and 299 of the pleading, derived from "interview[s]" by "counsel for Lead Plaintiffs" with "several confidential witnesses who were former employees of SandRidge." Consol. Am. Compl. ¶ 63. The Court found:

> Having carefully reviewed the parties' submissions, and having carefully and thoroughly reviewed plaintiffs' Consolidated Amended Complaint for Violations of the Federal Securities Laws, and taking all facts alleged collectively and accepting them as true, the Court finds that plaintiffs have sufficiently alleged scienter as to defendants Ward and Grubb. Particularly, the Court finds that plaintiffs have set forth sufficient facts that give rise to a strong inference that defendants Ward and Grubb acted with the required state of mind. The complaint specifically alleges that both defendants Ward and Grubb attended senior management meetings concerning the oil and gas production performance of individual SandRidge wells, including the Trust Wells, after the Trust offerings, that the meetings were often led by defendant Grubb, and that the declining oil production of the Trust I Wells after the Trust I IPO, and the unpredictability of the performance of individual Trust I Wells after the Trust I IPO, was discussed at these weekly meetings. *See* [Consol. Am. Compl.] ¶¶ 68-73. Further, the Court finds plaintiffs' allegations regarding Moving Defendants' motive, *see* [*id.*] ¶¶ 299-304,

7

further support a finding that plaintiffs have sufficiently alleged scienter as to defendants Ward and Grubb. Under the circumstances alleged, the Court finds the inference of scienter as to these defendants is more than merely reasonable or permissible and is cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

Dismissal Order at 8-9.

### B. Defendants' Motion for Reconsideration

Defendants now request that the Court revisit this determination and instead grant dismissal of the Section 10(b) Claim. In support, Defendants argue that discovery in this matter has shown certain of the pleading's Former Employee (or "FE") allegations to be inconsistent with or not supported by those individuals' later deposition testimony. *See* Defs.' Mot. at 11-17, 18-21. Defendants also criticize Lead Plaintiffs' counsel's conduct with regard to disclosure of the identities of these former employees and facilitating their availability in this lawsuit. *See id.* at 8-11, 17, 21.

#### 1. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Defendants' Motion does not directly attack the reasoning of the Dismissal Order or the Order's conclusion that, based upon the operative pleading allegations before the Court, Lead Plaintiffs adequately stated an Exchange Act claim upon which relief can be granted. Nor do Defendants offer support for the proposition that the Court could now grant dismissal of the Section 10(b) Claim under Rule 12(b)(6) based not upon the plausibility of those pleading allegations, but upon consideration of evidence outside of the Consolidated Amended Complaint. *Cf. Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (explaining that all that is required "to withstand a Rule 12(b)(6) motion to dismiss" are "enough allegations of fact, taken as true, to state a claim to relief that is

8

plausible on its face" (internal quotation marks omitted)).

No error having been shown in the Court's Dismissal Order, the Court declines to exercise its discretion to "revise[]" that ruling as to the disposition of the motions to dismiss. Fed. R. Civ. P. 54(b); *see Spring Creek Expl. & Prod. Co.*, 887 F.3d at 1024; *see also Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1243 (10th Cir. 2007) ("[W]e encourage a court to [reconsider its interlocutory rulings] where error is apparent.").

### 2. Dismissal as a Sanction Against Lead Plaintiffs

Defendants' primary argument is that the "new evidence" presented regarding the Former Employees justifies dismissal of this lawsuit—not for failure to plead scienter, but based upon the deceptive conduct of Lead Plaintiffs and their counsel. Defs.' Mot. at 18.

First, Defendants argue that dismissal should be granted because Lead Plaintiffs improperly stonewalled Defendants' efforts to identify and question the Former Employees. Specifically, Defendants contends that Lead Plaintiffs: delayed in disclosing the Former Employees' identities and ultimately designated them "confidential," required Defendants to subpoena the Former Employees for deposition, objected to related discovery requests on the basis of attorney work product, and proposed producing some redacted documents only if Defendants would agree that the production "would not be a work product waiver." *Id.* at 8-11, 17, 21.

Lead Plaintiffs answer that the relevant individuals are not plaintiffs in this lawsuit, but SandRidge's own former employees, and therefore not within Lead Plaintiffs' control to produce upon request. *See* Pls.' Resp. at 11-12. More significantly, they say, if Defendants had an objection as to disclosures, privilege, compelling attendance at a

9

nonparty deposition, or any other aspects of the discovery related to the Former Employees, it was incumbent upon Defendants to seek relief from the Court. *See id.* at 12-13.

The Court agrees that Defendants' unpressed criticisms of Lead Plaintiffs' discovery responses do not serve as a basis for dismissal now. Even assuming without deciding that the Court may properly impose the requested de facto discovery sanction when requested via a Rule 54(b) motion, the Court declines to do so.[5]

Next, Defendants point to alleged discrepancies between certain pleading allegations and the evidence gleaned during discovery as undermining the Court's prior finding of scienter and offering a basis for dismissal. For example:

- Defendants emphasize that it appears from the record that hired investigators, rather than Lead Plaintiffs' attorneys themselves, conducted the interviews of the Former Employees. *See* Defs.' Mot. at 9-10.

- Defendants assert that the deposition testimony of Former Employee No. 1 does not support information alleged in the Consolidated Amended Complaint to have been obtained from that source. Defendants point to paragraph 73 of the Consolidated Amended Complaint, which alleges that "FE 1 confirms that the declining oil production of the Trust I Wells after the Trust I Offering, and the unpredictability

---

[5] In this regard, Defendants explain only that they framed their request "as a motion to reconsider, rather than as a motion for sanctions," because the former mechanism is "clean" and "the most direct way possible" to obtain dismissal of Lead Plaintiffs' claims. Defs.' Reply at 13. Defendants' briefing does not specifically address the relevant standards as to the Court's imposition of a dismissal sanction pursuant to "its inherent powers," Rule 11, or otherwise. *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018).

of the performance of individual Trust I Wells after the Trust I Offering, was discussed at the weekly senior management meetings." Consol. Am. Compl. ¶ 73; *see* Defs.' Mot. at 15-16.  When deposed, Former Employee No. 1 did not recall telling Lead Plaintiffs' counsel about these topics of discussion.  *See* Former Emp. No. 1 Dep. 31:3-8 (Doc. No. 364-1).

- Defendants assert that the deposition testimony of Former Employee No. 3 differs from information alleged in the Consolidated Amended Complaint to have been obtained from that source.  Defendants point to the following pleading allegations:
    - Former Employee No. 3 worked at SandRidge as a geologist from 2009 through 2010.
    - "FE 3's work focused on Woods [C]ounty in Oklahoma, and involved, among other tasks, mapping acreage.  FE 3 reported his findings to Mike Brown and FE 1."
    - "The Former Employees report that Defendants closely monitored the production of all of SandRidge's Mississippian wells via weekly senior management meetings at which the performance of individual wells was discussed.  FE 1, FE 2, and FE 3 all attended these senior management meetings during the time that they were employed by SandRidge."
    - "FE 3 also reports that the weekly senior management meetings were attended by Defendant Ward and other senior executives, and that engineers gave presentations to those senior executives at the meetings."

    Consol. Am. Compl. ¶¶ 66-67, 70.  At his deposition, Former Employee No. 3 stated that he did not recall being interviewed by Lead Plaintiffs' counsel and had not been interviewed by anyone regarding allegations of fraud, production forecasts, or "the topics of this case."  Former Emp. No. 3 Dep. 10:14-17, 11:15-12:2 (Doc. No. 364-3).  He also testified that his job description and dates of tenure were incorrect and

11

that he had not "told the plaintiffs' lawyers that [he] attended management meetings for the Mississippi." *Id.* at 13:5-14:24.

Lead Plaintiffs respond that, regardless of the errors regarding Former Employee No. 3 and otherwise, the pertinent fact—that there were periodic management meetings at which individual wells were discussed—is undisputedly accurate. *See* Pls.' Resp. at 8-9, 11-12, 13 (citing Defs.' Mot. at 21); *see also* Former Emp. No. 1 Dep. 48:9-14 (Doc. No. 364-1); Former Emp. No. 1 Dep. 489:2-10 (Doc. No. 364-2). Lead Plaintiffs also suggest that the investigator identified the wrong person as Former Employee No. 3 on an interview memorandum, representing that Lead Plaintiffs "have attempted to determine whether the investigator's error is the cause of the mistake but have not been able to reach any conclusion." Pls.' Resp. at 15-16 & n.5.[6] In addition, Lead Plaintiffs argue that dismissal on this basis would be improper, as the allegedly material discrepancies in the Former Employees' accounts should have been brought to the Court's attention shortly after Defendants took the relevant depositions, rather than through the filing of the Motion for Reconsideration over a year later. *See id.* at 20.

Having carefully considered the Consolidated Amended Complaint and the relevant record, including examples of allegedly inconsistent pleading allegations not specifically discussed herein, the Court declines to dismiss this action. While problematic, the relevant alleged fact that the Court found to be material in evaluating scienter—i.e., the discussion

---

[6] Lead Plaintiffs also suggest that perhaps Former Employee No. 3 falsely denied being the source of the allegations at his deposition. *See* Pls.' Resp. at 15. The Court rejects this baseless accusation.

of well performance at management meetings—is not disputed. *See* Dismissal Order at 9. The cited discrepancies do not establish bad faith or intentional misrepresentation on the part of counsel; nor do they reflect the type of general unreliability that would foreclose the Court's continued consideration of Lead Plaintiffs' claims. *Cf. City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 760-61 (7th Cir. 2013) (affirming dismissal of complaint upon reconsideration where plaintiffs' confidential source "denied virtually everything the investigator had reported" and plaintiffs' counsel's failure to attempt to verify the investigator's allegations was held to "amount[] to a fraud on the court").

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration (Doc. No. 361) is DENIED.

IT IS SO ORDERED this 11th day of September, 2025.

_____
CHARLES B. GOODWIN
United States District Judge

13